03cv905 Lincoln OPP Mtn Dismiss

# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

FILED

2003 OCT 28  A 10: 08

US DISTRICT COURT
HARTFORD CT

| |
|---|
| THE LINCOLN NATIONAL LIFE INSURANCE COMPANY, <br><br> Plaintiff, <br><br> v. <br><br> AON RE, INC. <br><br> Defendant. |

Civil Action No. 303 CV 905 RNC

**THE LINCOLN NATIONAL LIFE INSURANCE COMPANY'S MEMORANDUM OF LAW IN OPPOSITION TO MOTION TO DISMISS OF AON RE, INC.**

(October 24, 2003)

**ORAL ARGUMENT REQUESTED**

SF\436225.8

# TABLE OF CONTENTS

Page(s)

I.  PRELIMINARY STATEMENT ....................................................................................1

II.  FACTUAL AND PROCEDURAL BACKGROUND..................................................2

    A.  Factual Background ...........................................................................................2

    B.  Lincoln's Claims Against Aon..........................................................................3

III.  AON'S MOTION IS PREMATURE............................................................................5

IV.  THE STANDARDS GOVERNING A MOTION TO DISMISS .................................6

V.  AON'S MOTION IS WITHOUT SUBSTANTIVE MERIT .......................................7

    A.  Lincoln's Claims Are Not Improperly Split .....................................................7

    B.  Lincoln's Claims Are Not Barred by the Statute of Frauds...............................9

        1.  Lincoln's Claims Are Not Subject to the Statute of Frauds.........................9

        2.  Lincoln Partially Performed the Contracts ................................................12

    C.  Lincoln's Claims Are Not Barred by the Statute of Limitations ...........................15

        1.  The Six Year Statute of Limitations Applicable to Implied
            Contracts Applies to Lincoln's Claims......................................................15

        2.  Lincoln's Claims Did Not Accrue Until October 2002 ..............................18

    D.  Venue Is Proper in This District .........................................................................19

VI.  CONCLUSION...........................................................................................................21

TABLE OF AUTHORITIES

Page(s)

**CASES**

*Abou-Saif v. Cedarcrest Condominium Association,*
  2000 Conn. Super. LEXIS 2908 (Conn. Super. 2000)                    17, 18

*Alcoa Composites, Inc. v. Bonded Technologies, Inc.,*
  2002 WL 1134548 (Conn. Super. 2002)                                 18, 19

*Arrowsmith v. United Press International,*
  320 F.2d 219 (2nd Cir. 1963)                                        5

*Bolmer v. Kocet,*
  507 A.2d 129 (Conn. App. 1986)                                      16

*Breen v. Phelps,*
  439 A. 2d 1066 (Conn. 1982)                                         13

*Coelho v. ITT Hartford,*
  752 A. 2d 1063 (Conn. 1999)                                         18, 19

*Conley v. Gibson,*
  355 U.S. 41 (1957)                                                  6

*Curtis v. Citibank,*
  226 F.3d 133 (2nd Cir. 2000)                                        8

*Davis v. Monroe County Board of Education,*
  526 U.S. 629 (1999)                                                 6

*DeCorso v. Watchtower Bible and Tract Society of New York,*
  752 A. 2d 102 (Conn. Super. 2000)                                   16

*Dubton House, Inc. v. St. Marys Paper Ltd.,*
  111 F. Supp. 2d 115 (D. Conn. 1999)                                 14

*Dunham v. Dunham,*
  528 A.2d 1123 (Conn. 1987)                                          14

*Echevarria v. Midcon Associates,*
  2002 WL 31875351 (Conn. Super. 2002)                                18

*Engelman v. Connecticut Gen. Life Ins. Co.,*
  690 A.2d 882 (Conn. 1997)                                           18, 19

*Ferens v. John Deere Co.,*
  494 U.S. 516 (1990)                                                 1, 7, 8

ii

*Fruin v. Colonnade One at Old Greenwich Limited Partnership,*
   662 A.2d 129 (Conn. App. 1995)                                     15

*Gorlin v. Bond Richman & Co.,*
   706 F. Supp. 236 (S.D.N.Y. 1989)                         18

*Harmonie Club, Inc. v. Smirnow,*
   137 A. 769 (Conn. 1927)                 13

*In re Hall, Bayoutree Associates Ltd.,*
   939 F.2d 802 (9th Cir. 1991)               20

*Jacobs v. Thomas,*
   600 A. 2d 1378 (Conn. App. 1991)               12

*Kennedy v. Johns-Manville Sales Corporation,*
   62 A. 2d 771 (Conn. 1948)              19

*Klewin v. Flagship Properties, Inc.,*
   600 A.2d 772 (Conn. 1991)             1, 11,
   12, 14

*Leonard v. Israel Discount Bank of New York,*
   199 F.3d 99 (2nd Cir. 1999)             6

*Lipsky v. Commonwealth United Corporation,*
   551 F.2d 887 (2nd Cir. 1976)            6, 9

*Luce v. Edelstein,*
   802 F.2d 49 (2nd Cir. 1986)             7

*Lynch v. Davis,*
   435 A. 2d 977 (Conn. 1980)             15

*Oliney v. Gardner,*
   771 F.2d 856 (5th Cir. 1985)            8, 9

*Pagano v. Ippoliti,*
   716 A. 2d 848 (Conn. 1998)             12

*Robert Lawrence Associates, Inc. v. Del Vecchio,*
   420 A.2d 1142 (Conn. 1979)             15

*Rutt v. Roche,*
   87 A.2d 805 (Conn. 1952)              13

SF\436225.8

*Salib v. I.C. System, Inc.,*
   2002 WL 31060368 (D. Conn. 2002)                          8

*Santangelo v. Carini,*
   2002 WL 31440870 (Conn. Super. 2002)                      14

*Sargent v. Rent-A-Car Corp.,*
   1996 WL 413725 *2 (S.D.N.Y. 1996)                         5

