**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

FILED

2003 OCT 28  A 9: 08

US DISTRICT COURT
HARTFORD CT

| | |
|---|---|
| THE LINCOLN NATIONAL LIFE INSURANCE COMPANY, | |
| Plaintiff, | Civil Action No. 303 CV 905 RNC |
| v. | **THE LINCOLN NATIONAL LIFE INSURANCE COMPANY'S MEMORANDUM OF LAW IN OPPOSITION TO MOTION TO STAY OF AON RE, INC.** |
| AON RE, INC. | |
| Defendant. | (October 24, 2003) |

**ORAL ARGUMENT REQUESTED**

SF\434869.10

## TABLE OF CONTENTS

Page

I.    PRELIMINARY STATEMENT ..............................................................................1

II.   FACTUAL AND PROCEDURAL BACKGROUND.........................................................2

    A.    Factual Background ..........................................................................2

    B.    Lincoln's Claims Against Aon...........................................................3

    C.    The Dispute Between Lincoln and Unicover............................................6

III.  AON'S MOTION IS PREMATURE........................................................................7

IV.   AON'S REQUEST FOR A STAY IS WITHOUT MERIT..............................................7

    A.    The Court's Inherent Authority ........................................................8

    B.    The Federal Arbitration Act.............................................................16

V.    CONCLUSION....................................................................................19

SF\434869.10

TABLE OF AUTHORITIES

Page(s)

## CASES

*American Home Assurance Co. v. Veccor Concrete Construction Co.*,
   629 F.2d 961 (4th Cir. 1980) ....... 13

*American Shipping Line, Inc. v. Massan Shipping Industries, Inc.*,
   885 F. Supp. 499 (S.D.N.Y. 1995) ....... 9, 11

*Arrowsmith v. United Press International*,
   320 F.2d 219 (2d Cir. 1963) ....... 7

*City of Bismarck v. Toltz, King, Duvall, Anderson & Associates, Inc.*,
   767 F.2d 429 (8th Cir. 1985) ....... 13

*Contracting N.W., Inc. v. City of Fredericksburg*,
   713 F.2d 382 (8th Cir. 1983) ....... 13

*Contracting Northwest, Inc. v. City of Fredericksburg*, 713 F.2d 382, 386-87 (8th Cir. 1983).... 18

*Cosmotek Mumessillik Ve Ticaret Ltd. Sirketti v. Cosmotek USA*,
   942 F. Supp. 757 (D. Conn. 1996) ....... 11

*Cragwood Managers, L.L.C. v. Reliance Insurance Company*,
   132 F. Supp. 2d 285 (S.D.N.Y. 2001) ....... 6

*Crawford v. West Jersey Health Systems*,
   847 F. Supp. 1232 (D.N.J. 1994) ....... 14, 15

*CTI-Container Leasing Corp. v. Uiterwyk Corp.*,
   685 F.2d 1284 (11th Cir. 1982) ....... 16

*Danisco A/S v. Novo Nordisk A/S*,
   2003 WL 282391 (S.D.N.Y. 2/10/2003) ....... 18

*Dean Witter Reynolds, Inc. v. Byrd*,
   470 U.S. 213 (1985) ....... 17

*Equal Employment Opportunity Commission v. Waffle House*,
   534 U.S. 279 (2002) ....... 18

*Harvey v. Joyce*,
   199 F.3d 790 (5th Cir. 2000) ....... 18

*Hill v. G.E. Power Systems, Inc.*,
   282 F.3d 343 (5th Cir. 2002) ....... 18

ii

*Ithaca College v. National Labor Relations Board,*
  623 F.2d 224 (2d Cir. 1980)                                          17

*Landis v. North American Co.,*
  299 U.S. 248 (1936)             9

*Meadows Indemnity Co. v. Baccala & Shoop Insurance Services, Inc.,*
  760 F. Supp. 1036 (E.D.N.Y. 1991)       14, 16

*Mehler v. The Terminix International Co.,*
  205 F.3d 44 (2d Cir. 2000)       17

*Nederlandse Ertstankersmaatchappij, N.V. v. Isbrandtsen Co.,*
  339 F.2d 440 (2d Cir. 1964)       13, 17

*Nieves v. Oswald,*
  477 F.2d 1109 (2d Cir. 1973)       17

*Prima Paint Corp. v. Flood & Conklin Manufacturing Co.,*
  388 U.S. 395 (1967)       17

*Sargent v. Rent-A-Car Corp.,*
  1996 WL 413725 (S.D.N.Y. 1996)       7, 10

*Sierra Rutile Limited v. Katz,*
  937 F.2d 743 (2d Cir. 1991)       9, 10

*Simitar Entertainment, Inc. v. Silva Entertainment, Inc.,* 44 F. Supp. 2d 986, 998 (D. Minn.
  1999)       16

*Subway Equipment Leasing Corp. v. Forte,*
  169 F.3d 324 (5th Cir. 1999)       18

*United Steel Workers of* America *v. Warrior and Gulf Navigation Co.,*
  363 U.S. 574 (1960)       18

*Volt Information Sciences v. Board of Trustees,*
  489 U.S. 468 (1989)       18

*WorldCrisa Corp. v. Armstrong,*
  129 F.3d 71 (2d Cir. 1997       17

SF\434869.10

## I.    PRELIMINARY STATEMENT

Plaintiff, The Lincoln National Life Insurance Company ("Lincoln"), respectfully requests that the Court deny the motion of defendant, Aon Re, Inc. ("Aon"), to stay this action pending completion of an arbitration to which Aon is not a party.

