LATHAM & WATKINS LLP
Keith Weingold (Bar No. KW-8934)
Eric Westenberger (Bar No. EW-1488)
One Newark Center, 16th Floor
Newark, NJ 07101
Telephone: (973) 639-1234
Facsimile: (973) 639-7298
Attorneys for Plaintiff The Lincoln National
Life Insurance Company

RECEIVED-CLERK
U.S. DISTRICT COURT

2003 MAY 22 P 12: 16

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| THE LINCOLN NATIONAL LIFE INSURANCE COMPANY, an Indiana corporation,<br><br>Plaintiff,<br><br>v.<br><br>AON RE, INC., an Illinois corporation; and RATTNER MACKENZIE LIMITED, an English corporation,<br><br>Defendants. | CIVIL ACTION NO. 03-CV-2394 (DMC)<br><br>COMPLAINT AND DEMAND FOR JURY TRIAL |

Plaintiff, The Lincoln National Life Insurance Company ("Lincoln"), by its attorneys, Latham & Watkins LLP, hereby alleges as follows:

### THE PARTIES

1. Lincoln is an Indiana corporation with its principal place of business in Fort Wayne, Indiana.

2. Defendant, Aon Re, Inc. ("Aon"), is an Illinois corporation with its principal place of business in Chicago, Illinois. Aon is a licensed insurance and reinsurance intermediary in the state of New Jersey.

3. Defendant, Rattner Mackenzie Limited ("Rattner"), is a corporation organized and existing under the laws of England with its principal place of business in London,

England. At all relevant times, Rattner conducted business with entities in the United States, including in the State of New Jersey.

## JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332, because there is complete diversity of citizenship among the parties and the amount in controversy exceeds $75,000.

5. This Court has personal jurisdiction over Aon and Rattner (together, "defendants"), because each has conducted business in New Jersey, and thereby purposefully availed itself of the benefits and protections of this jurisdiction.

6. Venue is proper in this District pursuant to 28 U.S.C. § 1391(a) because defendants reside here.

## BACKGROUND

7. This action arises out of a pooling arrangement by life and health insurers for the reinsurance of the accident and health portions of workers' compensation insurance policies, otherwise known as workers' compensation carve-out reinsurance.

8. Reinsurance is a transaction whereby one insurance company, the "reinsurer," in exchange for the payment of a premium, agrees to indemnify or reimburse another insurance company, the "reinsured" or "cedent," against all or part of a loss that the reinsured may sustain under insurance policies issued by the reinsured.

9. A reinsurer may further reinsure its risk with another reinsurer. The reinsured in such situations is called the "retrocedent," and the reinsurer that receives the premium and assumes risk from the retrocedent is called the "retrocessionaire."

10. A "reinsurance intermediary" is an industry professional that holds itself out as being fully conversant with the customs and practices of the reinsurance industry. Reinsurance intermediaries typically handle all dealings and communications between a ceding company and a reinsurer, or between a retrocedent and a retrocessionaire, throughout the term of the reinsurance or retrocession. Reinsurance intermediaries are responsible for administering and maintaining the reinsurance or retrocession contract.

11. A "managing general underwriter" ("MGU") is an entity that has the authority to underwrite insurance or reinsurance risks on behalf of an insurer or reinsurer. An MGU earns fees for underwriting business for its principal.

12. A "reinsurance pool" is a group of companies that provide reinsurance protection to reinsureds. Each member of the pool assumes a specified interest in the reinsurance business underwritten on behalf of the pool.

13. A "pool manager" is an MGU that is given authority by the pool members to manage the business of the reinsurance pool. The duties of a pool manager are established by agreement and typically include underwriting insurance or reinsurance risks on behalf of a pool and obtaining reinsurance or retrocessional coverage for the pool.

