**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

FILED

2003 OCT 28  A 10 09

U'S DISTRICT COURT
HARTFORD CT

THE LINCOLN NATIONAL LIFE
INSURANCE COMPANY,

Plaintiff,

v.

AON RE, INC.

Defendant.

Civil Action No. 303 CV 905 RNC

**THE LINCOLN NATIONAL LIFE
INSURANCE COMPANY'S
REPLY IN SUPPORT OF
MOTION TO TRANSFER
PURSUANT TO 28 U.S.C.
SECTION 1404 AND
OPPOSITION TO CROSS-
MOTION OF DEFENDANT AON
RE, INC.**

(October 24, 2003)

**ORAL ARGUMENT REQUESTED**

SF\435048.8

# TABLE OF CONTENTS

Page

I.     Preliminary Statement...........................................................................................................1

II.    Factual and Procedural Background ....................................................................................2

     A.    Factual Background ...................................................................................................2
     B.    Lincoln's Claims Against Aon..................................................................................7

III.   Argument .............................................................................................................................8

     A.    This Matter Should Be Transferred to the District of New Jersey ..........................8
     B.    The Factors Proffered by Aon Confirm that New Jersey Is the Superior
           Forum......................................................................................................................14
          1.    Aon Ignores the Central Importance of Consolidation..............................14
          2.    Even Standing Alone, the Factors Cited by Aon Favor New Jersey .........14

IV.    Conclusion ........................................................................................................................22

SF\435048.8

TABLE OF AUTHORITIES

Page(s)

**CASES**

*Affymetrix v. Synteni, Inc.,*
    28 F. Supp. 2d 192 (D. Del. 1998)                    15

*Cavanaugh v. Bluebeard's Castle, Inc.,*
    83 F. Supp. 2d 284 (D. Conn. 1999)                   19

*Coady v. Ashcraft & Gerel,*
    223 F.3d 1 (1st Cir. 2000)                           8

*Coker v. Bank of America,*
    984 F. Supp. 757 (S.D.N.Y. 1997)                     15

*Commodity Futures Trading Commission v. Savage,*
    611 F.2d 270 (9th Cir. 1980)                         11

*Continental Grain Co. v. Barge FBL-585,*
    364 U.S. 19 (1960)                                   14

*Fairfax Dental (Ireland) Ltd. v. S.J. Filhol Ltd.,*
    645 F. Supp. 89 (E.D.N.Y. 1986)                      8

*Falconwood Financial Corp. v. Griffin,*
    838 F. Supp. 836 (S.D.N.Y. 1993)                     8, 15

*Ferens v. John Deere Co.,*
    494 U.S. 516 (1990), *superseded by statute on other grounds*    8, 20,
    21

*Gantes v. Kason Corp.,*
    679 A.2d 106 (N.J. 1996)                             22

*Hathi v. Frischer,*
    645 F. Supp. 360 (E.D. Pa. 1986)                     16

*Hoffman v. Blaski,*
    363 U.S. 335 (1960)                                  11

*Hyatt International v. Coco,*
    302 F.3d 707 (7th Cir. 2003)                         18

*Jones v. GNC Franchising, Inc.,*
    211 F.3d 495 (9th Cir. 2000)                         8, 13

ii

*KCJ Corp. v. Kinetic Concepts, Inc.,*
  18 F. Supp. 2d 1212 (D. Kan. 1998)       20

*Lee v. Hunt,*
  415 F. Supp. 245 (M.D. La. 1976)       20

*Lever Brothers Co. v. Procter & Gamble Co.,*
  23 F. Supp. 2d 208 (D. Conn. 1998)       16

*Met-L-Wood Corp. v. SWS Industries, Inc.,*
  594 F. Supp. 706 (N.D. Ill. 1984)       15

*Reichhold Chemicals, Inc. v. Hartford Accident & Indemnity Co.,*
  703 A.2d 1132 (1997)       22

*Richards v. Upjohn Co.,*
  406 F. Supp. 405 (E.D. Mich. 1976)       19

*Scovill Manufacturing Co. v. Sunbeam Corp.,*
  357 F. Supp. 943 (D. Del. 1973)       10

*Shutte v. Armco Steel Corp.,*
  431 F.2d 22 (3d Cir. 1970)       11, 19

*Sunbelt Corp. v. Noble, Denton & Associates, Inc.,*
  5 F.3d 28 (3d Cir. 1993)       11

*Sutton v. Rehtmeyer Design Co.,*
  114 F. Supp. 2d 46 (D. Conn. 2000)       11, 16

*Terra International, Inc. v. Mississippi Chemical Corp.,*
  119 F.3d 688 (8th Cir. 1997)       8, 13

*Van Dusen v. Barrack,*
  376 U.S. 612 (1964), *superseded on other grounds*       11

## I.    PRELIMINARY STATEMENT

Plaintiff, The Lincoln National Life Insurance Company ("Lincoln"), respectfully requests that the Court grant its motion to transfer this action to the United States District Court for the District of New Jersey pursuant to 28 U.S.C. section 1404(a) and deny Aon's cross-motion to transfer the action to the United States District Court for the Northern District of Illinois.

A transfer to New Jersey will achieve three important objectives:

*First*, it will allow this action to be consolidated with Lincoln's action against Aon and Rattner Mackenzie Limited ("Rattner"), which is currently pending in the District of New Jersey, as well as with a similar action brought in the District of New Jersey by other plaintiffs that suffered damage caused by Aon's wrongdoing. This consolidation of multiple actions is only possible in New Jersey, as it appears that Rattner and others are subject to personal jurisdiction only in that state.

*Second*, transfer to the District of New Jersey will bring essential witnesses who live in New Jersey within the subpoena power of the court.

*Third*, the locus of Aon's (and Rattner's) wrongdoing was New Jersey, and New Jersey therefore has the greatest interest in resolving this dispute.

In response to these significant factors favoring transfer to New Jersey, Aon does little more than point to the fact that Aon is headquartered in Illinois; Lincoln is headquartered in Indiana; and third party Unicover (which was headquartered in and run from New Jersey, its state of incorporation) had a branch office in Illinois. These factors are far from sufficient to support Aon's request that the Court transfer the action to Illinois. Because Rattner is apparently subject to jurisdiction only in New Jersey, the effect of granting Aon's cross-motion would be that part of this dispute would be litigated in Illinois, while other claims would remain in New Jersey.