*Simon v. Ward,*
   80 F. Supp. 2d 464 (E.D. Pa. 2000)                        20

*Swierkiewicz v. Sorema N.A.,*
   534 U.S. 506 (2002)                                       20

*Tarshis v. Riese Organization,*
   211 F.3d 30 (2nd Cir. 2000)                               6

*The Haytian Republic,* 154 U.S. 118 (1894)                 9

*Ubysz v. DiPietro,*
   440 A. 2d 830 (Conn. 1981)                                13

*Union Trust Company v. Jackson,*
   679 A. 2d 421 (Conn. App. 1996)                           13

*Unistress Corp. v. Danbury Hosp.,*
   1991 WL 218545 *2 (D. Conn. 1991)                         6, 16,
   17

## TREATISES

15 Wright Miller & Cooper § 3826                            20

SF\436225.8

## I.    PRELIMINARY STATEMENT

Plaintiff, The Lincoln National Life Insurance Company ("Lincoln"), respectfully requests that the Court deny the motion to dismiss of defendant Aon Re, Inc. ("Aon"), for both procedural and substantive reasons.

Procedurally, the motion to dismiss is premature in light of the parties' cross-motions to transfer venue pursuant to 28 U.S.C. section 1404. Although the parties disagree on the district to which this matter should be transferred, there is no dispute that it should be transferred. Both the governing case law and the interests of judicial economy favor having this motion decided by the transferee court.

Substantively, none of Aon's four arguments for dismissal has merit:

*First*, Lincoln has not improperly split its claims. To the contrary, the procedure of filing this action and then seeking to transfer it to join the related action in the District of New Jersey was approved by the Supreme Court in *Ferens v. John Deere Co.*, 494 U.S. 516 (1990).

*Second*, Lincoln's contract claims are not barred by the statute of frauds because (a) the contracts at issue did not require performance for a period longer than one year and were in fact terminable at will, (b) Lincoln paid Aon millions of dollars pursuant to the contracts, which constitutes partial performance that removes the contracts from the statute of frauds, and (c) writings signed by Aon reflect the critical terms of the contracts. In *Klewin v. Flagship Properties, Inc.*, 600 A.2d 772, 776 (Conn. 1991), the Connecticut Supreme Court described the very provision on which Aon relies as disfavored and noted that "today its only remaining effect is arbitrarily to forestall the adjudication of possibly meritorious claims." *See infra* at 10-11.[1]

*Third*, Lincoln's contract claims are not barred by the statute of limitations because (a) the claims are based on an implied contract subject to a six year statute of limitation, and (b) the claims did not accrue until October 8, 2002, when Lincoln suffered a loss of its

---

[1]    Notably, Aon does not even mention *Klewin* in its brief.

SF\436225.8

reinsurance as a result of Aon's misconduct. This action was filed on May 22, 2003, less than eight months after the loss and well within the limitations period.

*Fourth*, Aon's argument that the complaint should be dismissed because of a typographical error in a venue allegation is frivolous.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

### A. Factual Background

This action arises out of a pooling arrangement for the reinsurance of the accident and health portions of workers' compensation insurance policies. Complaint ¶ 6.[2] Lincoln joined with four other companies in a "reinsurance pool," a group of insurance or reinsurance companies that provided reinsurance protection to workers' compensation insurers. *Id.* ¶ 11.[3] The Pool was managed by Unicover Managers, Inc. ("Unicover"), and was thus known as the Unicover Occupational Accident Reinsurance Pool (the "Pool"). *Id.* ¶ 13. Unicover had the authority to accept reinsurance business on behalf of the Pool. *Id.* ¶¶ 12-13.

The Pool also obtained its own reinsurance for the risks that the Pool members were accepting. Complaint ¶¶ 12, 16. When a reinsurer obtains reinsurance from another reinsurer, the latter is called a "retrocessionaire." *Id.* ¶ 8. Each of the Pool members joined the Pool with the understanding that its risks would be substantially reduced by retrocessional reinsurance. *Id.* ¶ 14. On behalf of the Pool, Unicover engaged Aon, along with third party Rattner Mackenzie Limited ("Rattner"), as a broker or "intermediary" to secure and maintain retrocessional protection for the Pool. Complaint ¶¶ 16-17, 29. In exchange, Aon received as a brokerage fee a

---

[2]    Reinsurance is a transaction whereby one insurance company, the "reinsurer," in exchange for the payment of a premium, agrees to indemnify or reimburse another insurance company, the "reinsured" or "cedent," against all or part of a loss that the reinsured may sustain under insurance policies issued by the reinsured. Complaint ¶ 7.

[3]    In addition to Lincoln (which had an 18.75% interest in the Pool), the other members of the Pool during the relevant time were Connecticut General Life Insurance Company ("Connecticut General") (35% interest), Phoenix Life Insurance Company ("Phoenix") (23.75% interest), General & Cologne Life Re of America ("Cologne") (17.5% interest), and ReliaStar Life Insurance Company ("ReliaStar") (5% interest) (collectively, the "Pool members"). Complaint ¶ 13.

percentage of the premium retroceded from the Pool. *Id.* ¶ 16. Aon also agreed to assist

Unicover in its management of the Pool for which it also received a fee. *Id.* ¶ 17. In this

manner, Aon received millions of dollars of compensation from the Pool for performing its

agreements, payment for which Lincoln bore 18.75% responsibility. *Id.* ¶¶ 16, 21.

During the course of Aon's engagement, Sun Life Assurance Company of Canada,

Phoenix, and Cologne (collectively, the "Retrocessionaires") agreed, effective December 1,

1997, to provide retrocessional protection to the Pool for a period of three years (the "Three-Year

Whole Account"). Complaint ¶ 18.

### B. Lincoln's Claims Against Aon

Aon's misconduct led to the partial rescission of the Pool's retrocessional protection

provided by the Three-Year Whole Account, which caused each of the Pool members, including

Lincoln, to suffer tens of millions of dollars of losses. Complaint ¶¶ 24-27.