The motion to stay is premature in light of the parties' cross-motions to transfer venue pursuant to 28 U.S.C. section 1404. Although the parties disagree on the district to which this matter should be transferred, there is no dispute that it should be transferred. Both the governing case law and the interests of judicial economy favor having this motion decided by the transferee court.

On the merits, Aon's motion should be denied. Aon's liability to Lincoln is entirely independent of the liability of third party Unicover. Aon can and will be held liable to Lincoln for its own misconduct, whether or not Unicover is also liable to Lincoln. Aon's conclusory assertion that this action and the Unicover arbitration are "intertwined" is woefully short of meeting the standard for a stay.

A stay would inflict severe prejudice on Lincoln. This action is to recover for Lincoln's loss of reinsurance benefits caused by Aon's misconduct. Lincoln is a reinsurer with obligations to its own reinsureds. Lincoln has been paying those obligations, which run into many millions of dollars, without the benefit of the reinsurance on which it had counted to reduce its own exposure. Any delay will prolong the period during which Lincoln must pay its own reinsureds without the benefit of reimbursement for the loss of Lincoln's reinsurance protection.

It is no answer for Aon to say that Lincoln will eventually be made whole by recovering from Unicover in the Unicover arbitration. Unicover is defunct, and its ability to satisfy a judgment is extremely doubtful. Aon, on the other hand, touts itself as "the world's largest reinsurance broker." For 2002, its parent corporation reported consolidated revenues of $8.8 billion. Even if—as we expect—Aon and Unicover are *both* held liable to Lincoln, it would be a grave injustice to require Lincoln to resolve its claims against a defunct, judgment-proof corporation while being prevented from obtaining compensation from a solvent wrongdoer.

1

Aon is not a party to the Unicover arbitration, and the Federal Arbitration Act does not authorize granting a stay to a defendant who is not a party to the arbitration agreement. The Court's inherent authority to stay litigation pending the completion of other proceedings should be used sparingly and never in a situation where two proceedings allege independent liabilities and a stay would inflict serious prejudice.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

### A.  Factual Background

This action arises out of a pooling arrangement for the reinsurance of the accident and health portions of workers' compensation insurance policies. Complaint ¶ 6.[1] Lincoln joined with four other companies in a "reinsurance pool," a group of insurance or reinsurance companies that provided reinsurance protection to workers' compensation insurers. *Id.* ¶ 11.[2] The Pool was managed by Unicover, and was thus known as the Unicover Occupational Accident Reinsurance Pool (the "Pool"). *Id.* ¶ 13. Unicover had the authority to accept reinsurance business on behalf of the Pool. *Id.* ¶¶ 12-13.

The Pool also obtained its own reinsurance for the risks that the Pool members were accepting. Complaint ¶¶ 12, 16.[3] Each of the Pool members joined the Pool with the understanding that its risks would be substantially reduced by retrocessional reinsurance. *Id.* ¶ 14. On behalf of the Pool, Unicover engaged Aon, along with third party Rattner Mackenzie

---

[1]    Reinsurance is a transaction whereby one insurance company, the "reinsurer," in exchange for the payment of a premium, agrees to indemnify or reimburse another insurance company, the "reinsured" or "cedent," against all or part of a loss that the reinsured may sustain under insurance policies issued by the reinsured. Complaint ¶ 7.

[2]    In addition to Lincoln (which had an 18.75% interest in the Pool), the other members of the Pool during the relevant time were Connecticut General Life Insurance Company ("Connecticut General") (35% interest), Phoenix Life Insurance Company ("Phoenix") (23.75% interest), General & Cologne Life Re of America ("Cologne") (17.5% interest), and ReliaStar Life Insurance Company ("ReliaStar") (5% interest) (collectively, the "Pool members"). Complaint ¶ 13.

[3]    When a reinsurer obtains reinsurance from another reinsurer, the latter is called a "retrocessionaire." *Id.* ¶ 8.

Limited ("Rattner"), as a broker or "intermediary" to secure and maintain retrocessional protection for the Pool. *Id.* ¶ 29. In exchange, Aon received as a brokerage fee a percentage of the premium retroceded from the Pool. *Id.* ¶ 16. Aon also agreed to assist Unicover in its management of the Pool for which it also received a fee. In this manner, Aon received millions of dollars for performing its obligations, for which Lincoln bore 18.75% responsibility. *Id.* ¶ 21.

During the course of Aon's engagement, Sun Life Assurance Company of Canada, Phoenix, and Cologne (collectively, the "Retrocessionaires") agreed, effective December 1, 1997, to provide retrocessional reinsurance to the Pool for a period of three years (the "Three-Year Whole Account"). Complaint ¶ 18.

### B. Lincoln's Claims Against Aon

Aon's misconduct led to the partial rescission of the Pool's retrocessional protection provided by the Three-Year Whole Account, which caused each of the Pool members, including Lincoln, to suffer tens of millions of dollars of losses. Complaint ¶¶ 24-27.

Aon knew that the Retrocessionaires expected only a certain level of business from the Pool. Complaint ¶ 19. Nevertheless, Aon concealed from the Pool members and the Retrocessionaires the full amount of the premium volume (and thus risk) that was being retroceded to the Retrocessionaires. *Id.* ¶¶ 19, 31, 37, 42. In addition, when the Retrocessionaires began to inform Aon that they were concerned about even the level of premium that they understood was being ceded to them, Aon concealed that concern from the Pool members. *Id.* Specifically:

- "Aon knew that the Pool members and the Retrocessionaires expected Unicover to reinsure only a certain level of business and that they would object to the excessive levels of business that Aon was convincing Unicover to reinsure. Thus, in an effort to continue earning substantial commissions on the business, Aon intentionally concealed from the Pool members and the Retrocessionaires the full extent of the business being written by Unicover." Complaint ¶ 19.