## GENERAL FACTUAL ALLEGATIONS

14. At all relevant times, Lincoln was a member of the Unicover Occupational Accidental Reinsurance Pool (the "Pool"), which was formed, managed, and operated by an MGU, Unicover Managers, Inc. ("Unicover"). In addition to Lincoln, the other members of the Pool during the relevant time were Connecticut General Life Insurance Company ("Connecticut General," General & Cologne Life Re of America f/k/a the Cologne Life Reinsurance Company ("Cologne"), Phoenix Life Insurance Companies f/k/a Phoenix Home Life Mutual Insurance Company ("Phoenix"), and ReliaStar Life Insurance Company ("Reliastar") (collectively, the "Pool members"). The Pool entered into contracts to reinsure accident and health insurance liability arising from workers' compensation insurance policies issued in the United States.

15. Lincoln became a member of the Pool with the expectation and understanding that its risks as a member of the Pool would be substantially reduced by retrocessional reinsurance purchased on behalf of the Pool. Each of the other Pool members joined the Pool with the same expectation and understanding.

16. The Pool members executed an Occupational Accident Reinsurance Pool Management Agreement (the "Management Agreement"), which governed the relationship between and among Unicover and the Pool members. Pursuant to the terms of the Management

Agreement, Unicover would receive a management fee of 7.5% of the premium ceded by an insurer to the Pool for each risk accepted on behalf of the Pool.

17. Pursuant to the Management Agreement, Unicover was obligated to secure retrocessional reinsurance protection for the Pool. On behalf of the Pool members, Unicover engaged Aon and Rattner as intermediaries to secure this coverage. For their services, Aon and Rattner collected a fee based on a percentage of the premium for the retroceded business.

18. Aon and Rattner also were actively involved with Unicover in managing the Pool – describing themselves as "co-facilitators," for which they received a share of Unicover's 7.5% management fee. At one point, defendants' share amounted to one-third of Unicover's fee, i.e., 2.5% of premium. These monies were in addition to the fees they received for their services as reinsurance intermediaries for the Pool. Aon and Rattner obtained greater fees as more premium was accepted on behalf of the Pool.

19. In December, 1997, (1) Sun Life Assurance Company of Canada ("Sun"), (2) Phoenix (also a pool member), and (3) American Phoenix Life and Reassurance Company ("American Phoenix"), through their MGU, Centaur Underwriting Management Ltd. ("Centaur"), and (4) Cologne (also a Pool member), through its MGU, CRF Underwriting Underwriting Agency, Ltd. ("CRF Underwriting"), agreed to provide retrocessional coverage to the Pool for a term of three years beginning in December, 1997 (the "Three-Year Whole Account"). (Sun, Phoenix, American Phoenix, and Cologne are collectively referred to as "the Retrocessionaires.")

*A. Defendants' Misconduct*

20. As intermediaries acting on behalf of the Pool members, Aon and Rattner owed duties to the Pool members. They shared a duty to act prudently and with the skill and diligence customarily required of one in their position. In particular, they were each under a duty to take all necessary steps to procure and maintain retrocessional protection for the Pool members, and to disclose to the Pool members and the Retrocessionaires all information that

4

might be material to the Retrocessionaires' willingness to perform pursuant to the Three-Year Whole Account Agreement.

21. In 1998, Aon and Rattner recognized that they could earn substantial fees at the expense of the Pool members. Because they earned more fees with each dollar of premium ceded to the Pool, Aon and Rattner chose to present Unicover with accounts involving excessive volumes of premium and encouraged Unicover to reinsure them. Aon and Rattner knew that the Pool members and the Retrocessionaires expected Unicover to reinsure only a certain level of business and that they would object to the excessive levels of business Aon and Rattner were convincing Unicover to reinsure. Thus, in an effort to continue earning substantial commissions on the business, Aon and Rattner intentionally concealed from the Pool members and the Retrocessionaires the full extent of the business being written by Unicover.

22. Although they were unaware of the full extent of the business that Aon and Rattner were convincing Unicover to write, the Retrocessionaires did in fact complain to Aon and Rattner about the level of business that they did know was being written. For example, by Fall 1998, Centaur informed Aon that it was "very keen" about "Unicover stopping underwriting." Aon and Rattner knew that if the Pool members were made aware of the full extent of the Retrocessionaires' complaints, they would insist that Aon and Rattner cease referring business to the Pool and that Unicover cease writing it.