There is another fundamental reason why Aon's cross-motion should be denied. Aon has engaged in a campaign of obstructionism with respect to the events that gave rise to this dispute.

1

Its refusal to produce documents caused one court to describe Aon's conduct as "obstreperous, intransigence, defiance, denial, misleading, frivolous, misconduct, false, those kinds of things." *See infra* at 6. Aon's officer, Roger Smith (who has submitted a declaration in support of Aon's cross-motion), evaded service of process to avoid testifying in the underlying arbitration, which caused substantial prejudice to Lincoln and the other parties that had paid Aon millions of dollars in fees and commissions. *See id.* The transfer statute, 28 U.S.C. section 1404, rests on "the convenience of the parties and witnesses" and "the interest of justice." 28 U.S.C. § 1404(a). Having engaged in obstructionism with respect to the subject matter of this action, Aon is disqualified from having its convenience dictate the venue in which this dispute will be heard. Having wrongfully refused to produce documents, and having refused to produce a key witness for deposition, Aon cannot be heard to invoke "the interest of justice" as a reason to transfer this case to its home forum.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

### A. Factual Background

This action arises out of a pooling arrangement for the reinsurance of the accident and health portions of workers' compensation insurance policies. Complaint ¶ 6.[1] Lincoln and four other companies participated in a "reinsurance pool," a group of insurance or reinsurance companies providing reinsurance to workers' compensation insurers. *Id.* ¶ 11.[2] The pool was managed by Unicover Managers, Inc. ("Unicover") and was known as the Unicover

---

[1]    Reinsurance is a transaction whereby one insurance company, the "reinsurer," in exchange for the payment of a premium, agrees to indemnify or reimburse another insurance company, the "reinsured" or "cedent," against all or part of a loss that the reinsured may sustain under insurance policies issued by the reinsured. Complaint ¶ 7.

[2]    In addition to Lincoln (which had an 18.75% interest in the Pool), the other members of the Pool during the relevant time were Connecticut General Life Insurance Company ("Connecticut General") (35% interest), Phoenix Life Insurance Company ("Phoenix") (23.75% interest), General & Cologne Life Re of America ("Cologne") (17.5% interest), and ReliaStar Life Insurance Company ("ReliaStar") (5% interest) (collectively, the "Pool members"). Complaint ¶ 13.

2

Occupational Accident Reinsurance Pool (the "Pool"). *Id.* ¶ 13. Unicover was responsible for the administration of the Pool. *Id.* ¶¶ 15-16.

Unicover is a New Jersey company with its principal place of business in South Plainfield, New Jersey. August 18, 2003 Declaration of Richard Mooney in Support of Motion to Transfer ("Mooney August Decl.") ¶ 4. Four of Unicover's five principal officers, including its principal founder and chairman John Pallat, are New Jersey residents. *Id.* ¶ 5.[3] Thus, the principal Unicover officers with whom Aon communicated on the issues relevant to this lawsuit, including Pallat, reside in New Jersey. *See* Lincoln's August 18, 2003 Brief in Support of Motion to Transfer ("Opening Brf.") at 8 (citing Mooney August Decl. ¶¶ 5-7). From his offices and residence in New Jersey, Pallat directed the operations of the Pool. The great majority of Pool activity and communications regarding Pool activity therefore occurred within, or were directed to, Unicover's New Jersey headquarters. *Id.*[4]

Like insurers, reinsurers can obtain reinsurance for the risks that they accept. Complaint ¶ 8. Where a reinsurer obtains reinsurance for itself, it is called a "retrocedent," and the reinsurer that assumes risk from a retrocedent is called a "retrocessionaire." *Id.* Lincoln and the other

---

[3]    Although one of the five Unicover officers eventually moved to Illinois for personal reasons, the central locus of Unicover at all times remained New Jersey. Mooney August Decl. ¶ 6. The Unicover employee who moved to Illinois had medical problems and "decided he wanted to spend a lot less time working in a fairly hectic, high-energy environment and spend time with his family." October 23, 2003 Declaration of Richard Mooney ("Mooney October Decl.") ¶ 3 & Exh. B (Three-Year Whole Account Arbitration Tr. at 3725:7-16).

[4]    Aon complains that Lincoln's opening papers did not adequately "identify" the "important communications to, from, and within New Jersey" relating to Lincoln's complaint. Aon Br. at 13. Aon, having made or received those communications, is well aware of them. For example, one of the principal disputed communications at issue is a May 6, 1998 letter from John Pallat to Centaur, and which was copied to Aon executive Roger Smith. Mooney October Decl. ¶ 4 & Exh. C. Similarly, Unicover's "Critical Strategic Initiatives – 1998 through 1st Quarter 1999," which set out the goals Unicover and Aon intended to pursue, was authored by Pallat and sent by him to Smith. *Id.* ¶ 5 & Exh. D. There were dozens of communications between Aon and Unicover's New Jersey office that are at the heart of this action. Mooney October Decl. ¶ 6; *id.* ¶ 23 (Aon recently produced approximately 200 additional such communications).

3

Pool members joined the Pool with the expectation and understanding that their risks would be substantially reduced by retrocessional reinsurance. *Id.* ¶ 14. On behalf of the Pool members, Unicover engaged Aon, along with Rattner, as brokers or "intermediaries" to secure and maintain retrocessional reinsurance for the Pool. *Id.* ¶¶ 16, 29. During the course of Aon's engagement, Sun Life Assurance Company of Canada, Phoenix, and Cologne (collectively, the "Retrocessionaires") agreed, effective December 1, 1997, to provide retrocessional reinsurance protection to the Pool for a period of three years (the "Three-Year Whole Account"). *Id.* ¶ 18. Aon received as a brokerage fee a percentage of the premium retroceded from the Pool. *Id.* ¶ 17. In this manner, Aon received millions of dollars of compensation from the Pool for performing its agreement, payment for which Lincoln bore 18.75% responsibility. *Id.* ¶¶ 16, 21.