Aon knew that the Retrocessionaires expected only a certain level of business from the

Pool. Complaint ¶ 19. Nevertheless, Aon concealed from the Pool members and the

Retrocessionaires the full amount of the premium volume (and thus risk) that was being

retroceded to the Retrocessionaires. *Id.* ¶¶ 19, 31, 37, 42. In addition, when the

Retrocessionaires began to inform Aon that they were concerned about even the level of

premium that they understood was being ceded to them, Aon concealed that concern from the

Pool members. *Id.* ¶¶ 20, 21, 31, 37, 42. Specifically:

- "Aon knew that the Pool members and the Retrocessionaires expected Unicover
  to reinsure only a certain level of business and that they would object to the
  excessive levels of business that Aon was convincing Unicover to reinsure. Thus,
  in an effort to continue earning substantial commissions on the business, Aon
  intentionally concealed from the Pool members and the Retrocessionaires the full
  extent of the business being written by Unicover." Complaint ¶ 19.

- When the Retrocessionaires did complain about the volume of business being
  retroceded to the Three-Year Whole Account, "Aon concealed from the Pool

3

members the full extent of the Retrocessionaires' complaints and instead led Unicover and the Pool members to believe that the Retrocessionaires were not dissatisfied with the business being retroceded to them." *Id.* ¶¶ 20-21.

- Even when the Retrocessionaires told Aon that "they wanted no additional business to be written or retroceded," . . . "Aon failed fully to disclose to the Pool members the Retrocessionaires' concerns and, in a quest for more fees, encouraged Unicover to continue writing and retroceding more business." *Id.* ¶¶ 22-23.

Beginning in January 1999, the Retrocessionaires stated that they were unilaterally terminating the Three-Year Whole Account that provided reinsurance protection to the Pool. Complaint ¶ 24. Eventually, they demanded arbitration seeking to rescind the agreement. *Id.* ¶ 25. On October 8, 2002, after a lengthy hearing, the arbitration panel issued an award relieving the Retrocessionaires of responsibility for business bound or renewed by Unicover after August 31, 1998. *Id.* ¶ 26.[4] That award—the result of Aon's misconduct—caused Lincoln to suffer tens of millions of dollars in damage. *Id.* ¶ 27.

In response, Lincoln filed this action alleging that Aon breached its contracts to serve as a reinsurance intermediary between the Pool and the Retrocessionaires and to assist in the management of the Pool. Complaint ¶¶ 29-31, 35-36. Lincoln also filed suit in the United States District Court for the District of New Jersey alleging tort claims against Aon and alleging both

---

[4]     The hearing was indeed lengthy. It began on July 8, 2002 and ended on August 7, 2002. Complaint ¶ 26.

SF436225.8

tort and contract claims against Rattner.  Declaration of Richard Mooney filed herewith

("Mooney Decl.") ¶ 2 & Exh. A.[5]

On August 18, 2003, Lincoln filed a motion pursuant to 28 U.S.C. section 1404(a),

requesting that this action be transferred to the United States District Court for the District of

New Jersey.  That motion was based on (*inter alia*) the benefits to judicial economy and party

and witness convenience that would accrue from consolidating Lincoln's two actions, and the

fact that the locus of Aon's wrongdoing was New Jersey.  Aon opposed the motion to transfer to

New Jersey, and filed a cross motion requesting transfer to the United States District Court for

the Northern District of Illinois.  A transfer to Illinois would preclude consolidation of Lincoln's

two actions, move the matter away from the locus of wrongdoing, and ensure that critical third

party witnesses who live in New Jersey remain outside the court's subpoena power.

## III.    AON'S MOTION IS PREMATURE

Both parties to this action agree that the action should be transferred to another court,

whether that be the United States District Court for the District of New Jersey or for the District

of Northern Illinois.  When both venue motions and substantive motions are pending, the usual

course is to resolve the venue motions first, thus allowing the transferee court (if transfer is

appropriate) to resolve the substantive issues.  *See, e.g., Arrowsmith v. United Press*

*International*, 320 F.2d 219, 221 (2nd Cir. 1963); *Sargent v. Rent-A-Car Corp.*, 1996 WL

413725 *2 (S.D.N.Y. 1996).  Particularly in this situation, where transfer to New Jersey would

allow consolidation with the other suit filed by Lincoln, the interests of judicial economy and

judicial comity support deferring resolution of this motion to dismiss (and Aon's motion to stay)

---

[5]    On the same day, Pool members Phoenix and Cologne also (a) filed a complaint alleging
contract-related claims against Aon in this Court, and (b) filed a lawsuit in the United
States District Court for the District of New Jersey alleging tort claims against Aon and
alleging both tort and contract claims against Rattner, Unicover, and Unicover's
principals and successors in interest.  Mooney Decl. ¶ 4 & Exh. B.  The Court may take
judicial notice of these complaints filed in federal court.  *Liberty Mutual Insurance Co. v.*
*Rotches Pork Packers, Inc.*, 969 F.2d 1384, 1388 (2nd Cir. 1992).

5

until after resolution of the cross-motions to transfer, rather than splitting the decisions in two different District Courts in two different Circuits.