3

- When the Retrocessionaires did complain about the volume of business being retroceded to the Three-Year Whole Account, "Aon concealed from the Pool members the full extent of the Retrocessionaires' complaints and instead led Unicover and the Pool members to believe that the Retrocessionaires were not dissatisfied with the business being retroceded to them." *Id.* ¶¶ 20-21.

- Even when the Retrocessionaires told Aon that "they wanted no additional business to be written or retroceded, . . . Aon failed fully to disclose to the Pool members the Retrocessionaires' concerns and, in a quest for more fees, encouraged Unicover to continue writing and retroceding more business." *Id.* ¶¶ 22-23.

Based largely upon their contention that they were misled about the volume of premium to be retroceded to them, beginning in January 1999, the Retrocessionaires unilaterally terminated the Three-Year Whole Account and eventually demanded arbitration seeking to rescind the agreement. Complaint ¶¶ 24-27. On October 8, 2002, after a lengthy hearing, the arbitration panel issued an award relieving the Retrocessionaires of responsibility for business bound or renewed by Unicover after August 31, 1998. *Id.* ¶ 26.[4] That award—the result of Aon's misconduct—caused Lincoln to suffer tens of millions of dollars in damage. *Id.* ¶ 27.

The loss of the Pool's reinsurance did not eliminate the Pool members' own obligations to reinsure workers' compensation insurers. Declaration of Cheryl A. Rogers ("Rogers Decl."), filed herewith, ¶ 9. The partial rescission of the Three-Year Whole Account meant that the Pool members would pay *all* of the losses that they had agreed to reinsure but would receive only a *fraction* of the reimbursement that they had expected from the Retrocessionaires. *Id.* ¶ 7. Lincoln has already paid tens of millions of dollars to its own reinsureds that would have been reimbursed under the Three-Year Whole Account. *Id.* ¶ 10. It is continuing to make payments

---

[4]    The hearing was indeed lengthy. It began on July 8, 2002 and ended on August 7, 2002. Complaint ¶ 26. The arbitration panel heard testimony from 20 witnesses and received 584 exhibits. Declaration of Richard J. Mooney, filed herewith ("Mooney Decl.") ¶ 2.

4

to reinsureds of the Pool on a regular basis according to the pertinent terms of the reinsurance contracts. *Id.* ¶ 11. It expects to pay a substantial additional amount to meet its obligations to its own reinsureds before those obligations are fully performed. *Id.* ¶ 10.

The damages that Lincoln seeks to recover from Aon include the amounts that it has paid and will pay that would have been reimbursed under the Three-Year Whole Account but for Aon's misconduct. Aon is well able to satisfy a judgment for the full amount of Lincoln's damages. Its website proclaims that Aon is "the world's largest reinsurance broker."[5] Its publicly traded parent, Aon Corporation, reported consolidated revenues of $8.8 billion in 2002.[6]

On May 22, 2003, Lincoln filed this action alleging that Aon breached its contracts to serve as a reinsurance intermediary between the Pool and the Retrocessionaires and to assist in the management of the Pool. Complaint ¶¶ 29-31, 35-36. Lincoln also filed suit in the United States District Court for the District of New Jersey alleging tort claims against Aon and alleging both tort and contract claims against Rattner. Mooney Decl. ¶ 3 & Exh. A.[7] On August 18, 2003, Lincoln filed a motion pursuant to 28 U.S.C. section 1404(a), requesting that this action be transferred to the United States District Court for the District of New Jersey. Aon has opposed the motion to transfer to New Jersey and filed a cross motion requesting transfer to the United States District Court for the Northern District of Illinois.

---

[5]   *See* http://www.aon.com/about/aon corporation/history_facts.jsp (last visited October 23, 2003) (with excerpts attached as Exhibit C to the Declaration of Richard Mooney in Opposition to Aon's Motion to Dismiss, filed herewith). Pursuant to Rule 201(d) of the Federal Rules of Evidence, Lincoln respectfully requests that the Court take judicial notice of the statements made by Aon on its website.

[6]   *Id.*

[7]   On the same day, Pool members Phoenix and Cologne filed similar actions in both this Court and the United States District Court for the District of New Jersey. Unlike Lincoln, Phoenix and Cologne sued Unicover and its principals and successors. Mooney Decl. ¶ 4 & Exh. B. On the same day, Phoenix and Cologne (but not Lincoln) initiated an arbitration against Unicover. *Id.* ¶ 5. In addition, Pool member ReliaStar filed a lawsuit in New Jersey Superior Court (Middlesex County) alleging tort, contract, and racketeering claims against Aon, Rattner, Unicover, and Unicover's principals and successors in interest. *Id.* ¶ 6 & Exh. C.

### C. The Dispute Between Lincoln and Unicover

After Lincoln had filed suit against Aon, it was added as a party to the Unicover arbitration. On June 20, 2003, in response to the arbitration demands of Phoenix and Cologne, Unicover made a counter-demand for arbitration against Phoenix, Cologne, and ReliaStar pursuant to the arbitration clause in the pool management agreement between Unicover and the Pool members. Mooney Decl. ¶ 7. On July 18, 2003, Unicover demanded arbitration against Lincoln in the same arbitration. *Id.* ¶ 8. On August 11, 2003, Lincoln served a counter-demand for arbitration on Unicover. *Id.* ¶ 9.