23. But since this would foreclose Aon and Rattner from continuing to reap illicit and improper commissions amounting to tens of millions of dollars, defendants concealed from the Pool members the full extent of the Retrocessionaires' complaints and instead led Unicover and the Pool members to believe that the Retrocessionaires were not dissatisfied with the business being retroceded to them. For example, in Fall 1998 – long after becoming aware of the Retrocessionaires' substantial concerns – Aon blithely and falsely assured Unicover that "Cackett [the Retrocessionaires' principal broker] is calm."

24. Based on complaints from the Retrocessionaires, Aon and Rattner knew by August 1998 that the Pool members' retrocessional protection under the Three-Year Whole Account Agreement was in jeopardy. Specifically, Sun and Centaur advised Aon and Rattner no

5

later than early August 1998 that they had significant concerns about the levels of business that were being written and retroceded, that they wanted no additional business to be written or retroceded, and that they were considering legal action to terminate or limit their liability under the Three-Year Whole Account. Indeed, Centaur specifically informed Aon that Centaur believed the levels of premium being ceded amounted to "white collar fraud" and a "get rich quick scheme" perpetrated by "rogues."

25. Nonetheless, Aon and Rattner failed fully to disclose to the Pool members the Retrocessionaires' concerns and, in a quest for more fees, encouraged Unicover to continue writing and retroceding more business. In fact, even after the Retrocessionaires' raised concerns about the level of premium being written and particularly about the increase in premium relating to the aggressive use of "buffers," Aon encouraged Unicover to "pump [th]em in!!!"

### B. Damage to Plaintiff

26. By letter of January 25, 1999, Sun advised the Pool that it was unilaterally terminating, and reserving its right to rescind, the Three-Year Whole Account. (After receiving that letter, Roger Smith of Aon forwarded a copy to Rattner, with the comment: "As little as you want to talk to me at the moment, I think we should catch upon the attached, as, at its worst, we are all implicated.")

27. The Retrocessionaires later demanded arbitration against the Pool, seeking to eliminate or reduce their obligations under the Three-Year Whole Account.

28. A hearing on the claims of the Retrocessionaires was held from July 8 through August 7, 2002. On October 8, 2002, the arbitration panel issued an award which, in relevant part, relieved the Retrocessionaires of the responsibility to provide retrocessional coverage to the Pool under the Three-Year Whole Account for business bound or renewed on behalf of the Pool after August 31, 1998.

29. Due to the loss of retrocessional coverage for business bound or renewed after August 31, 1998, Lincoln suffered tens of millions of dollars in losses that would not have been suffered absent defendants' wrongful conduct.

## FIRST CLAIM FOR RELIEF

### (Fraud by Aon and Rattner)

30. Lincoln re-alleges and incorporates each allegation contained in the preceding paragraphs as if fully set forth herein.

31. As detailed above, defendants owed duties to the Pool members, obligating them to act prudently and with the skill and diligence customarily required of one in their position. In particular, defendants were each under a duty to take all necessary steps to procure and maintain retrocessional protection for the Pool members, and to disclose to the Pool members and the Retrocessionaires all information that might be material to the Retrocessionaires' willingness to perform pursuant to the Three-Year Whole Account Agreement.

32. Despite these duties, defendants (in a quest for greater fees generated through the large amounts of business being written into the Pool and ceded to the Retrocessionaires), among other things, intentionally concealed material information from the Retrocessionaires and the Pool members concerning the volume of business written into the Pool and retroceded to the Retrocessionaires, and failed to provide full disclosure to the Pool members of the Retrocessionaires' concerns related to the volume of business being retroceded to the Retrocessionaires. In addition to failing to disclose the above material information, defendants affirmatively represented to the Pool members that the Retrocessionaires were not dissatisfied with the amount of premium being ceded to them, despite knowing that such representations were false. Furthermore, in an attempt to collect more fees, defendants continued to encourage Unicover to write more business on behalf of the Pool despite the precarious state of the Pool's retrocessional coverage.

33. Lincoln reasonably relied upon defendants' representations and omissions, in light of, *inter alia*, the fiduciary relationship of trust and confidence between Lincoln and defendants. As defendants knew, had they fully disclosed to the Pool the Retrocessionaires' concerns and/or the excessive volumes of business being written and retroceded, Lincoln would

7

have instructed Unicover to stop writing additional business on its behalf. In that event, the business for which the Pool has lost retrocessional coverage would never have been written.