Aon's and Rattner's improper conduct led to the early termination and partial rescission of the Pool's retrocessional protection under the Three-Year Whole Account and thus caused each of the Pool members, including Lincoln, tens of millions of dollars of losses. Complaint ¶¶ 24-27. Aon knew that the Retrocessionaires expected only a certain level of business from the Pool. *Id.* ¶ 19. Nevertheless, Aon concealed from the Pool members and the Retrocessionaires the full amount of the premium volume (and thus risk) that was being retroceded to the Retrocessionaires. *Id.* ¶¶ 19, 31, 37, 42. In addition, when the Retrocessionaires began to inform Aon that they were concerned about even the level of premium that they understood was being ceded to them, Aon concealed that concern from the Pool members. *Id.* ¶¶ 19-21. When the Retrocessionaires told Aon that "they wanted no additional business to be written or retroceded, . . . Aon failed fully to disclose to the Pool members the Retrocessionaires' concerns and, in a quest for more fees, encouraged Unicover to continue writing and retroceding more business." *Id.* ¶¶ 22-23. Aon's false and misleading communications in breach of the contracts at issue were principally to Unicover in New Jersey and specifically to Pallat at Unicover's New Jersey headquarters. Mooney October Decl. ¶ 7.

Beginning in January 1999, the Retrocessionaires stated that they were unilaterally terminating the Three-Year Whole Account. Complaint ¶ 24. Eventually, they demanded

4

arbitration seeking to rescind the agreement. *Id.* ¶¶ 24-27. The arbitration hearing took place in New York from July 8, 2002 through August 7, 2002. Complaint ¶ 26; Mooney October Decl. ¶ 8. The arbitration panel heard testimony from 20 witnesses and received 584 exhibits. *Id.* On October 8, 2002, the panel issued an award relieving the Retrocessionaires of responsibility for reinsuring business bound or renewed by Unicover after August 31, 1998. Complaint ¶ 26; Mooney August Decl. ¶ 9 & Exh. E. That award, which resulted from Aon's and Rattner's misconduct, caused Lincoln to suffer tens of millions of dollars in damage. Complaint ¶ 27.

Pallat's central role in the events at issue is confirmed by his participation in the Three-Year Whole Account arbitration. He sat for seven days of deposition and testified on seven days during the arbitration hearing (nearly double the total of any other witness). Mooney October Decl. ¶ 10. Virtually all of his communications and activities were conducted through his office in Unicover's New Jersey headquarters. *Id.* ¶ 11 & Exh. F (deposition testimony of John Pallat).

Unlike Pallat and other Unicover witnesses,[5] Aon did not testify in the Three-Year Whole Account arbitration. Fearful about its role in causing the loss of the Pool members' reinsurance protection, Aon obstructed the arbitration. It refused over a period of several months to provide documents directly relevant to the arbitration that it was holding on behalf of certain of the Retrocessionaires, *i.e.*, Aon refused to release the documents to their owners. Mooney October Decl. ¶ 12. Even after the Retrocessionaires sued Aon to gain access to the documents (for use and production to all parties in the Three-Year Whole Account arbitration), Aon stonewalled at every turn, causing months of delay. Eventually, the documents were obtained through litigation against Aon. When the return of the documents was finally complete, the court observed:

---

[5]    In addition to Pallat, Unicover witnesses Robert Wojtowicz and Brian Cook testified at the hearing of the Three-Year Whole Account arbitration. Mooney October Decl. ¶ 14. Another Unicover witness, Kenneth Griebell, was deposed but did not testify at the hearing. *Id.* Both Wojtowicz and Griebell are New Jersey residents. *Id.*

> From the moment this matter was filed, Sun Life was entitled to ask and the only thing that Aon had to do was produce, period, end of discussion. There was no confusion. When the Court considers this matter, it considers – there are a number of phrases that come to the Court's mind, acute calcification of the cranium being one of them. That means hard-headed. Other words that are more recognized by lawyers come to mind, such as *obstreperous, intransigence, defiance, denial, misleading, frivolous, misconduct, false,* those kinds of things. Almost from the moment that this matter began and came to the Court's attention it was clear to the Court that the *defendant was engaging in every perceived procedural ploy that it thought it could avail itself of, totally in an effort to frustrate and make difficult the acquisition of materials to which the plaintiff had a clear, absolute right.*

Mooney October Decl. ¶ 13 & Exh. H (emphasis added).

Aon took a similar approach to the Pool members' efforts to obtain the testimony of Aon executive Roger Smith during the course of the Three-Year Whole Account arbitration. When the arbitration panel issued a subpoena to compel his deposition, Smith evaded service. In a successful effort to avoid giving testimony, Smith apparently left the country, avoided his own home, and barred access to the floor of his office in Chicago. *See* Mooney October Decl. ¶ 15 & Exh. I. During the arbitration hearing, the Retrocessionaires captialized on Aon's obstructionism by arguing that "it would be intriguing to know what really happened. But Mr. Smith isn't here, Mr. Smith is hiding outside the jurisdiction." *Id.* ¶ 16 & Exh. J (Three-Year Whole Account Tr. at 6046:22-24); *see also id.* ¶ 17 & Exh. K (Three-Year Whole Account Tr. at 3813:3-8; counsel for Phoenix cross-examining Pallat about why Smith was "hiding in London to avoid testifying in this case").

To suit his and Aon's interests in the present case, however, Smith has not been as shy as he was in the Three-Year Whole Account arbitration. He submitted a lenghty declaration in support of Aon's motion to transfer this action to the Northern District of Illinois. As soon as

Lincoln requested Smith's deposition so as to test his sworn statements, however, he and Aon reverted to form and refused to cooperate.[6]

### B. Lincoln's Claims Against Aon

On May 22, 2003, Lincoln (a) filed this action alleging contract-related claims against Aon, and (b) filed an action in the United States District Court for the District of New Jersey alleging tort claims against Aon and alleging both tort and contract claims against Rattner. Mooney August Decl. ¶ 9.

On the same day, Pool members Phoenix and Cologne also (a) filed a complaint alleging contract claims against Aon in this Court, and (b) filed a lawsuit in the United States District Court for the District of New Jersey alleging tort claims against Aon and alleging both tort and contract claims against Rattner. Mooney August Decl. ¶ 10. Phoenix and Cologne sued not only Rattner, but also Unicover and several former Unicover principals who live in New Jersey and are not subject to personal jurisdiction in Illinois. Mooney October Decl. ¶ 19 & Exh. M.

In addition, Pool member ReliaStar filed a lawsuit in New Jersey Superior Court (Middlesex County) alleging tort, contract, and racketeering claims against Aon, Rattner, Unicover, and Unicover's principals and successors in interest. *Id.* ¶ 20 & Exh. N.