## IV.    THE STANDARDS GOVERNING A MOTION TO DISMISS

Under Rule 12(b)(6), the Court may dismiss an action only if no basis exists for the plaintiff's claims. *See Conley v. Gibson*, 355 U.S. 41, 45-46 (1957) (dismissal inappropriate unless it appears beyond doubt that plaintiff cannot prove facts adequate to support its claim); *Lipsky v. Commonwealth United Corporation*, 551 F.2d 887, 894 (2nd Cir. 1976) (same). The Court must "assume the truth of the material facts as alleged in the complaint." *Davis v. Monroe County Board of Education*, 526 U.S. 629, 633 (1999); *Leonard v. Israel Discount Bank of New York*, 199 F.3d 99, 107 (2nd Cir. 1999). Equally, the Court must interpret the complaint in the light most favorable to Lincoln and must accept all inferences that may reasonably be drawn from the allegations of the complaint. *Tarshis v. Riese Organization*, 211 F.3d 30, 35 (2nd Cir. 2000) (holding that before deciding a motion to dismiss, a district court must first accept all of plaintiff's factual allegations as true, draw inferences from those allegations in the light most favorable to the plaintiff and liberally construe the complaint). On a motion to dismiss, "the allegations contained in the complaint must be taken as true and construed in the light most favorable to the plaintiff." *Unistress Corp. v. Danbury Hosp.*, 1991 WL 218545 *2 (D. Conn. 1991). Aon's motion must be denied "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Unistress*, 1991 WL 218545 *2. On a motion to dismiss, "a district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Leonard F. v. Israel Discount Bank of New York*, 199 F.3d 99, 107 (2nd Cir. 1999). Aon's substantial evidentiary submissions, therefore, are improper and should be ignored. *Id.* To the extent the Court is nonetheless inclined to consider Aon's evidentiary submission, Lincoln respectfully

SF\436225.8

requests that its own submission be considered as well. *Id.* (plaintiff must be allowed reasonable opportunity to present evidence in response to any evidence considered from defendant).[6]

## V.    AON'S MOTION IS WITHOUT SUBSTANTIVE MERIT

### A. Lincoln's Claims Are Not Improperly Split

Aon's assertion that Lincoln's action should be dismissed because Lincoln simultaneously filed this suit and a related lawsuit in the District of New Jersey ignores directly controlling Supreme Court precedent approving precisely the procedure that Lincoln has followed.

A materially identical situation was addressed in *Ferens v. John Deere Co.*, 494 U.S. 516 (1990).[7] In *Ferens*, the plaintiff, Ferens, lost his right hand in an accident involving a farming machine manufactured by defendant John Deere. Ferens was a resident of, and the accident occurred in, western Pennsylvania. Ferens and his wife did not file suit until after the expiration of Pennsylvania's two-year statute of limitations applicable to tort claims. The Ferenses then filed a contract action against John Deere in the United States District Court for the Western District of Pennsylvania, and (some time later) filed a tort action against John Deere in the United States District Court for the District of Mississippi. The Ferens acknowledged, and the Supreme Court accepted, that they had filed the two separate actions to take advantage of Mississippi's longer statute of limitations for tort claims and Mississippi's choice of law rules providing that Mississippi's statute of limitations would govern the claim even though Pennsylvania law governed the substance of the claim. *Id.* at 519.

The Ferenses then filed a motion pursuant to 28 U.S.C. section 1404(a) to transfer the Mississippi action to the Western District of Pennsylvania. They argued that Pennsylvania was a more convenient forum, and that party and judicial economy and the interests of justice

---

[6]    It is ordinarily an abuse of discretion to dismiss the complaint without granting plaintiff at least one opportunity to amend the complaint to cure any pleading defects. Federal Rule of Civil Procedure 15(a); *Luce v. Edelstein*, 802 F.2d 49, 57 (2nd Cir. 1986).

[7]    Notably, Aon does not mention *Ferens* in its brief.

supported a transfer to allow consolidation of the two related actions. Far from concluding that the Ferens had improperly split their claims, the Supreme Court endorsed their approach and held that Mississippi's choice of law rules would continue to apply to the claims originally filed in Mississippi even after the transfer of those claims to Pennsylvania. *Ferens*, 494 U.S. at 531.

Aon ignores the *Ferens* decision and instead argues that dismissal is warranted on the basis of three lower court decisions and a Supreme Court decision from the 19th century. Aon Brief in Support of Motion to Dismiss ("Aon Brf.") at 9-11. None of the cited cases bears the least resemblance to the situation here.

Aon places principal reliance on *Curtis v. Citibank*, 226 F.3d 133 (2nd Cir. 2000). In *Curtis*, the plaintiff was denied leave to file a second amended complaint more than 18 months after the initial suit was filed, on the ground that the amendment was untimely. *Id.* at 140. When the plaintiff subsequently attempted to file the second amended complaint as an initial complaint in a new lawsuit, the court held that the plaintiff's attempted end run around the court's prior order was an instance of prohibited claim splitting. *Id.*

The present case is patently different. Lincoln has not delayed unreasonably. It filed suit less than eight months after having suffered the partial rescission of it reinsurance protection. *See supra* at 4. More importantly, Lincoln is not seeking to file as a new action in the same court a claim that this Court previously rejected by amendment. (Indeed, Aon admits that "there is nothing preventing Lincoln from amending its complaint in New Jersey." Aon Brf. at 11.) Unlike the situation in *Curtis*, no court has previously ruled on Lincoln's claims in this action. Thus, *Curtis* is inapposite.

Aon also relies heavily on *Salib v. I.C. System, Inc.*, 2002 WL 31060368 (D. Conn. 2002). In *Salib*, the court actually *denied* defendant's motion. *Id.* *3. In fact, the court specifically noted that a proper response to claims that are split is to "consolidate the two actions," *id.* at *2, which is precisely what Lincoln seeks in its motion to transfer. Equally unavailing is *Oliney v. Gardner*, 771 F.2d 856 (5th Cir. 1985), in which the plaintiff filed two identical complaints in the same court, leading quite naturally to the dismissal of one of the

8

identical complaints. *Id.* at 859. And finally, Aon's quote from *The Haytian Republic*, 154 U.S. 118 (1894), is taken completely out of context, as the decision clearly supports Lincoln. *See id.* at 125 ("But this principle does not require distinct causes of action—that is to say, distinct matters, each of which would authorize by itself independent relief—to be presented in a single unit, thought they existed at the same time, and might be considered together.").