The Unicover arbitration is in its infancy. Unicover and the Pool members have selected their respective party-appointed arbitrators. But no umpire has been chosen; no position statements have been exchanged; no claims or defenses have been specified; no organizational meeting has taken place; and no discovery has been taken. Mooney Decl. ¶ 10.

Unicover is defunct. "Most significantly, [Unicover] is no longer a going business firm. It is already winding down; it has no clients and only a few employees who primarily assist in [Unicover's] litigation."[8] *Cragwood Managers, L.L.C. v. Reliance Insurance Company*, 132 F. Supp. 2d 285, 288 (S.D.N.Y. 2001). In *Cragwood Managers*, the court affirmed an interim arbitration award requiring Unicover to post a $4 million bond, which Unicover claimed was nearly all of its remaining assets, in favor of an adverse party because "[i]t is evident that [Unicover's] current expenditures . . . if allowed to continue will eventually deplete its assets so that nothing will be left for [the adverse party] to recover if it wins the arbitration." *Id.* at 286. That case was decided in February 2001. Unicover has since been involved in substantial litigation, including the Three-Year Whole Account arbitration. *See also id.* at 286, n.4. Although we are not privy to Unicover's financial condition, these facts indicate that there is

---

[8]     The opinion in *Cragwood Managers, L.L.C. v. Reliance Insurance Company*, 132 F. Supp. 2d 285 (S.D.N.Y. 2001) refers to Unicover as "Cragwood." Unicover changed its name to Cragwood in 1999. Mooney Decl. ¶ 11 & Exh. D (deposition testimony of John Pallat in Three-Year Whole Account arbitration).

6

even less reason now to expect Unicover to be able to satisfy a judgment than there was in 2001 when *Cragwood Managers* was decided.

## III.    AON'S MOTION IS PREMATURE

Both parties to this action agree that the action should be transferred to another district court, whether that be District of New Jersey or the Northern District of Illinois. When both venue motions and substantive motions are pending, the usual course is to resolve the venue motions first, thus allowing the transferee court (if transfer is appropriate) to resolve the substantive issues. *See, e.g., Arrowsmith v. United Press International*, 320 F.2d 219, 221 (2d Cir. 1963); *Sargent v. Rent-A-Car Corp.*, 1996 WL 413725 *2 (S.D.N.Y. 1996).

## IV.    AON'S REQUEST FOR A STAY IS WITHOUT MERIT

Aon's motion rests on a basic misconception of Lincoln's claims. In conclusory fashion Aon asserts repeatedly that the Unicover arbitration "will likely dispose of all or most of the issues presented here." Aon Brief in Support of Motion to Stay ("Aon Br.") at 2; *see also id.* at 10. Because the Unicover arbitration has barely commenced and the parties have not yet stated their claims and defenses, Aon's position that the arbitration might dispose of all the issues in this case is utter speculation. What will and will not be resolved in the Unicover arbitration is currently unknown even to the parties to that arbitration let alone to Aon. Nonetheless, Aon claims that the Unicover arbitration will resolve the issues presented here because the duties alleged in the complaint "are indisputably derived from the Management Agreement." *Id.* at 9.

This begs the question whether Aon has read the complaint. Much of the complaint focuses on Aon's duties as a reinsurance intermediary (Complaint ¶¶ 9, 16, 19, 28-33), which Aon ignores in its motion. Aon's duties as the Pool's reinsurance intermediary were wholly separate and independent from the management agreement. Moreover, Aon's assertion that the duties alleged in the complaint "are indisputably derived from the Management Agreement," are belied by its own statement one page earlier that "Aon Re is not a party to the Management Agreement." Aon Br. at 8, 9. Aon can hardly claim that the management agreement controls this case while simultaneously proclaiming that it is not a party to it.

7

In any event, Aon is wrong in asserting that the Unicover arbitration will likely resolve Lincoln's claims in this action. According to the allegations of the complaint, Aon breached its contractual obligations by misrepresenting and concealing the Retrocessionaires' complaints about the amount of business being retroceded to them. *See supra* at 3-4. Aon can be held liable to Lincoln for this misconduct regardless of whether Unicover is also held liable. When "Aon was convincing Unicover to reinsure" excessive levels of business (Complaint ¶ 19), when Aon "led Unicover and the Pool members to believe that the Retrocessionaires were not dissatisfied with the business being retroceded to them" (*id.* ¶ 21), when Aon "falsely assured Unicover that [the Retrocessionaires were] calm" (*id.*), and when Aon "in a quest for more fees, encouraged Unicover to continue writing and retroceding more business" (*id.* ¶ 23), Aon became liable to Lincoln whether or not Unicover is also liable for separately breaching its duties under the management agreement. Whether Unicover was misled by these misrepresentations or, alternatively, was colluding with Aon to deceive the Pool members so that both Unicover and Aon would earn more fees and commissions on the increasing amounts being retroceded to the Retrocessionaires, Aon is liable for its misconduct separate and apart from Unicover.

No authority supports the conclusion that this action should be stayed pending the resolution of independent claims against a third party in an arbitration to which Aon is not a party.