34. As a direct and proximate result of defendants' fraud, Lincoln has sustained significant damages, amounting to at least tens of millions of dollars.

35. In committing the fraudulent conduct detailed above, defendants acted jointly, as each others' agents, and in conspiracy, thus making each defendant liable jointly and severally for the entire damage to Lincoln caused by such fraud.

36. Defendants' conduct was wanton, willful, and malicious, thereby justifying the imposition of punitive damages.

## SECOND CLAIM FOR RELIEF

### (Negligent Misrepresentation by Aon and Rattner)

37. Lincoln re-alleges and incorporates each allegation contained in the preceding paragraphs as if fully set forth herein.

38. Defendants (in a quest for greater fees generated through the large amounts of business being written into the Pool and ceded to the Retrocessionaires), among other things, concealed material information from the Retrocessionaires and the Pool members concerning the volume of business written into the Pool and retroceded to the Retrocessionaires, and failed to provide full disclosure to the Pool members of the Retrocessionaires' concerns related to the level of business being retroceded to the Retrocessionaires. In addition to failing to disclose the above material information, defendants affirmatively represented that the Retrocessionaires were not dissatisfied with the amount of premium being retroceded to them, when they knew or should have known that such representations were false. Furthermore, in an attempt to collect more fees, defendants continued to encourage Unicover to write more business on behalf of the Pool despite the precarious state of the Pool's retrocessional coverage.

39. Lincoln reasonably relied upon defendants' representations and omissions, in light of, *inter alia*, the fiduciary relationship of trust and confidence between Lincoln and defendants. Had defendants fully disclosed to the Pool the Retrocessionaires' concerns and/or the excessive volume of business being written and retroceded, Lincoln would have instructed

8

Unicover to stop writing additional business on its behalf. In that event, the business for which the Pool has lost retrocessional coverage would never have been written.

40. As a direct and proximate result of defendants' negligent misrepresentation, Lincoln has sustained significant damages, amounting to at least tens of millions of dollars.

41. In committing the wrongful conduct detailed above, defendants acted jointly, as each others' agents, and in conspiracy, thus making each defendant liable jointly and severally for the entire damage to Lincoln caused by such wrongful conduct.

### THIRD CLAIM FOR RELIEF

#### (Breach of Fiduciary Duty by Aon and Rattner)

42. Lincoln re-alleges and incorporates each allegation contained in the preceding paragraphs as if fully set forth herein.

43. Aon and Rattner stood in a fiduciary relationship of trust and confidence with the Pool members, pursuant to which they owed duties of good faith, utmost loyalty, candor, integrity, and care.

44. Defendants breached these duties by engaging in self-dealing practices to preserve their inflow of fees, including: (a) concealing the excessive volume of business written into the Pool and retroceded to the Retrocessionaires; (b) failing fully to disclose to the Pool members the Retrocessionaires' concerns regarding the level of business being retroceded; (c) affirmatively representing that the Retrocessionaires were not dissatisfied with the amount of premium being retroceded to them, knowing that such representations were false; and (d) encouraging Unicover to write more business on behalf of the Pool despite the precarious state of the Pool's retrocessional coverage.

45. Defendants' breach caused the failure of the majority of the Pool's retrocessional protection. Absent defendants' breach, the business for which the Pool has lost retrocessional coverage would never have been written.

46. As a direct and proximate result of defendants' breach, Lincoln has sustained significant damages, amounting to at least tens of millions of dollars.

47. In committing the breaches detailed above, defendants acted jointly, as each others' agents, and in conspiracy, thus making each defendant liable jointly and severally for the entire damage to Lincoln caused by such breaches.

48. Defendants' conduct was wanton, willful, and malicious, thereby justifying the imposition of punitive damages.

## FOURTH CLAIM FOR RELIEF

### (Negligence by Aon and Rattner)

49. Lincoln re-alleges and incorporates each allegation contained in the preceding paragraphs as if fully set forth herein.