On August 18, 2003, Lincoln filed a motion pursuant to 28 U.S.C. section 1404(a), requesting that this action be transferred to the United States District Court for the District of New Jersey. That motion was based on (*inter alia*) the benefits to judicial economy and party and witness convenience that would accrue from consolidating Lincoln's two actions, and the fact that the locus of Aon's wrongdoing was New Jersey. Phoenix and Cologne had previously filed a similar motion, also seeking transfer of their action in this Court to New Jersey, with the anticipation that all four actions would be consolidated there. Mooney October Decl. ¶ 21 &

---

[6]    Confronted with Aon's refusal to produce Smith for deposition on the subject of his declaration, Lincoln promptly moved the New Jersey court for an order compelling the deposition. *See* Mooney October Decl. ¶ 18 & Exh. L (October 3, 2003 Letter Brief in Support of Motion for Deposition of Roger Smith). That motion remains pending. *Id.*

7

Exh. O (Phoenix/Cologne brief in support of motion to transfer).  Aon opposed the motions to transfer to New Jersey, and filed cross-motions requesting transfer to the United States District Court for the Northern District of Illinois.

## III.    ARGUMENT

### A. This Matter Should Be Transferred to the District of New Jersey

A transfer of this action to New Jersey would serve "the convenience of the parties and witnesses" and "the interest of justice" as required by 28 U.S.C. section 1404 for at least three reasons.

*First*, a transfer to New Jersey would allow the consolidation of this action with Lincoln's action against Aon and Rattner, which is currently pending in New Jersey.  That consolidation would have undeniable benefits for the parties, the witnesses, and the judicial system.  It would eliminate duplicative trial time, duplicative discovery, duplicative motion practice, and duplicative testimony by third-party witnesses.  *See* Op. Br. at 6-7 (citing Mooney August Decl. ¶ 11; *Coady v. Ashcraft & Gerel, 223 F.3d 1, 11 (1st Cir. 2000)*; *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 499 (9th Cir. 2000); and *Fairfax Dental (Ireland) Ltd. v. S.J. Filhol Ltd.*, 645 F. Supp. 89, 92 (E.D.N.Y. 1986)).  Consolidation would also serve the interest of justice, including the interest in judicial economy, by reducing the number of pending actions and preventing the possibility of the two actions leading to inconsistent results.  *See* Op. Br. at 7 (citing *Ferens v. John Deere Co.*, 494 U.S. 516, 529 (1990), *superseded by statute on other grounds*; and *Terra International, Inc. v. Mississippi Chemical Corp.*, 119 F.3d 688, 696 (8th Cir. 1997)).  Notably, it was the manifest benefits of transfer and consolidation that underpinned the Supreme Court's decision in *Ferens*, as discussed in Lincoln's opening brief.  *See* Op. Br. at 5-6.

*Second*, transfer of this action to New Jersey would serve the interest of justice because important third-party witnesses reside, and are subject to subpoena, only in New Jersey.  *See* Op. Br. at 8 (citing Mooney August Decl. ¶¶ 5-7; *Terra International*, 119 F.3d at 696; *Jones*, 211 F.3d at 499; and *Falconwood Financial Corp. v. Griffin*, 838 F. Supp. 836, 841 (S.D.N.Y. 1993)).  The principal Unicover officers with whom Aon communicated on the issues relevant to

8

this lawsuit, including Unicover's chief executive officer John Pallat, reside in New Jersey. Mooney August Decl. ¶ 5. The testimony of these Unicover witnesses is essential to the fair resolution of this dispute. The complaint alleges that Aon breached its obligations to Lincoln and the other Pool members by misrepresenting and concealing its dealings with the Retrocessionaires:

- "Aon knew that the Pool members and the Retrocessionaires expected Unicover to reinsure only a certain level of business and that they would object to the excessive levels of business that Aon was convincing Unicover to reinsure. Thus, in an effort to continue earning substantial commissions on the business, Aon intentionally concealed from the Pool members and the Retrocessionaires the full extent of the business being written by Unicover." Complaint ¶ 19.

- When the Retrocessionaires did complain about the volume of business being retroceded to the Three-Year Whole Account, "Aon concealed from the Pool members the full extent of the Retrocessionaires' complaints and instead led Unicover and the Pool members to believe that the Retrocessionaires were not dissatisfied with the business being retroceded to them." *Id.* ¶¶ 20-21.

- Even when the Retrocessionaires told Aon that "they wanted no additional business to be written or retroceded, . . . Aon failed fully to disclose to the Pool members the Retrocessionaires' concerns and, in a quest for more fees, encouraged Unicover to continue writing and retroceding more business." *Id.* ¶¶ 22-23.

- While the Retrocessionaires were protesting to Aon about the level of business, Aon was assuring Unicover that the Retrocessionaires were "calm." *Id.* ¶ 21.

To a large extent, therefore, this case is about communications between the Pool manager, Unicover, and the retrocessional reinsurance broker, Aon. More precisely, to a large extent, this case is about communications between Pallat, who lived and worked in New Jersey, and Smith. As officers of a party defendant, Smith and the other Aon witnesses will testify

9

wherever the trial is held.  But most of the Unicover witnesses can only be required to appear at a trial in New Jersey.  In a case that involves communications between Pallat and Smith, to require a trial without the live testimony of Pallat and the other Unicover witnesses would inflict severe prejudice on Lincoln.  If this action were transferred to Aon's home forum in Illinois, there would be no way to compel the attendance of Pallat and the other New Jersey witnesses at the trial.  In a case in which communications by Aon with these witnesses is of central importance, the interests of justice will be served by a transfer to New Jersey, where their trial attendance can be compelled, rather than to Illinois, where it cannot.

The importance of this factor cannot be overstated.  If Aon were to have its way, it would be free to parade its witnesses before the trier of fact to tell its version of the events, while Lincoln would be forced to rely on the deposition testimony of key witnesses for much of its case.  A transfer to New Jersey will result in a level playing field, which is certainly in the interest of justice.

*Third*, Aon's obstructionism with respect to this very subject matter has disqualified it from invoking either its own convenience or the interests of justice in support of its cross-motion to transfer the action to Illinois.  *See* supra at 6-7.  By wrongfully withholding documents and evading service of process to avoid testifying, Aon imposed substantial expense and prejudice on other participants in these events.  Having done do, Aon has forfeited any consideration of its own convenience in the selection of a forum.  Nor can a party that has obstructed the dispute resolution process be heard to claim that the interests of justice will be served by a transfer to its own home forum.  *Scovill Manufacturing Co. v. Sunbeam Corp.*, 357 F. Supp. 943, 947 (D. Del. 1973) (denying section 1404(a) transfer notwithstanding that convenience favored the transfer because "[t]o permit transfer under these circumstances would be tantamount to rewarding Sunbeam for engaging in dilatory tactics which forced Scovill to seek declaratory relief").