Aon professes concern about "squandering judicial resources." Aon Brf. at 1. What it points to, however, is primarily the conduct of the other Pool members (Phoenix, Cologne and ReliaStar) and of the Pool manager, Unicover. There are obvious reasons why Lincoln filed suit separately from the other Pool members. For example, Phoenix and Cologne were its adversaries in the arbitration that led to the partial rescission of the Three-Year Whole Account. Complaint ¶¶ 18, 25-26. Lincoln could hardly be expected to join with Phoenix and Cologne to litigate over events that were at issue in an arbitration in which they were adversaries. Aon also wrongly represents that Lincoln "start[ed] an arbitration" against Unicover, the Pool manager. Aon Brf. at 1. In fact, as Aon well knows, Unicover commenced that arbitration against Lincoln (Lincoln had neither sued nor demanded arbitration against Unicover) and, more importantly, did so *after* this action had been commenced. Mooney Decl. ¶ 4. Thus, Aon's professed concern for judicial resources is both misguided and based on an erroneous version of the facts. The controlling point, which Aon has conveniently ignored, is that the Supreme Court has reviewed and approved the precise procedure followed by Lincoln in this case.

**B. Lincoln's Claims Are Not Barred by the Statute of Frauds**

Aon moves to dismiss all of Lincoln's claims on "Statute of Frauds and Statute of Limitations grounds." Aon's Brf. at 12. None of the grounds asserted by Aon has merit.

1.    Lincoln's Claims Are Not Subject to the Statute of Frauds

The Connecticut Statute of Frauds provides in pertinent part:

9

(a) No civil action may be maintained in the following cases unless the agreement, or a memorandum of the agreement, is made in writing and signed by the party, or the agent of the party, to be charged: ... (5) upon any agreement that is not to be performed within one year from the making thereof . . . ."

Connecticut General Statutes § 52-550 ("Statute of Frauds").

Aon's argument is that, because the Pool's retrocessional reinsurance (the Three-Year Whole Account) was for a period of three years, Aon's obligations as a broker or intermediary could not be performed in one year. Aon says that the issue "is whether an alleged contract to provide brokerage services relating to a 'three-year contract' must be in writing to satisfy the statute of frauds." Aon Brf. at 13. This confuses two contractual relationships: the reinsurance relationship between the Pool members and the Retrocessionaires, and the broker or intermediary relationship between the Pool members and Aon. The reinsurance relationship between the Pool members and the Retrocessionaires was indeed for a term of three years. Complaint ¶ 18. But Aon was not a party to that contract. *Id.*[8] The intermediary relationship was an entirely separate relationship (*id.* ¶ 16), and nothing in the complaint alleges that this relationship could not be terminated at the will of either Aon or the Pool. Aon could have been fired from its responsibilities as Pool manager and retrocessional broker *at any time*, and there is no allegation whatsoever to the contrary in the complaint. Because there is no allegation that the intermediary relationship was for a term of three years, the statute of frauds does not apply.

Aon's argument that the Three-Year Whole Account reinsurance agreement establishes the duration of its agreement to provide brokerage services is akin to arguing that a real estate broker has a 30-year agreement with a home buyer because the broker helped the buyer secure a

---

[8]    If Aon were a party to the reinsurance agreement, its statute of frauds argument would nonetheless be without merit because that agreement was in writing.

30-year mortgage.[9]  The simple fact that Aon agreed to act as an intermediary in obtaining and

maintaining a three-year reinsurance contract does not mean that its own agreement was for three

years.  There is no allegation of the complaint to this effect, and Aon does not even purport to

cite one.

The statute of frauds is a disfavored defense in Connecticut.  "[T]he one-year provision

no longer seems to serve any purpose very well, and today its only remaining effect is arbitrarily

to forestall the adjudication of possibly meritorious claims.  For this reason, the courts have for

many years looked on the provision with disfavor, and have sought constructions that limited its

application."  *C. R. Klewin, Inc. v. Flagship Properties, Inc.*, 600 A. 2d 772, 776 (Conn. 1991)

(citing cases).  Case law "in Connecticut, like that in other jurisdictions, has taken a narrow view

of the one-year provision of the statute of frauds."  *Id.*  Thus, *every* rule of decision for this

motion requires that it be denied.  On a motion to dismiss, Lincoln is entitled to the benefit of

every inference in favor of the sufficiency of the complaint.  *See supra* at 6.  Accordingly, the

complaint cannot be read to contain allegations that it does not contain so as to bring the claims

within the statute of frauds.  In addition, the statute of frauds is a disfavored defense, which

cannot be stretched to cover a claim that does not allege a contract that is incapable of

performance within one year.

Nor would it assist Aon to argue that the Pool members and Aon *anticipated* that their

relationship would last longer than a year.  Again, there is no allegation to that effect, which is

the end of the matter.  In any event, however, the parties' intention that a contract last more than

a year is not sufficient to invoke the statute of frauds.  Rather, there must be an explicit

---

[9]    Aon's fallacy is further made evident by the fact that when Aon was engaged, there was
no certainty about the form or duration of any retrocessional protection agreement into
which the Pool members might enter.  Indeed, the Pool members first entered into an
agreement for retrocessional protection lasting only one year.  Mooney Decl. ¶ 5.  That
agreement could well have been for six months, or any other length of time to which the
Pool members and the Retrocessionaires (or other companies acting as retrocessionaires)
might have agreed.  In all events, the broker assisting in facilitating the deal could be
terminated (or quit) at any time.

11

agreement that the contract *cannot* be terminated in less than a year. As the Connecticut Supreme Court has recognized, an unwritten contract:

> that does not say, in express terms, that performance is to have a specific duration beyond one year is, as a matter of law, the functional equivalent of a contract of indefinite duration for the purposes of the statute of frauds. Like a contract of indefinite duration, *such a contract is enforceable because it is outside the proscriptive force of the statute* regardless of how long completion of performance will actually take.

*C.R. Klewin*, 600 A. 2d at 779 (emphasis added).