## A. The Court's Inherent Authority

Aon's request for a stay pending arbitration against a third party faces formidable barriers, none of which Aon has overcome. The seminal Supreme Court decision recognizing the district court's authority to stay litigation pending other proceedings cautioned that the authority was to be used sparingly:

> [T]he suppliant for a stay must make out a clear case of hardship or
> inequity in being required to go forward, if there is even a fair
> possibility that the stay for which he prays will work damage to
> some one else. Only in rare circumstances will a litigant in one
> cause be compelled to stand aside while a litigant in another settles
> the rule of law that will define the rights of both.

*Landis v. North American Co.*, 299 U.S. 248, 255 (1936); *see also Sierra Rutile Limited v. Katz*, 937 F.2d 743, 750 (2d Cir. 1991) (party seeking stay "bears a heavy burden of showing necessity for the stay").

Following the Supreme Court's direction in *Landis*, the courts have developed several requirements that a party seeking to stay litigation pending an arbitration to which it is not a party must meet to justify that stay. Four requirements are particularly relevant here. *First*, the issues in the litigation and the arbitration must be so closely related that "resolution of issues in the arbitration may be determinative of issues in the case." *Sierra Rutile*, 937 F.2d at 750. Thus, a stay pending arbitration is not proper when "[t]he difference between the parties and issues in the court action and the arbitration undermines the rationale that the arbitration will have an effect on the stayed action," such that "the claims against the various defendants [in court] will be largely if not wholly unaffected by the resolution of claims [in arbitration.]" *Id.*

For the reasons discussed, Lincoln's claims against Unicover will not be determinative of its claims against Aon. Aon must face the consequences of the conduct alleged in the complaint whether or not Unicover breached its separate obligations to the Pool members.

*Second*, Aon must be bound by the result of the Unicover arbitration, as otherwise it would unfairly obtain "two bites at the apple." *Sierra Rutile, Ltd. v. Katz*, 937 F.2d 743, 750 (2d Cir. 1991); *see also American Shipping Line, Inc. v. Massan Shipping Industries, Inc.*, 885 F. Supp. 499, 502 (S.D.N.Y. 1995) (denying stay when it was "far from certain that arbitration proceedings will have any preclusive effect" on the non-arbitrable claims, and the moving parties did not agree to be bound by the results of the arbitration) (citations omitted); *see also id.* ("It makes no sense to stay proceedings pending the end of the arbiration when any outcomes of the arbitration with which the moving defendants disagree will have to be relitigated in the federal courts anyway.").

9

Nothing in Aon's motion suggests that it will agree to be bound by the result of the Unicover arbitration. It is not a party to that arbitration, and it is quick to proclaim that it was not a party to the management agreement. *See* Aon Br. at 8. Under these circumstances, the Unicover arbitration will not determine the issues in this case, and a stay should not issue.

*Third*, Aon "must demonstrate to the satisfaction of the court that they have not taken nor will take any steps to hamper the progress of the arbitration proceeding, that the arbitration may be expected to conclude within a reasonable time, and that such delay as may occur will not work undue hardship." *Sierra Rutile, Ltd. v. Katz*, 937 F.2d 743, 750 (2nd Cir. 1991) (internal quotations omitted). In fact, Aon has done the opposite.

Unlike Pallat and other Unicover witnesses,[9] Aon did not testify in the Three-Year Whole Account arbitration. Fearful about its role in causing the loss of the Pool members' reinsurance protection, Aon obstructed the arbitration. It refused over a period of several months to provide documents directly relevant to the arbitration that it was holding on behalf of certain of the Retrocessionaires who owned the documents. Mooney Decl. ¶ 13. Even after the Retrocessionaires sued Aon to gain access to the documents (for use and production to all parties in the Three-Year Whole Account arbitration), Aon stonewalled at every turn, causing months of delay. Eventually, the documents were obtained through litigation against Aon. When the return of the documents was finally complete after a wait of more than a year, the court observed:

---

[9]    In addition to Pallat, Unicover witnesses Robert Wojtowicz and Brian Cook testified at the hearing of the Three-Year Whole Account arbitration. Mooney Decl. ¶ 12. Another Unicover witness, Kenneth Griebell, was deposed but did not testify at the hearing. *Id.*.

From the moment this matter was filed, Sun Life was entitled to ask and the only thing that Aon had to do was produce, period, end of discussion. There was no confusion. When the Court considers this matter, it considers – there are a number of phrases that come to the Court's mind, acute calcification of the cranium being one of them. That means hard-headed. Other words that are more recognized by lawyers come to mind, such as *obstreperous, intransigence, defiance, denial, misleading, frivolous, misconduct, false, those kinds of things.* Almost from the moment that this matter began and came to the Court's attention it was clear to the Court that *the defendant was engaging in every perceived procedural ploy that it thought it could avail itself of, totally in an effort to frustrate and make difficult the acquisition of materials to which the plaintiff had a clear, absolute right.*

Mooney Decl. ¶ 14 & Exh. F (emphasis added).

Aon took a similar approach to the Pool members' efforts to obtain the testimony of Aon executive Roger Smith during the course of the Three-Year Whole Account arbitration. When the arbitration panel issued a subpoena to compel his deposition, Mr. Smith evaded service. In a successful effort to avoid giving testimony, Smith apparently left the country, avoided his own home, and barred access to the floor of his Chicago office building. *See* Mooney Decl. ¶ 15 & Exh. G. During the arbitration hearing, the Retrocessionaires capitalized on Aon's obstructionism by arguing that "it would be intriguing to know what really happened. But Mr. Smith isn't here, Mr. Smith is hiding outside this jurisdiction." Mooney Decl. ¶ 16 & Exh. H (Three-Year Whole Account Tr. at 6046:22-24); *see also id.* ¶ 17 & Exh. I (Three-Year Whole Account Tr. at 3813:3-8; counsel for Phoenix cross-examining Pallat about why Smith was "hiding in London to avoid testifying in this case").