50. Defendants owed a duty to the Pool members to exercise due care under the circumstances and to carry out their obligations in a commercially reasonable manner. By virtue of their role as reinsurance intermediaries and Pool managers, defendants also stood in a fiduciary relationship of trust and confidence with the Pool members, pursuant to which they owed duties of good faith, utmost loyalty, candor, integrity, and care. Defendants were each under a duty to take all necessary steps to procure and maintain retrocessional protection for the Pool members, and to disclose to the Pool members and the Retrocessionaires all information that might be material to the Retrocessionaires' willingness to perform pursuant to the Three-Year Whole Account Agreement.

51. Defendants breached these duties by, among other things: (a) concealing the excessive volume of business written into the Pool and retroceded to the Retrocessionaires; (b) failing fully to disclose to the Pool members the Retrocessionaires' concerns regarding the level of business being retroceded; (c) affirmatively representing that the Retrocessionaires were not dissatisfied with the amount of premium being retroceded to them, knowing that such representations were false; and (d) encouraging Unicover to write more business on behalf of the Pool despite the precarious state of the Pool's retrocessional coverage.

52. Defendants' breach caused the failure of the majority of the Pool's retrocessional protection. Absent defendants' breach, the business for which the Pool has lost retrocessional coverage would never have been written.

53. As a direct and proximate result of defendants' breach, Lincoln has sustained significant damages, amounting to at least tens of millions of dollars.

54. In committing the breaches detailed above, defendants acted jointly, as each others' agents, and in conspiracy, thus making each defendant liable jointly and severally for the entire damage to Lincoln caused by such breaches.

55. Defendants' conduct was wanton, willful, and malicious, thereby justifying the imposition of punitive damages.

## FIFTH CLAIM FOR RELIEF

### (Unjust Enrichment by Aon and Rattner)

56. Lincoln re-alleges and incorporates each allegation contained in the preceding paragraphs as if fully set forth herein.

57. Defendants entered into an agreement with Unicover whereby defendants, for the benefit of the Pool members, would serve as reinsurance intermediaries for the Pool. Defendants collected a fee for such services.

58. Defendants also entered into an agreement with Unicover whereby defendants, for the benefit of the Pool members, would assist in managing the Pool. Defendants collected additional fees in exchange for their services in connection with this agreement.

59. Pursuant to these agreements, defendants were each under a duty to the Pool members to exercise due care under the circumstances and to carry out their obligations in a commercially reasonable manner. Specifically, they were obligated to take all necessary steps to procure and maintain retrocessional protection for the Pool members, and to disclose to the Pool members and the Retrocessionaires all information that might be material to the Retrocessionaires' willingness to perform pursuant to the Three-Year Whole Account Agreement.

60. In an effort to reap more commissions, defendants breached these duties by, among other things: (a) concealing the excessive volume of business written into the Pool and retroceded to the Retrocessionaires; (b) failing fully to disclose to the Pool members the Retrocessionaires' concerns regarding the level of business being retroceded; (c) affirmatively

11

representing that the Retrocessionaires were not dissatisfied with the amount of premium being retroceded to them, knowing that such representations were false; and (d) encouraging Unicover to write more business on behalf of the Pool despite the precarious state of the Pool's retrocessional coverage.

61. Defendants' breach caused the failure of the majority of the Pool's retrocessional protection. Absent defendants' breach, the business for which the Pool has lost retrocessional coverage would never have been written.

62. Defendants' conduct has allowed it to unjustly reap tens of millions of dollars to Lincoln's detriment, and defendants' retention of this benefit violates the fundamental principles of justice, equity, and good conscience.

63. In committing the wrongful conduct detailed above, defendants acted jointly, as each others' agents, and in conspiracy, thus making each defendant liable jointly and severally for the entire damage to Lincoln caused by such wrongful conduct.

64. Defendants' conduct was wanton, willful, and malicious, thereby justifying the imposition of punitive damages.

## SIXTH CLAIM FOR RELIEF

### (Breach of Contract by Rattner as Reinsurance Intermediary)

65. Lincoln re-alleges and incorporates the allegations contained in the preceding paragraphs as if fully set forth herein.