Nothing in Aon's opposition supports a contrary conclusion.

Aon does not dispute that the "cases should be consolidated."  *See* Aon's September 8, 2003 Opposition to Motion to Transfer ("Aon Brf.") at 16.  Its only response is that it has "taken

10

action to effect that consolidation in the Northern District of Illinois," by moving to transfer Lincoln's New Jersey action and Phoenix and Cologne's New Jersey action to Illinois. *Id.* What Aon cannot do, however, is make Rattner subject to personal jurisdiction in Illinois. Rattner is a defendant in Lincoln's New Jersey action. Op. Br. at 7-8. A transfer of the New Jersey action to Illinois would require that the Northern District of Illinois be a District "where [the action] might have been brought," *i.e.*, that Rattner be subject to personal jurisdiction in Illinois. 28 U.S.C. § 1404(a).

Aon bears the burden of proving that Rattner would be subject to personal jurisdiction in Illinois. *Commodity Futures Trading Commission v. Savage*, 611 F.2d 270, 279 (9th Cir. 1980). Nevertheless, Aon has failed to present a single piece of evidence that Rattner would be subject to jurisdiction in Illinois. *See* Mooney October Decl. ¶ 22 & Exh. P (noting that the evidence cited in support of the "might have been brought" showing does not even mention Rattner). In light of Aon's complete failure to make the showing required by the express language of the statute, there is no basis for a transfer of Lincoln's New Jersey action to Illinois. *See* 28 U.S.C. § 1404(a); *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964), *superseded on other grounds*; *Hoffman v. Blaski*, 363 U.S. 335, 343-44 (1960); *Sunbelt Corp. v. Noble, Denton & Associates, Inc.*, 5 F.3d 28, 31 (3d Cir. 1993); *Shutte v. Armco Steel Corp.*, 431 F.2d 22, 24 (3d Cir. 1970); *Sutton v. Rehtmeyer Design Co.*, 114 F. Supp. 2d 46, 49-50 (D. Conn. 2000).[7] In any event, it is both speculative and presumptuous for Aon to suggest that this Court should transfer the present action to Illinois because the New Jersey District Court will supposedly do the same.

Further, there is even less of a basis for transferring the New Jersey action filed by Phoenix and Cologne to Illinois. Phoenix and Cologne sued not only Rattner, but also several

---

[7]     Aon does hint in its New Jersey motion (without adducing evidence to support that hint) that Rattner might waive its personal jurisdiction defense if the New Jersey action is transferred to Illinois. *See* Mooney October Decl. ¶ 22 & Exh. P. This speculation is unconvincing, as Rattner did not join in or otherwise support Aon's motion. It is also irrelevant, because simply consenting to the exercise of jurisdiction by a Court that would not otherwise have jurisdiction is not sufficient to satisfy the "might have been brought" requirement of section 1404(a). *Hoffman*, 363 U.S. at 343-44.

11

former Unicover principals, who reside in New Jersey and are not subject to personal jurisdiction in Illinois. Mooney October Decl. ¶ 19 & Exh. M. Because these individuals are not subject to personal jurisdiction in Illinois, the action filed by Phoenix and Cologne could not have been brought there, as is required for a transfer under 28 U.S.C. section 1404(a). Therefore, the *only* jurisdiction in which both Lincoln actions can be consolidated, and the *only* jurisdiction in which those actions can be consolidated with the actions brought by Phoenix and Cologne, is New Jersey. Since all parties agree that these actions should be consolidated, this action should be transferred to New Jersey.[8]

Aon has no effective response to the fact that several important witnesses, including most notably Pallat, are subject to subpoena only in New Jersey. *See supra* at 9-10.[9] Its principal response is to offer the *non sequitur* that "plaintiff adroitly avoids any mention in its motion to transfer that its own witnesses reside in or around Ft. Wayne." Aon Br. at 14 (italics omitted).[10] This misses the point, which is that a fair trial requires the presence of Unicover's witnesses in

---

[8]     Because of the importance of consolidation, even if this Court takes the view that a consolidated action should be litigated in Illinois and not New Jersey, the proper course would nonetheless be to transfer this action to New Jersey for consolidation with Lincoln's New Jersey action. Then, if the New Jersey court determines that the action is properly transferred to Illinois, the entire matter could be transferred at once. In the much more likely event that the New Jersey court determines that Aon has failed to carry its burden of demonstrating that Rattner is subject to jurisdiction in Illinois, and/or that New Jersey is in any event a superior forum, the consolidated cases would remain together in New Jersey, rather than being split between Illinois and New Jersey.

Alternatively, Lincoln respectfully suggests that this Court defer ruling on this motion until the New Jersey court has determined whether the New Jersey action can and should be transferred to Illinois. At that time, this Court could transfer this action to the District in which the New Jersey action is proceeding.

[9]     Aon attempts to minimize the importance of Pallat's office and residence in New Jersey by claiming that "it was Pallat who was often in the Lisle office for purposes of conducting Unicover Pool business." Aon Br. at 13. The *evidence* cited, however, shows nothing more than that Pallat visited Illinois once. *See* Declaration of Roger Smith ("Smith Decl.") ¶ 7.

[10]    Aon also mentions in passing its belief that certain Unicover officers who used to work at Unicover's satellite office may still live in Illinois. Aon Br. at 14. Yet Aon does not dispute that the *principal* third party witnesses – especially Pallat – reside in New Jersey.

12

New Jersey, who had the communications with Aon that are described in the complaint. *See Terra International*, 119 F.3d at 696; *Jones*, 211 F.3d at 499. In any event, it is doubtful that Aon cares one iota about the convenience of Lincoln's witnesses. It is not for Aon to feign concern for Lincoln's convenience as a justification for denying Lincoln's motion to transfer.[11]

Aon's efforts to argue that the "locus" of its wrongdoing was Chicago is premised on a mischaracterization of Lincoln's claims. Aon claims that Lincoln's "complaint fundamentally concerns claims regarding Unicover's and Aon's conduct regarding underwriting practices related to the Pool." Aon Br. at 12. Having mischaracterized the complaint, Aon argues that the case should be transferred to Illinois because Unicover's underwriting activities were principally conducted in Unicover's branch office in Lisle, Illinois. *Id.* at 13-14.