In particular, an oral agreement that "fails to specify *explicitly* the time for performance" is not subject to the statute of frauds, even if "performance of that contract within one year of its making is exceedingly unlikely." *Id.* at 770, 774 (emphasis added). The "critical test" is whether the contract's explicit terms state that the contract will *not* be peformed within one year, and the statute of frauds does not apply to agreements that contain no explicit provision regulating the time for performance, even if circumstances suggest the contract is likely to continue for more than one year. *Id.* at 778; *see also Pagano v. Ippoliti*, 716 A. 2d 848, 853 (Conn. 1998) (statute of frauds inapplicable where contracts did not require performance "at an express time outside of a one year period from the making of the contracts"); *Jacobs v. Thomas*, 600 A. 2d 1378, 1382 (Conn. App. 1991) (statute of frauds inapplicable because "the enforceability of a contract under the one year provision does not turn on the actual course of subsequent events, nor on the expectations of the parties as to the probabilities. Contracts of uncertain duration are simply excluded . . . .").

The dispositive fact is that the complaint does not allege any agreement *to which Aon was a party* that was expressly for a term of more than one year. Accordingly, the statute of frauds does not apply.

### 2.    Lincoln Partially Performed the Contracts

Even if the statute of frauds were applicable, it would not bar Lincoln's claims here because Lincoln performed its obligations under the agreements by paying Aon millions of dollars for the services Aon was to perform. The doctrine of "partial performance" arose from

12

the precise situation presented here: preventing one party to a contract from taking the benefits of that contract and then denying the reciprocal benefits to the other party, *i.e.* "preventing the statute against frauds from becoming an engine of fraud." *Harmonie Club, Inc. v. Smirnow*, 137 A. 769, 771 (Conn. 1927).

Under Connecticut law, it has long been held that partial performance by a party seeking to enforce a contract removes the contract from the statute of frauds. *See, e.g., Ubysz v. DiPietro*, 440 A. 2d 830 (Conn. 1981); *Breen v. Phelps*, 439 A. 2d 1066 (Conn. 1982); *Rutt v. Roche*, 87 A.2d 805 (Conn. 1952). A contract is enforceable, despite the statute of frauds, "when, subsequent to the making of the contract, there has been conduct that amounts to part performance." *Union Trust Company v. Jackson*, 679 A. 2d 421, 425 (Conn. App. 1996); *see also Ubysz*, 440 A.2d at 835 (acts of partial performance "must clearly refer to some contract in relation to the matter in dispute").

The Connecticut Supreme Court has summarized the requirements for application of the "partial performance" doctrine:

> [T]he acts of part performance generally must be such as are done by the party seeking to enforce the contract, in pursuance of the contract, and with the design of carrying the same into execution, and must also be done with the assent, express or implied, or knowledge of the other party, and be such acts as alter the relations of the parties. The acts also must be of such a character that they can be naturally and reasonably accounted for in no other way than by the existence of some contract in relation to the subject matter in dispute.

*Ubysz*, 440 A.2d at 835 (citations omitted).

Lincoln's complaint unquestionably alleges partial performance of the agreement at issue. In addition to alleging explicitly that Lincoln "duly performed all of the conditions" of the agreements (Complaint ¶¶ 30, 36), the complaint also alleges that Aon received tens of millions of dollars pursuant to the agreement from the Pool members, including Lincoln. Complaint ¶¶ 16-17. The significant fees paid by Lincoln to Aon can "naturally and reasonably" be accounted for in no other way than the existence of an agreement between Aon and Lincoln. If

SF\436225.8

the agreements were unenforceable, an obvious inequity would occur. Accordingly, all of the conditions of the partial performance exception to the statute of frauds are met.

As noted above, *see supra* at 10-11, the Connecticut Supreme Court has modernized Connecticut's approach to the statute of frauds, consistent with the view that it is a disfavored technical defense such that it is proper to take a "narrow view of the one-year provision of the statute of frauds." *Klewin*, 600 A.2d at 776. Consistent with that approach, Connecticut courts now apply the doctrine of part performance to render enforceable contracts that were not to be performed within one year. Following the Connecticut Supreme Court's guidance, for example, this Court denied a defendant's motion for summary judgment based on the one year provision precisely because plaintiff presented evidence of acts sufficient to show part performance. *See Dubton House, Inc. v. St. Marys Paper Ltd.*, 111 F. Supp. 2d 115, 118 (D. Conn. 1999) ("Partial performance of an otherwise unenforceable contract is a valid basis for enforcement . . ."); *see also Santangelo v. Carini*, 2002 WL 31440870, *2-3 (Conn. Super. 2002) (plaintiff not entitled to benefit of part performance doctrine with respect to contracts rendered unenforceable because they were not to be performed within one year only because of inadequate evidentiary showing).[10]

---

[10]    In *Dunham v. Dunham*, 528 A.2d 1123 (Conn. 1987), the Connecticut Supreme Court deemed the part performance doctrine's applicability to the one year provision so clear as to warrant no mention in a discussion holding the doctrine inapplicable because the party's actions were not "sufficiently substantial" to meet the doctrine's requirements. *Id.* at 1130.

SF\436225.8

Because the complaint alleges partial performance of the contracts, the statute of frauds does not apply.[11]

### C. Lincoln's Claims Are Not Barred by the Statute of Limitations

Aon's argument that Lincoln's claims are barred by a three-year statute of limitations fails for two independently sufficient reasons, namely, (1) Lincoln's claims are governed by the six-year statute of limitations applicable to implied contracts, and (2) even if a three-year statute applied, Lincoln's cause of action did not accrue until October 8, 2002 and suit was filed on May 22, 2003, less than eight months later.

1.     The Six Year Statute of Limitations Applicable to Implied Contracts Applies to Lincoln's Claims

Connecticut law provides a six-year statute of limitation for "[a]ctions for account or on any simple or implied contract." Connecticut General Statute § 52-576 ("Section 52-576"). Connecticut case law establishes that this six-year statute applies to Lincoln's claims.