Aon has already hampered the resolution of this dispute. By engaging in this behavior, Aon has foreclosed itself from obtaining any further delay in the form of a stay.

*Fourth*, Aon must demonstrate that Lincoln will not suffer undue hardship from the delay Aon seeks to impose. *Cosmotek Mumessillik Ve Ticaret Ltd. Sirketti v. Cosmotek USA*, 942 F. Supp. 757, 760 (D. Conn. 1996) ("A stay may not be granted, despite the existence of compelling reasons to grant it, if [movants] have not shown that plaintiff would not undergo undue hardship from the resultant delay"); *American Shipping Line, Inc. v. Massan Shipping Industries, Inc.*, 885 F. Supp. 499, 503 (S.D.N.Y. 1995) (same).

11

Aon has made no effort to show a lack of hardship to Lincoln from a stay, nor could it. This case concerns the loss of many millions of dollars of reinsurance protection for Lincoln's participation in the Pool. The loss of the Pool's retrocessional reinsurance did not absolve Lincoln and the other Pool members from complying with their own contractual obligations to their reinsureds. The Pool members have been paying millions of dollars to their reinsureds for which they expected substantial reimbursement under the Three-Year Whole Account. *See supra* at 4-5. They will continue to do so until their reinsurance obligations are fully performed. But they will not obtain the reimbursement that they lost through Aon's misconduct until they recover damages from Aon for the loss of their reinsurance. A stay would mean that Lincoln would be required to continue paying millions of dollars to the Pool's reinsureds, while its right to recover for the loss of its own reinsurance would be stalled, perhaps for years, while the Unicover arbitration is being resolved. That is prejudice by any definition.

A stay would inflict prejudice on Lincoln in another way. Unicover is defunct and apparently judgment-proof, while Aon is well able to satisfy any judgment that will result from this action. *See supra* at 6. Requiring Lincoln to devote time, energy and resources to pursuing its claims against a judgment-proof adversary, while a solvent defendant sits idle on the sidelines, would be another form of undue hardship. Unicover's decision to add Lincoln to the Unicover arbitration apparently requires that Lincoln prosecute its claims against Unicover. But there is no legitimate reason why Lincoln should not be allowed simultaneously to pursue its rights against a party that can pay for the consequences of its misconduct.

In light of Aon's failure to meet a single one of the four requirements, and the "heavy burden" Aon bears in seeking this stay, it is not surprising that none of the cases cited by Aon in its brief supports the requested stay. Indeed, the great majority of the cases Aon cites involved requests for stays made by sureties, guarantors, or insurers, pending resolution of the plaintiff's claim against the direct obligor. Those are secondary liability situations in which the liability of the surety, guarantor, or insurer is entirely derivative of, and dependent upon, the liability of the primary obligor. In such situations, unlike in the present case, resolution of the claim against the

12

direct obligor would either completely or largely obviate the need for litigation against the surety, guarantor, or insurer. In this case, for the reasons discussed, Aon's liability does not depend on Unicover's, and the cases cited by Aon are inapplicable.

For example, Aon's brief cites the decision in *Nederlandse Ertstankersmaatchappij, N.V. v. Isbrandtsen Co.*, 339 F.2d 440 (2d Cir. 1964), as the only Second Circuit decision supporting its requested stay. Aon Br. at 10 & n.33. That case involved litigation against a guarantor during the pendency of arbitration against the direct obligor. *Nederlandse*, 339 F.2d at 441. In that case, it made no sense to allow the litigation to proceed against the guarantor, because the guarantor could not be liable in the litigation unless the direct obligor was found liable in the arbitration (and then did not discharge its obligation). Notably, even in that extreme situation, the court said no more than that the district court was permitted to consider granting the requested stay, and cautioned that such a stay should be granted only in "rare circumstances." 339 F.2d at 442 (internal quotation omitted).

The other decisions cited by Aon similarly provide no support for its position. Aon relies on a number of cases that involve construction disputes. In *City of Bismarck v. Toltz, King, Duvall, Anderson & Associates, Inc.*, 767 F.2d 429 (8th Cir. 1985), the city sued a general contractor, the general contractor's engineer, and the general contractor's insurer, all based on the allegation that the general contractor had failed properly to complete a particular sewer project. In that situation, the court stayed litigation against the engineer and insurer during the pendency of the city's arbitration against the general contractor. Again, because any liability of the engineer was because of the engineer's status as the general contractor's agent, and any liability of the insurer was purely derivative of the general contractor's liability, a stay was plainly appropriate. *Id.* at 432; *see also Contracting N.W., Inc. v. City of Fredericksburg*, 713 F.2d 382 (8th Cir. 1983) (city's lawsuit with identical factual allegations against subcontractor, insurance company, and general contractor with whom city had arbitration agreement properly stayed pending the city's arbitration against the general contractor); *American Home Assurance Co. v. Veccor Concrete Construction Co.*, 629 F.2d 961 (4th Cir. 1980) (arbitration between

13

general contractor and subcontractor justified stay of litigation involving the sureties and guarantors of the general contractor and subcontractor).