66. Rattner entered into an agreement with Unicover whereby Rattner, for the benefit of the Pool members, would serve as a reinsurance intermediary for the Pool. As a reinsurance intermediary for the Pool, Rattner stood in a fiduciary relationship of trust and confidence with the Pool, and undertook certain duties, including, to secure and maintain retrocessional protection for the Pool, and to disclose to the Pool members and the Retrocessionaires all information it had which might be material to the Retrocessionaires' willingness to perform under the Three-Year Whole Account.

67. The Pool members have duly performed all the conditions of the agreement on their part.

68. Rattner breached the agreement by, among other things: (a) concealing the excessive volume of business written into the Pool and retroceded to the Retrocessionaires; (b) failing fully to disclose to the Pool members the Retrocessionaires' concerns regarding the level of business being retroceded; (c) affirmatively representing that the Retrocessionaires were not dissatisfied with the amount of premium being retroceded to them, knowing that such representations were false; and (d) encouraging Unicover to write more business on behalf of the Pool despite the precarious state of the Pool's retrocessional coverage.

69. As a result of Rattner's breach, the majority of the Pool members' retrocessional protection was rescinded, leaving the Pool members exposed to substantial unreinsured risks.

70. As a direct and proximate result of Rattner's breach, Lincoln has sustained significant damages, amounting to at least tens of millions of dollars.

## SEVENTH CLAIM FOR RELIEF

### (Breach of Contract by Rattner as a Pool Manager)

71. Lincoln re-alleges and incorporates the allegations contained in the preceding paragraphs as if fully set forth herein.

72. Rattner entered into an agreement with Unicover whereby Rattner, for the benefit of the Pool members, would assist in managing the Pool in exchange for a percentage of the Pool management fee. As a Pool manager, Rattner stood in a fiduciary relationship of trust and confidence with the Pool, and undertook the duties set forth in the Pool Management Agreement. Among other duties, Rattner agreed to keep the Pool members fully informed of all material facts that might jeopardize the continued stability and secure operation of the Pool.

73. The Pool members have duly performed all the conditions of the agreement on their part.

74. Rattner breached the agreement by, among other things: (a) concealing the excessive volume of business written into the Pool and retroceded to the Retrocessionaires; (b) failing fully to disclose to the Pool members the Retrocessionaires' concerns regarding the level of business being retroceded; (c) affirmatively representing that the Retrocessionaires were

13

not dissatisfied with the amount of premium being retroceded to them, knowing that such representations were false; and (d) encouraging Unicover to write more business on behalf of the Pool despite the precarious state of the Pool's retrocessional coverage.

75. As a result of Rattner's breach, the majority of the Pool members' retrocessional protection was rescinded, leaving the Pool members exposed to substantial unreinsured risks.

76. As a direct and proximate result of Rattner's breach, Lincoln has sustained significant damages, amounting to at least tens of millions of dollars.

## EIGHTH CLAIM FOR RELIEF

### (Breach of the Duty of Good Faith and Fair Dealing by Rattner)

77. Lincoln re-alleges and incorporates the allegations contained in the preceding paragraphs as if fully set forth herein.

78. By virtue of its contractual relations with the Pool members, Rattner was obligated to act in accordance with the duty of good faith and fair dealing. In particular, Rattner was under a duty to avoid conduct which would have the effect of destroying or injuring Lincoln's ability to receive the fruits of its agreements with Rattner.

79. Rattner breached the duty of good faith and fair dealing it owed the Pool members by, among other things: (a) concealing the excessive volume of business written into the Pool and retroceded to the Retrocessionaires; (b) failing fully to disclose to the Pool members the Retrocessionaires' concerns regarding the level of business being retroceded; (c) affirmatively representing that the Retrocessionaires were not dissatisfied with the amount of premium being retroceded to them, knowing that such representations were false; and (d) encouraging Unicover to write more business on behalf of the Pool despite the precarious state of the Pool's retrocessional coverage.

80. As a result of Rattner's breach, the majority of the Pool members' retrocessional protection was rescinded, leaving the Pool members exposed to substantial unreinsured risks.