Even a cursory reading of the complaint reveals, however, that it is not about underwriting. Indeed, the word "underwriting" barely appears in the complaint.[12] The central charging allegations of Lincoln's complaint are that Aon breached its contractual obligations by concealing the excessive volume of business retroceded to the Retrocessionaires; by failing fully to disclose to the Pool members the Retrocessionaires' concerns regarding the level of business being retroceded; by affirmatively representing that the Retrocessionaires were not dissatisfied with the amount of premium being retroceded to them, knowing that such representations were false; and by encouraging Unicover to write more business on behalf of the Pool despite the precarious state of the Pool's retrocessional coverage. Complaint ¶¶ 31, 37, 42. Thus, the focus of the complaint is not *Unicover's* underwriting but rather *Aon's* continuing misrepresentations and omissions in communications to the Pool, which were almost uniformly to or from

---

[11] In this lawsuit involving large corporations with adequate resources, the convenience of party witnesses traveling to trial is a very minor factor compared to the importance of the ability to ensure that central testimony is available. *See infra* at 18. Indeed, Aon admits that the relative means of the parties does not favor either venue, as the parties' resources are adequate to litigate in either venue. Aon Br. at 18.

[12] "Underwrite" or "underwriting" appears only three times in the complaint, twice in general definitional paragraphs (Complaint ¶¶ 10, 12) and once in a quote from the agent for the Retrocessionaires (*id.* ¶ 20).

SF\435048.8

Unicover's headquarters in New Jersey. *See* Mooney August Decl. ¶¶ 2-4;[13] Mooney October Decl. ¶ 11. In sum, the actual wrongdoing—the deceptions, the suppressions, the failures to fulfill contractual duties—primarily involved New Jersey.

### B. The Factors Proffered by Aon Confirm that New Jersey Is the Superior Forum

In its cross motion to transfer this action to Illinois, Aon offers a melange of factors that supposedly show that this action should be transferred to Illinois. Upon analysis, however, none of these factors supports that result.

### 1. Aon ignores the central importance of consolidation

Virtually all of Aon's argument consists of a simple comparison of whether this action, standing alone, should be litigated in Illinois or New Jersey. *See* Aon Br. at 12-18. But this case does not stand alone. It is, as Aon must admit, closely related to Lincoln's New Jersey action. In this situation, the most important consideration is to ensure consolidation of the actions. *See, e.g., Continental Grain Co. v. Barge FBL-585*, 364 U.S. 19, 26 (1960) ("To permit a situation in which two cases involving precisely the same issues are simultaneously pending in different District Courts leads to the wastefulness of time, energy and money that § 1404(a) was designed to prevent."). As discussed above, the only way to ensure consolidation is to transfer this action to New Jersey. *See supra* at 9.

### 2. Even standing alone, the factors cited by Aon favor New Jersey

Contrary to Aon's assertions, the factors it cites support transfer to New Jersey, and none provides any significant reason to transfer the matter to Illinois.

---

[13]    In any event, even Unicover's underwriting functions were only located in Illinois for a short period. The principal events at issue in this litigation began in the second half of 1998. Complaint ¶ 20. By that time, Mr. Dunn was preparing to retire, and Unicover's Chairman John Pallat was taking the lead role even with respect to underwriting. Mooney October Decl. ¶ 3 & Exh. B (arbitration testimony of John Pallat); *see also id.* ¶ 11 & Exh. F (deposition testimony of John Pallat); Mays Affidavit ¶¶ 52-58.

### a.    The locus of operative facts

As discussed above, Aon is able to argue that the locus of operative facts is Illinois only by mischaracterizing Lincoln's complaint. *See supra* at 13. Aon asserts (without citation) that the complaint is about "underwriting practices related to the Pool." Aon Br. at 18. Even a cursory reading of the complaint reveals, however, that it is not about *Unicover's* underwriting; it is about *Aon's* misrepresentations, concealments and other breaches of contract. *See supra* at 13-14. Indeed, Unicover is not a defendant in either of Lincoln's actions, which, by itself demonstrates that this dispute is not about Unicover's underwriting activities in Illinois.

### b.    The location of documents

This factor is of virtually no importance in this action. Aon asserts that its documents are in Illinois and that Lincoln's documents are presumably in Indiana. Aon Br. at 14. Aon fails to mention, however, that hundreds of thousands of documents have already been exchanged in the Rule 26 process. Mooney October Decl. ¶ 24. Furthermore, in a dispute of this magnitude, documents are routinely copied and exchanged by the parties in electronic format, making the transportation of documents from their original location to any place in the country a virtually trivial endeavor. *See, e.g., Affymetrix v. Synteni, Inc.*, 28 F. Supp. 2d 192, 208 (D. Del. 1998) ("[w]hile many (if not all) of the documents are located elsewhere, recent technological advances have reduced the weight of this factor to virtually nothing"); *Coker v. Bank of America*, 984 F. Supp. 757, 766 (S.D.N.Y. 1997) ("In today's era of photocopying, fax machines and Federal Express, [defendant's] documents easily could be sent to New York, since not so many documents are involved."); *Met-L-Wood Corp. v. SWS Industries, Inc.*, 594 F. Supp. 706, 710 (N.D. Ill. 1984) (document location not an important factor absent substantial difficulties with transporting them).

To the extent the location of documents is of any significance, it is the location of documents in the possession of third parties. The ability to subpoena production of relevant documents is a compelling factor in assessing the proper venue for this litigation. *See, e.g., Falconwood Financial Corp. v. Griffin*, 838 F. Supp. 836, 841 (S.D.N.Y. 1993). Here, the most

15

important third party witnesses are located in New Jersey, and those witnesses' documents likely are located there as well. *See supra* at 8-9.

### c.    The convenience of the witnesses

Aon asserts that the convenience of witnesses supports litigating in Chicago, citing three of its own employees who reside in Chicago and asserting (on information and belief) that certain unnamed "Unicover officers" still reside in Illinois. Aon Br. at 14. Aon then feigns concern for Lincoln's witnesses, pointing out that Fort Wayne is only 200 miles from Chicago.[14] *Id.* In fact, the entire discussion regarding the convenience of party witnesses is much ado about nothing. In the context of large litigation between substantial corporations over many millions of dollars, the expense or inconvenience of a single three hour flight from Chicago to Newark is properly accorded little weight. *Cf. Hathi v. Frischer*, 645 F. Supp. 360, 362 (E.D. Pa. 1986) (additional two hours of travel time not a significant factor transfer analysis).