Under Connecticut law, an implied contract is "an agreement . . . founded upon a meeting of the minds, which, although not embodied in an express contract, is inferred, as a fact from the conduct of the parties, showing, in the light of the surrounding circumstances, their tacit

---

[11]    The Connecticut statute of frauds also provides that "No civil action may be maintained in the following cases unless the agreement, *or a memorandum of the agreement*, is made in writing and signed by the party, or the agent of the party to be charged . . ." Gen. Statute 52-550(a) (emphasis added). To comply with the statute of frauds a "memorandum of the agreement" need not consist of a single document, nor must the memorandum conform to "any particular form." *Robert Lawrence Associates, Inc. v. Del Vecchio*, 420 A.2d 1142, 1152 (Conn. 1979). A memorandum is sufficient "even though it does not recite the underlying contract in its entirety, if it provides reliable written evidence that the parties have come to a complete agreement." *Lynch v. Davis*, 435 A. 2d 977, 980 (Conn. 1980); *see also Fruin v. Colonnade One at Old Greenwich Limited Partnership*, 662 A.2d 129, 133 (Conn. App. 1995). Because the statute of frauds is disfavored, Connecticut courts actually "prefer interpretations that find agreements sufficiently definite to satisfy the statute of frauds." *Fruin*, 662 A. 2d at 133. For the reasons discussed in this memorandum, it was not necessary to allege the documents signed by Aon that reflect the agreements alleged in the complaint. They exist, however, and will be an important part of Lincoln's case at trial.

understanding." *Unistress Corp. v. Danbury Hospital*, 1991 WL 218545, *2 (D. Conn. 1991) (denying motion to dismiss and finding that the plaintiff alleged facts sufficient to support a claim of breach of implied contract). An implied contract "may be inferred from words, action or conduct." *Bolmer v. Kocet*, 507 A.2d 129, 136 (Conn. App. 1986). A claim for breach of an implied contract must allege "that the defendant had agreed, by either words or action or conduct to undertake [some] form of actual contract commitment." *Unistress*, 1991 WL 218545 at *2 (internal citations omitted); *see also DeCorso v. Watchtower Bible and Tract Society of New York*, 752 A. 2d 102, 109-10 (Conn. Super. 2000). Notably, whether an agreement is an implied contract subject to Section 52-576 is a question of fact to be decided after discovery, and therefore not a proper basis for a motion to dismiss. *Bolmer v. Kocet*, 507 A.2d 129, 136-37 (Conn. App. 1986) (denying motion to dismiss because "[t]he existence and scope of such a contract [an implied contract] is a question of fact for the trier, to be determined from all the evidence").

The present dispute is directly analogous to the situation in *Unistress*. There, the parties worked together for over a year to design and construct a parking garage located adjacent to a hospital. 1991 WL 218545 at *1. "Eventually, a formal project meeting was held, and the parties reached an agreement on the price structure for their contract." *Id.* No written agreement was ever signed. *Id.* at *1-2. The court, in denying the hospital's motion to dismiss, found that the "parties engaged in a series of meetings and interactions wherein the defendant's words, actions, or conduct could reasonably form the basis for an assertion of the existence of an implied-in-fact contract." *Id.* at *2.

Here, Lincoln's complaint alleges a similar series of dealings that support the conclusion of an implied contract. It alleges that Aon was a "reinsurance intermediary . . . that holds itself out as being fully conversant with the customs and practices of the reinsurance industry." Complaint ¶¶ 8, 16. It alleges that Aon was engaged by the Pool to secure and maintain reinsurance protection for Lincoln and the other Pool members. *Id.* ¶¶ 16-17. It alleges that Aon also participated in the management of the Pool. *Id.* ¶ 17. The relationships among the parties

16

evolved over time, based on continuing meetings and interactions, just as in *Unistress*. *Id.*
¶¶ 16-18, 21.  These evolutions involved not only the types of responsibilities undertaken by
Aon, but also the amount of remuneration collected by Aon. *Id.* ¶ 17.  Over time, the duties of
Aon changed, as for example its initial responsibility as a retrocessional broker to secure
retrocessional protection developed into a responsibility to maintain that protection. *Id.* ¶ 29.

      Once again, Aon simply ignores the controlling authority.  Aon does not address implied
contracts under Section 52-576 but simply asserts that the agreement at issue is an "executory"
oral agreement governed by Connecticut General Statute § 52-581 ("Section 52-581").  *See* Aon
Brf. at 16-18.  To the contrary, whether a contract is executory or not is not determinative of
whether the contract is properly considered implied, and thus is not determinative of the proper
statute of limitations to apply.

      The present case is virtually identical to *Abou-Saif v. Cedarcrest Condominium
Association*, 2000 Conn. Super. LEXIS 2908 (Conn. Super. 2000).  There, defendant argued that
plaintiff's breach of contract allegations could "only be the basis for an executory contract barred
by the three year statute of limitations under Section 52-581." *Id.* *1.  The plaintiff opposed the
defendant's summary judgment motion by "rel[ying] upon an implied contract which she
claim[ed could] and should be inferred from the entire relationship between the parties, including
the oral representations." *Id.*  The court denied the defendant's motion for the precise reasons
Aon's motion here is properly denied, holding that defendant's reliance upon Section 52-581 was
"misplaced:"

> [Section 52-581] does not reach implied contracts which are
> governed by Section 52-576 .  The movant cannot force the
> plaintiff to interpret its cause of action in a way that favors the
> defendant.

*Id.* at *2.  The court concluded:

> When read in the light most favorable to the plaintiff the complaint
> and the evidence which could be offered under its allegations are
> sufficient [to] support a claim of implied contract. If not, the
> plaintiff would be entitled to replead.

*Id.* at *3-4. Aon does not and cannot cite any authority to the contrary.[12]

      2.     Lincoln's Claims Did Not Accrue Until October 2002

Even if Lincoln's claims were governed by Section 52-581, this suit would be timely

filed because Lincoln's causes of action did not "accrue" within the meaning of that statute until

it suffered injury, which first occurred on October 8, 2002, when the arbitration panel partially

rescinded Lincoln's retrocessional protection under the Three-Year Whole Account agreement.

Under Connecticut law, a cause of action does not accrue until "the plaintiff first could have

successfully maintained an action." *Engelman v. Connecticut Gen. Life Ins. Co.,* 690 A.2d 882,

294 n. 7 (Conn. 1997); *see also Coelho v. ITT Hartford,* 752 A. 2d 1063, 1066 (Conn. 1999) (to

the same effect). Moreover, damages are a required element of a breach of contract action.