The situation here is materially different again because Aon's liability is independent of Unicover's. None of Lincoln's allegations against Aon depends on any actual or potential wrongdoing by Unicover. Rather, the allegations concern independent wrongdoing by Aon— violating its agreements to act as a retrocessional broker and to assist in the management of the Pool—which is separate from any liability of Unicover. Thus, Aon's assertion that "[i]f Unicover defeats Lincoln's claims in the arbitration, this action likely will be unnecessary," Aon Br. at 10, is incorrect. And absent that assertion, the very rationale for Aon's motion evaporates.

The remaining two cases Aon cites in which a stay pending arbitration was granted are the district court decisions in *Crawford v. West Jersey Health Systems*, 847 F. Supp. 1232 (D.N.J. 1994), and *Meadows Indemnity Co. v. Baccala & Shoop Insurance Services, Inc.*, 760 F. Supp. 1036 (E.D.N.Y. 1991), each of which addresses the stay question only briefly and neither of which bears on the present case. In *Crawford*, the plaintiff was a former employee of defendant West Jersey Physician Associates ("WJPA"), pursuant to an employment agreement containing a provision requiring that certain types of disputes between plaintiff and WJPA be resolved in arbitration. After WJPA fired plaintiff, she filed a lawsuit alleging (after amendment) five counts of sex and age discrimination, violation of 42 U.S.C. § 1983, retaliatory discharge, tortious interference with contract, defamation, and negligent and intentional infliction of emotional distress. 847 F. Supp. at 1235. Defendants moved to dismiss certain of the claims, and to stay the remainder pending arbitration. The court first addressed the motion to dismiss (including plaintiff's cross-motion for leave to file a Second Amended Complaint), and dismissed all claims except (1) three claims of sex and age discrimination against WJPA only, (2) one claim of sex and age discrimination against WJPA employee Dr. Michael Musci "in his official capacity" as the "agent" of WJPA, (3) a tortious interference with contract claim against WJPA only, (4) a claim for trade libel against unspecified defendants, and (5) a claim of

14

negligent infliction of emotional distress against unspecified defendants. 847 F. Supp. at 1235-39.

After thus limiting plaintiff's complaint, the court turned to defendants' motion to stay the action in light of plaintiff's arbitration agreement with the principal defendant, WPJA. The court held that the sex and age discrimination claims against WJPA were within the scope of the plaintiff's agreement with WJPA and therefore were required to be arbitrated. 847 F. Supp. at 1243. The court also held that the arbitration agreement applied to plaintiff's sex and age discrimination claim against Dr. Musci because he was alleged to have been "the agent" of WJPA. *Id.* at 1243 n.14. The remaining question was whether the trade libel and negligent infliction of emotional distress claims should be stayed, notwithstanding that they were outside the scope of the arbitration agreement. The court held that those claims should be stayed, since the claims "involve[d] many of the same factual and legal issues" and "all of the parties are either fellow [WJPA] employees or corporate entities related to [WJPA]." *Id.* at 1243.

The situation here could hardly be more different. In *Crawford*, the principal claims went forward in the arbitration, and the principal defendants were required to answer those claims in the proper – arbitral – forum. It was only the essentially derivative claims against related corporate entities and/or employees that were temporarily stayed while the main action proceeded. Here, by contrast, Aon seeks to have the principal claims (indeed, all claims) against the principal defendant (Aon) stayed indefinitely, while neither Aon nor any affiliated entity is required to answer *any* claims in any forum for a period of years, all while Lincoln's damages mount.

*Meadows* is equally dissimilar. There, plaintiff was part of a reinsurance pool during the years 1979 and 1984. Following losses, plaintiff brought suit against two groups of defendants – the other members of the pool (known as the "Issuing Company defendants") and the companies charged with managing the pool (the "Managing Agent defendants"). Plaintiff alleged that the "Issuing Company defendants, working in concert with the Managing Agent defendants, allegedly developed or became apprised of information material to [plaintiff's] decision to renew

15

its participation in the Pool, which they failed to disclose to Meadows." *Meadows*, 760 F. Supp. at 1038. In the principal portion of the opinion, the court held that the claims against the Issuing Company defendants were subject to an arbitration agreement and had to be arbitrated. *Id.* at 1040-44. The court then addressed the Managing Agent defendants' argument that the court should exercise its discretion to stay the action as to the Managing Agent defendants "because the claims asserted against the Issuing Company defendants are the same claims asserted against the Managing Agent defendants." *Id.* at 1039. The court concluded that the stay was proper, in part because of the lack of hardship or prejudice to plaintiff, which would be able to prosecute its claims based on the same conduct against the Issuing Company defendants. *Id.* at 1045. Here, by contrast, Lincoln's claims against Aon are not the same as Lincoln's claims against Unicover. Lincoln has not alleged that Aon and Unicover, acting together and as each other's agent, committed a single wrong against Lincoln; rather, Lincoln alleges that Aon itself wronged the Pool members (including Lincoln), and caused the loss of the retrocessional protection. *See* Complaint ¶¶ 19-23. In addition, Lincoln would suffer palpable prejudice as its claims against Aon languished for years. Declaration of Cheryl Rogers filed herewith ¶¶ 7-11.[10]

## B. The Federal Arbitration Act

Aon also argues that the Court may order a stay pursuant to Section 3 of the Federal Arbitration Act, 9 U.S.C. section 3. *See* Aon Br. at 11-14. This argument requires only a brief response because the standard set out by Aon is immediately fatal to its own argument:

---

[10] The other decisions cited by Aon actually *denied* the party's request to stay claims not subject to the arbitration agreement. *See CTI-Container Leasing Corp. v. Uiterwyk Corp.*, 685 F.2d 1284, 1290 (11th Cir. 1982) (denying defendant's request for a stay of the claims pending arbitration against a third party); *Simitar Entertainment, Inc. v. Silva Entertainment, Inc.*, 44 F. Supp. 2d 986, 998 (D. Minn. 1999) (denying request to expand stay beyond the claims subject to the arbitration clause).