More to the point, any modest increase in the convenience to witnesses from testifying in Chicago rather than Newark is far outweighed by the great increase in *inconvenience* imposed on witnesses who would, if Aon's motion were granted, be forced to testify in *both* Chicago and Newark. But the dispositive point is the importance of ensuring that essential witnesses are subject to the subpoena power, as discussed in the next section.

### d.    The availability of process to compel attendance of unwilling witnesses

Aon concedes that this factor supports litigating in the forum in which "key witnesses" are subject to the subpoena power. Aon Br. at 15 (acknowledging *Sutton v. Rehtmeyer Design Co.*, 114 F. Supp. 2d 46, 50 (D. Conn. 2000), and *Lever Brothers Co. v. Procter & Gamble Co.*, 23 F. Supp. 2d 208, 210-11 (D. Conn. 1998)). Aon then seeks to avoid the impact of this important factor by asserting that "it is clear that more of the key witnesses in this case are located in Illinois [than New Jersey]." *Id.*

---

[14]    Aon also argues that other witnesses "are based in Connecticut, Minneapolis and London." Aon Br. at 14. Those locations are at least as convenient to Newark as they are to Chicago.

The "evidence" that Aon cites as support for this proposition is nothing more than a chart listing eight Unicover employees in Illinois and six Unicover employees in New Jersey.[15]  It contains identical vague and conclusory descriptions of each employee's purported relevance to the case.  This "evidence" is of doubtful competence because there is no showing that Smith has personal knowledge of the facts relating to the Unicover employees.[16]  Importantly, Aon does not even suggest that any of those employees can give any testimony relevant to this dispute.  Consistent with Aon's mischaracterization of Lincoln's complaint, the description for each employee relates to the underwriting and management of the Pool and says nothing about knowledge of Aon's false statements and concealments.  *See* Smith Decl. ¶ 20 & Exh. X.

The meager importance (if any) of the testimony from the witnesses identified by Aon stands in sharp contrast to the critical importance of the testimony of Pallat, who testified for some 14 days (in deposition and at the hearing) in the Three-Year Whole Account arbitration, and the other Unicover witnesses who reside in New Jersey.  Pallat's trial testimony will be critical in this dispute and cannot be obtained in Illinois.

     **e.**     **The convenience of the parties.**

As with the convenience of the witnesses, this factor is of at most modest significance.  Aon presents no evidence that litigating in Newark would be difficult or inconvenient.  Aon has counsel working on this matter in Minneapolis, Hartford, Chicago, New York, and Newark.  Mooney October Decl. ¶ 25.  In major litigation of this sort, prosecuting the action ten miles from Newark International Airport will result in no significant inconvenience to any party.  On the other hand, consolidation of the two Lincoln actions and the two Phoenix and Cologne actions in New Jersey would provide far more significant convenience benefits.

---

[15]    *See* Smith Decl. ¶ 20 & Exh. X.

[16]    *See* Fed. R. Evid. 602 ("A witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter.").

17

All parties agree that Lincoln's actions should be consolidated with the actions filed by Phoenix and Cologne. Mooney October Decl. ¶ 26 (noting statements of position made by all parties to Magistrate Judge Falk in New Jersey). If all of the actions are consolidated, there will be a total of eleven parties to the consolidated actions. An examination of the parties further demonstrates why New Jersey has by far the greater interest in this dispute:

- Defendant Unicover (and its related corporate entities, defendants Unicover Managers, LLC, and Cragwood Managers LLC) is and at all relevant times has been headquartered in New Jersey.

- Defendant John Pallat is and at all relevant times has been a resident of New Jersey.

- Defendant Robert Wojtowicz is and at all relevant times has been a resident of New Jersey.

- Defendant Joseph Wojtowicz is and at all relevant times has been a resident of New Jersey.

- Defendant Kenneth Griebell is and at all relevant times has been a resident of New Jersey.

- Defendant Thomas Dunn was formerly a resident of New Jersey, but has since moved to Illinois.

- Defendant Rattner is headquartered in London, and its most significant contacts relating to this matter have been in New Jersey.[17]

---

[17] Indeed, as noted above, Aon has pointed to no Rattner contacts with Illinois at all, notwithstanding its burden to demonstrate that Rattner would be subject to jurisdiction there. It is hard to imagine a more telling omission. Similarly, there is no evidence that John Pallat, Joseph and Robert Wojtowicz, and Kenneth Griebell, who are residents of and were employed in New Jersey, could be subject to personal jurisdiction in a lawsuit brought in Illinois. *See Hyatt International v. Coco*, 302 F.3d 707, 716 (7th Cir. 2003) (Illinois District Court may not exercise personal jurisdiction over a putative defendant unless putative defendant has "purposefully availed" himself of the benefits of that jurisdiction and could "reasonably anticipate" being required to respond to a lawsuit in Illinois).

SF\435048.8

- Defendant Aon is headquartered in Illinois.

- Plaintiff Lincoln is headquartered in Indiana.

- Plaintiff Phoenix is headquartered in Connecticut.

- Plaintiff Cologne is headquartered in Connecticut.

*See* discussion *supra*.

Thus, of the eleven parties, six are principally associated with New Jersey, two are principally associated with Connecticut (near New Jersey), one is principally associated with Indiana, one is principally associated with Illinois, and one now resides in Illinois but previously resided in New Jersey. There can be no dispute that the focal point for the litigation is New Jersey, and that Aon is seeking nothing more than to enhance its *own* convenience, at the expense of the other parties, by seeking to litigate in its home forum. The case law uniformly holds that a defendant's desire to litigate near its headquarters is insufficient to support a transfer motion. *See, e.g., Richards v. Upjohn Co.*, 406 F. Supp. 405, 406-407 (E.D. Mich. 1976). Moreover, as discussed above, Aon has forfeited any consideration of its own convenience by its obstructionism in connection with this dispute. *See supra* at 6-10.