*Echevarria v. Midcon Associates,* 2002 WL 31875351 *1 (Conn. Super. 2002); *Alcoa*

*Composites, Inc. v. Bonded Technologies, Inc.,* 2002 WL 1134548 *2 (Conn. Super. 2002). The

allegations in Lincoln's complaint demonstrate that the present action could not have been

maintained until October 8, 2002, at the earliest, because it was not until then that the arbitration

panel allowed the Retrocessionaires to rescind (in part) their obligations under the Three-Year

Whole Account agreement. Complaint ¶ 26. Lincoln filed suit less than eight months later, on

May 22, 2003.

Aon seeks to obtain the protection of the statute of limitations by asserting that Lincoln

was injured on January 25, 1999, when one of the Retrocessionaires announced that it was

terminating the Three-Year Whole Account agreement and reserving its right to seek rescission

---

[12]    The only case Aon cites in support of its assertion, *Gorlin v. Bond Richman & Co.,* 706 F.
Supp. 236 (S.D.N.Y. 1989) (applying Connecticut law), fails to address the statute of
limitations for implied contracts. As Aon admits, *see* Aon's Brief at 17, the "issue" faced
by the *Gorlin* court was whether the oral contract in dispute was an "executed" or
"executory" contract. Here, Lincoln alleges that the contract at issue is an implied
contract, expressly governed by section 52-576. *Gorlin* is irrelevant to that
determination.

of that agreement. Aon Brf. at 18; *see* Complaint ¶ 24. Yet Lincoln was not damaged by (and more to the point Lincoln's complaint does not allege damage from) Sun's termination of the agreement, which simply meant that *future* Pool business, if any, would not be protected by Sun. Rather, Lincoln and the other Pool members were damaged by the *rescission* of the agreement, thus retroactively removing protection in place. Complaint ¶ 27. It was not the Retrocessionaires' statements that they might seek rescission, or the Retrocessionaires' demand for arbitration seeking rescission, which damaged Lincoln, but rather the panel decision allowing rescission, removing the Pool members' retrocessional protection, and exposing Lincoln to massive liability it would not have suffered absent Aon's wrongdoing. *Id.* Absent that damage, Lincoln could not have maintained this action, *see Echevarria*, 2002 WL 31875351 at *1; *Alcoa Composites*, 2002 WL 1134548 at *2, and the cause of action therefore did not accrue until that point, *see Engelman*, 690 A.2d at 294 n.7; *Coelho*, 752 A.2d at 1066. Indeed, there is no question that if Lincoln had brought suit against Aon in January 1999, Aon would have moved to dismiss the action as premature, noting (correctly) that Lincoln had suffered no damage, had full retrocessional protection in place, and had no current expectation of suffering any damage at all. For Aon to now claim that Lincoln is barred from seeking justice now because it did not file a premature suit in January 1999 is unconvincing at best.[13]

### D. Venue Is Proper in This District

Aon's final argument – seeking dismissal on the basis of a typographical error – cannot help but remind one of Bleak House and *Jarndyce v. Jarndyce*. Aon does not and cannot dispute that venue is proper in this district, pursuant to 28 U.S.C. § 1391(a), because Aon is "resident" in

---

[13]    In addition, even if Lincoln's claims could ordinarily be considered to have accrued at the time of Sun's letter, there remains a question of fact regarding Aon's intentional concealment of its wrongdoing from Lincoln, thus tolling the statute of limitations. *See, e.g., Kennedy v.* Johns-*Manville Sales Corporation*, 62 A.2d 771, 772 (Conn. 1948) (no accrual of cause of action until plaintiff becomes aware of defendant's particular wrongdoing). The extreme methods to which Aon has resorted to suppress the truth regarding its actions are described in detail in Lincoln's Reply in support of its motion to transfer filed concurrently.

SF\436225.8

Connecticut within the meaning of 28 U.S.C. § 1391(c).[14] The fact that the complaint inadvertently stated that venue is proper pursuant to 28 U.S.C. § 1391(b) rather than 28 U.S.C. § 1391(a) is no basis for dismissal of the complaint, particularly in light of modern notice pleading rules. *See, e.g., Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002). In fact, a plaintiff need not plead venue at all in its complaint, *see Simon v. Ward*, 80 F. Supp. 2d 464, 468 n.9 (E.D. Pa. 2000); 15 Wright Miller & Cooper § 3826, rendering Aon's unsupported assertion that it must do so without typographical error particularly untenable. Finally, dismissal based on a typographical error would serve no purpose. Dismissal for "improper" venue may only be without prejudice, *In re Hall, Bayoutree Associates Ltd.*, 939 F.2d 802, 804 (9th Cir. 1991), and any such dismissal would result in nothing more than a re-filing of the case with a change of one keystroke.

---

[14] A corporation is resident in a district for venue purposes if it is "subject to personal jurisdiction" there. 28 U.S.C. § 1391(c). Aon is subject to personal jurisdiction in Connecticut, as it regularly conducts business here. *See* Mooney Decl. ¶ 6& Exh. C (excerpts from Aon's website). (Pursuant to Rule 201(d) of the Federal Rules of Evidence, Lincoln respectfully requests that the Court take judicial notice of the statements made by Aon on its website.

SF\436225.8

## VI.   CONCLUSION

For the foregoing reasons, Lincoln respectfully requests that Aon's motion to dismiss be

denied.


Dated:  October 23, 2003
        San Francisco, California

                                    LATHAM & WATKINS LLP

                                    By _____
                                    Richard Mooney (*pro hac vice*; ct25231)
                                    Attorneys for Plaintiff The Lincoln
                                    National Life Insurance Company

                                    505 Montgomery St. #1900
                                    San Francisco, CA 94111
                                    (415) 391-0600
                                    (415) 395-8095 (fax)
                                    richard.mooney@lw.com