SF\434869.10

> A court asked to stay proceedings pending arbitration must resolve two issues: *First, it must determine whether the parties agreed to arbitrate*; second, it must determine the scope of the agreement. If the court finds these two conditions are satisfied, the court must stay the litigation. Here, Aon Re is a not a party to the to the Management Agreement, so it did not consent to arbitrate any dispute with Lincoln or Unicover.

Aon Br. at 11-12 (citing *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985); *Prima Paint Corp. v. Flood & Conklin Manufacturing Co.*, 388 U.S. 395, 400 (1967); *Mehler v. The Terminix International Co.*, 205 F.3d 44, 47 (2d Cir. 2000) (emphasis added). Because Aon does not claim that it agreed to arbitrate anything with Lincoln, it does not satisfy the requirements of section 3. In fact, Aon goes even further, and admits that controlling Second Circuit authority precludes precisely the relief Aon requests here. Aon Br. at 12 ("The Second Circuit has previously stated that the granting of a stay under § 3 is not allowed when the party requesting the stay is not a signatory to the arbitration provision.") (citing *WorldCrisa Corp. v. Armstrong*, 129 F.3d 71, 76 (2d Cir. 1997), and *Nederlandse Erts-Tankersmaatschappij, N.V. v. Isbrandtsen Co.*, 339 F.2d 440, 441 (2d Cir. 1964)).

After thus noting some of the controlling authority directly on point against it, Aon nonetheless forges boldly ahead, arguing that this Court should ignore that controlling authority in light of "developing authority" in other Circuits and in a different District Court of this Circuit. Aon Br. at 13. It is fundamental jurisprudence, however, that a District Court may not simply ignore the holdings of the Court of Appeals for the Circuit in which it sits, regardless of whether decisions of another Circuit might appear more appealing. *Ithaca College v. National Labor Relations Board*, 623 F.2d 224, 228 (2d Cir. 1980); *Nieves v. Oswald*, 477 F.2d 1109, 1112 (2d Cir. 1973). Having admitted that this Circuit's authority currently precludes its

17

requested relief, Aon may not be granted that relief unless and until the United States Supreme Court (or the Second Circuit *en banc*) overrules that authority.[11]

In any event, even if this Court were free to ignore Second Circuit authority, the cases cited by Aon provide no support for imposing a stay in the present circumstances. The principal decision upon which Aon relies is *Hill v. G.E. Power Systems, Inc.*, 282 F.3d 343 (5th Cir. 2002), which held that a stay of litigation pending arbitration against a third party is permissible only if the lawsuit "is based upon the same operative facts and is inherently inseparable from the claims" in the arbitration." *Id.* at 347. Here, the claims against Aon are not "inherently inseparable" from the claims against Unicover. *See supra* at 9, 14, 16.

Similarly, a stay was appropriate in *Harvey v. Joyce*, 199 F.3d 790 (5th Cir. 2000), only because the non-signatory's "potential liability derives from [the signatory's] conduct" and the claims were "inherently inseparable" from the claims against [the signatory]." *Id.* at 795. *Subway Equipment Leasing Corp. v. Forte*, 169 F.3d 324 (5th Cir. 1999), allowed a stay when one of the defendants had an arbitration agreement with plaintiff and the other defendants (1) were corporate entities related to that defendant, and (2) were allegedly liable only for breach of the contract containing the arbitration clause. *Id.* at 329. In *Danisco A/S v. Novo Nordisk A/S*, 2003 WL 282391 *4 (S.D.N.Y. 2/10/2003), the court held only that a corporate plaintiff could not avoid an agreement to arbitrate by adding as a second plaintiff one of the corporation's employees. And the last decision to which Aon cites is *Contracting Northwest, Inc. v. City of Fredericksburg*, 713 F.2d 382, 386-87 (8th Cir. 1983), which is inapposite for the reasons detailed in section IV.A, *supra*.

---

[11]     The Second Circuit authority is consistent with numerous decisions of the United States Supreme Court. *See, e.g.*, *Equal Employment Opportunity Commission v. Waffle House*, 534 U.S. 279, 294 (2002) (no arbitration of claims between a party to a contract with an arbitration clause and a non-party to the contract); *Volt Information Sciences v. Board of Trustees*, 489 U.S. 468, 474-75 (1989) (no arbitration other than what is provided for in the contract); *United Steel Workers of America v. Warrior and Gulf Navigation Co.*, 363 U.S. 574, 582 (1960) ("[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which it has not agreed so to submit.").

## V.    CONCLUSION

For the foregoing reasons, Lincoln respectfully requests that Aon's motion to stay be

denied.


Dated:  October 23, 2003
         San Francisco, California

                              LATHAM & WATKINS LLP

                              By  _____

                              Richard Mooney (admitted *pro hac vice*)
                              Attorneys for Plaintiff The Lincoln
                              National Life Insurance Company

                              505 Montgomery St. #1900
                              San Francisco, CA 94111
                              (415) 391-0600
                              (415) 395-8095 (fax)
                              richard.mooney@lw.com

SF\434869.10