> **f.    The weight accorded to plaintiff's choice of forum**

Aon concedes, as it must, that plaintiff's choice of forum is entitled to deference. Aon Br. at 16 (acknowledging *Cavanaugh v. Bluebeard's Castle, Inc.*, 83 F. Supp. 2d 284, 287 (D. Conn. 1999)). In fact, courts have routinely described the plaintiff's choice of forum as the "paramount" factor in evaluating the potential transfer of an action. As one court noted, "[i]t is black letter law that a plaintiff's choice of a proper forum is a paramount consideration in any determination of a transfer request, and that choice should not be lightly disturbed." *Shutte v. Armco Steel Corp.*, 431 F.2d 22, 25 (3d Cir. 1970) (citation omitted). Aon then seeks to avoid the point by asserting that deference should not be accorded in this action because Lincoln has requested a transfer of this action to New Jersey, so that transfer to Illinois will somehow "result in what plaintiff had in mind all along." Aon Br. at 16. To the contrary, there is no question that New Jersey is plaintiff's choice of forum, as plaintiff's motion to transfer to New Jersey makes

19

clear. There is equally no question that transfer to Illinois is the *opposite* of plaintiff's choice, not least because it would render impossible the consolidation of the two Lincoln actions, and the further consolidation of those actions with the Phoenix/Cologne actions.

In situations involving competing motions to transfer, case law uniformly concludes that the plaintiff's choice of forum is still entitled to deference, even though the choice is other than the forum in which the action was originally brought. For example, in *KCJ Corp. v. Kinetic Concepts, Inc.*, 18 F. Supp. 2d 1212 (D. Kan. 1998), plaintiff filed suit in the Western District of Missouri. After defendant moved to transfer the action to Texas, plaintiff filed a cross-motion seeking transfer of the action to Kansas. After the Missouri court transferred the action to Kansas, defendant brought a motion in Kansas to transfer to Texas, and argued that plaintiff's choice of the Kansas forum should not be accorded deference because plaintiff had originally filed the action in Missouri. 18 F. Supp. 2d at 1215. The court noted that the case was indeed "atypical," but that plaintiff's second choice of forum should nonetheless be accorded deference because its motivation for initially filing in Missouri was one approved by the Supreme Court (*viz.*, a desire to save time and resources). *Id.* at 1215-16. So too here, where the motivation (ensuring application of Connecticut's statute of limitations and thus ensuring that defendant must respond on the merits rather than with technicalities) has been approved by the Supreme Court in *Ferens*. Thus, plaintiff's choice of the transferree forum remains a choice entitled to "great weight," and should be disturbed only "rarely." 18 F. Supp. at 1214; *see also Lee v. Hunt*, 415 F. Supp. 245, 247 (M.D. La. 1976) (upon holding that action could not be maintained in the District in which it was filed, the case would be transferred to the Western District of Louisiana and not the Northern District of Texas, because the court would not "override the plaintiff's choice of forum.").

g.      **Trial efficiency.**

Again Aon concedes, as it must, that the Lincoln actions and Phoenix/Cologne actions all "should be consolidated." Aon Br. at 16. Aon seeks to avoid consideration of the overwhelming advantages of consolidation by asserting that "Aon Re's consolidation of these actions in Illinois

SF\435048.8

will accomplish the same trial efficiency identified by Lincoln." *Id.* at 17. Aon's unsupported assertion is speculative at best. It would be true only if the New Jersey court rules: (a) that Aon carried its burden of proving that Illinois would have personal jurisdiction over Rattner, despite not having proffered a scintilla of evidence on the topic, (b) that Illinois would be a superior forum to New Jersey, notwithstanding the deference accorded plaintiff's choice of forum and the New Jersey locus of the wrongdoing, (c) that the Phoenix/Cologne New Jersey action could have been brought in Illinois, notwithstanding the multiple defendants apparently not subject to personal jurisdiction in Illinois, and (d) that Illinois would be a superior forum to New Jersey for the Phoenix/Cologne New Jersey action. In light of Aon's meagre showing, the odds of all four rulings being obtained is quite remote, and the only way to ensure consolidation is to transfer the Connecticut actions to New Jersey. If the New Jersey court then concludes that it can and should transfer the consolidated actions to Illinois, it would of course remain free to do so.[18]

h.      **The forum's familiarity with the governing law.**

Aon argues that "federal courts are accustomed in diversity actions to applying laws foreign to the law of their particular State," and that this familiarity and the advent of electronic legal research render this factor unimportant. Aon Br. at 17-18 (internal quotations omitted). Despite this concession, Aon then asserts without support or analysis that the factor favors litigation in Illinois. *Id.* at 18. However, to the extent this factor favors either location, it favors litigation in New Jersey, because New Jersey law will almost certainly govern this dispute. Connecticut choice of law rules will apply to this dispute whether it is transferred to New Jersey or Illinois. *Ferens*, 494 U.S. at 531. Those rules require application of the law of the State with the "most significant relationship" to the causes of action. *Reichhold Chemicals, Inc. v. Hartford*

---

[18]      Aon closes this section of the brief by citing statistics indicating that the median time for disposition of actions in the Northern District of Illinois is 26 months, compared to 30 months in the District of New Jersey. Aon Br. at 17. This statement regarding medians says nothing about the types of cases in each district, or whether a particular case would be disposed of more quickly in one jurisdiction or the other. And indeed it is ironic that Aon now professes to worry about a speedy resolution, after taking more than 100 days to file a responsive pleading in this matter.

21

*Accident & Indemnity Co.*, 703 A.2d 1132, 1139 (1997). For all the reasons previously discussed, that State is New Jersey.[19]

      **i.    The relative means of the parties.**

Aon concedes that this factor does not favor its position, and is at best no more than neutral. Aon Br. at 18. In fact, the issue of financial resources favors transfer to New Jersey and consolidation, as consolidation would sharply reduce each party's expenses.

## IV.    CONCLUSION

For the foregoing reasons, Lincoln respectfully requests that its motion to transfer this matter to the United States District Court for the District of New Jersey be granted and that Aon's cross motion to transfer this action to the United States District Court for the Northern District of Illinois be denied.

Dated:  October 23, 2003
        San Francisco, CA

                         LATHAM & WATKINS LLP

                         By _____
                            Richard Mooney (ct25231)

                            505 Montgomery St. #1900
                            San Francisco, CA 94111
                            (415) 391-0600
                            (415) 395-8095 (fax)
                            richard.mooney@lw.com

---

[19]    In addition, New Jersey law will almost certainly apply to the causes of action in the Lincoln New Jersey action, since New Jersey choice of law rules require "application of the law of the state with the greatest interest in resolving the particular issue that is raised in the underlying litigation." *Gantes v. Kason Corp.*, 679 A.2d 106, 109 (N.J. 1996). Here, the principal wrongdoing occurred in and was directed at New Jersey, requiring application of New Jersey law.

SF\435048.8