03 CV 905  Date
Declaration
A-6

## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

THE LINCOLN NATIONAL LIFE
INSURANCE COMPANY,

Plaintiff,

v.

AON RE, INC.

Defendant.

Civil Action No. 303 CV 905 RNC

**DECLARATION OF RICHARD
MOONEY IN SUPPORT OF THE
LINCOLN NATIONAL LIFE
INSURANCE COMPANY'S
REPLY IN SUPPORT OF
MOTION TO TRANSFER
PURSUANT TO 28 U.S.C
SECTION 1404 AND
OPPOSITION TO CROSS-
MOTION OF DEFENDANT AON
RE, INC.**

(October 24, 2003)

**ORAL ARGUMENT REQUESTED**

SF\437734.1

I, Richard J. Mooney, declare as follows.

1.      I am an attorney admitted to practice in the State of California, and admitted *pro hac vice* before this Court (bar number ct25231).  I am associated with the law firm of Latham & Watkins LLP, counsel to Plaintiff The Lincoln National Life Insurance Company ("Lincoln") in this matter.  I make this declaration in support of Lincoln's Motion To Transfer Pursuant to 28 USC Section 1404 and in opposition to the Cross-Motion To Transfer of Defendant Aon Re, Inc. ("Aon").  I have personal knowledge of the facts stated in this declaration and, if called upon to do so, I could and would testify competently thereto.

2.      This paragraph has been left intentionally blank.  Exhibit A attached hereto has also been left intentionally blank.

3.      Attached hereto as Exhibit B is a true and correct copy of page 3725 (and surrounding pages for context) of the hearing transcript in the Three-Year Whole Account arbitration (arbitration testimony of John Pallat).

4.      Attached hereto as Exhibit C is a true and correct copy of a document produced and used in the Three-Year Whole Account arbitration as Exhibit 1234.

5.      Attached hereto as Exhibit D is a true and correct copy of a document produced in the Three-Year Whole Account arbitration Bates numbered Aon Re 02445-48.

6.      I have reviewed an index of the documents produced and used in the Three-Year Whole Account arbitration.  That review confirmed that approximately 300 pieces of correspondence produced in the Three-Year Whole Account arbitration were sent from Roger Smith of Aon to Unicover in New Jersey, or were sent from New Jersey to Roger Smith of Aon. These documents include, for example, Exhibits C and D referred to in the preceding paragraphs. Of those documents, approximately 32 were exhibits in the Three-Year Whole Account arbitration.

7.      I have reviewed an index of the documents produced and used in the Three-Year Whole Account arbitration.  That review confirmed that the vast majority of written

1

communications (as produced in the arbitration) between Aon and Unicover from 1998 forward were sent by Aon to Mr. Pallat in New Jersey or were sent by Mr. Pallat in New Jersey to Aon.

8.      I have reviewed (without reading in detail) the transcripts of the hearing in the Three-Year Whole Account arbitration. That review confirmed that the hearing began on July 8, 2002 and continued through August 7, 2002. It further confirmed that during that period the arbitration panel heard testimony from 20 witnesses and received 584 exhibits.

9.      On October 8, 2002, the arbitration panel in the the Three-Year Whole Account arbitration issued an award (subsequently clarified without substantive change on January 4, 2003) relieving the Retrocessionaires of responsibility for reinsuring business bound or renewed by Unicover after August 31, 1998. A true and correct copy of that award (with clarification) is attached hereto as Exhibit E.

10.     I have reviewed (without reading in detail) the transcripts of the hearing in the Three-Year Whole Account arbitration. That review confirmed that John Pallat testified on seven days at the arbitration, and that no other witness testified on more than four days. I have further reviewed (without reading in detail) the transcripts of the depositions taken in the Three-Year Whole Account arbitration. That review confirmed that John Pallat gave deposition testimony on seven days (distinct from the seven days of testimony at the arbitration hearing itself).

11.     I have reviewed an index of the documents produced and used in the Three-Year Whole Account arbitration. That review confirms that the vast majority of the written communications to or from Mr. Pallat (as produced in the arbitration) were to or from Mr. Pallat in New Jersey. Attached hereto as Exhibit F is a true and correct copy of pages 41-42 (and surrounding pages for context) of the deposition testimony given by John Pallat in the Three-Year Whole Account arbitration.

12.     Attached hereto as Exhibit G is a true and correct copy of a complaint filed by Sun Life Assurance Company, Phoenix Home Life Mutual Insurance Company, and American Phoenix Life and Reassurance Company against Aon in the Circuit Court of Cook County,

2

Illinois, seeking the return of documents belonging to the plaintiffs relating to Three-Year Whole Account arbitration and describing the Aon's refusal to produce those documents over a four month period.

13.     Attached hereto as Exhibit H is a true and correct copy of a portions of a transcript of the January 11, 2001 hearing in the matter described in the preceding paragraph, including the presiding judge's characterization of Aon's conduct.

14.     I have reviewed (without reading in detail) the transcripts of the hearing in the Three-Year Whole Account arbitration. That review confirmed that Unicover witnesses Robert Wojtowicz and Brian Cook testified at the hearing, and that Kenneth Griebell did not. I have further reviewed (without reading in detail) the transcripts of the depositions taken in the Three-Year Whole Account arbitration. That review confirmed that Kenneth Griebell gave deposition testimony during the arbitration. According to the latest information available to Lincoln, and based upon my review of publicly available information, Mr. Wojtowicz and Mr. Griebell are New Jersey residents.

15.     Attached hereto as Exhibit I is a true and correct copy of the report of a process server engaged during the course of the Three-Year Whole Account arbitration in an effort to secure the testimony of Aon executive Roger Smith.

16.     Attached hereto as Exhibit J is a true and correct copy of page 6046 (and surrounding pages for context) of the hearing transcript in the Three-Year Whole Account arbitration (argument of counsel for one of the Retrocessionaires (Phoenix)).

17.     Attached hereto as Exhibit K is a true and correct copy of page 3813 (and surrounding pages for context) of the hearing transcript in the Three-Year Whole Account arbitration (examination of Mr. Pallat by counsel for one of the Retrocessionaires (Phoenix)).

18.     Attached hereto as Exhibit L is a true and correct copy of a letter brief filed by Lincoln in the United States District Court for the District of New Jersey in support of Lincoln's request for a deposition of Aon executive Roger Smith. As of today, the Court has not ruled on that request.

3

19.     Attached hereto as Exhibit M is a true and corrrect copy of a complaint filed by Phoenix and Cologne in the United States District Court for the District of New Jersey against Aon, Rattner, Unicover, several former Unicover principals, and certain Unicover successors in interest.

20.     Attached hereto as Exhibit N is a true and correct copy of a complaint filed by ReliaStar in the New Jersey Superior Court (Middlesex County) against Aon, Rattner, Unicover, several former Unicover principals, and certain Unicover successors in interest.

21.     Attached hereto as Exhibit O is a true and correct copy of the brief in support of the motion by Phoenix and Cologne to transfer their action against Aon filed in this Court (pending before Judge Eginton) to the United States District Court for the District of New Jersey.

22.     Attached hereto as Exhibit P is a true and correct copy of an excerpt from the brief that Lincoln intends to file on October 24, in opposition to the motion of Aon to transfer the action filed by Lincoln against Aon and Rattner in the United States District Court for the District of New Jersey to the United States District Court for the Northern District of Illinois, reflecting the fact that Aon presented no evidence that Rattner would be subject to the jurisdiction of the Illinois courts.

23.     Aon has recently produced in response to its obligations under Federal Rule of Civil Procedure 26 approximately 200 addditional communications between Aon and Unicover's New Jersey office.

24.     In response to its obligations under Rule 26 of the Federal Rules of Civil Procedure, Aon made available approximately 32 boxes of documents in this matter. Of that amount, approximately 31 boxes had been previously produced in the Three-Year Whole Account arbitration, and were available in electronic format to both Aon and Lincoln prior to the commencement of this litigation.

25.     In the course of this litigation, I have had occasion to deal with counsel representing Aon located in Minneapolis, Hartford, Chicago, New York, and Newark.

SF\437734.1

26.    I have participated in several telephonic status conferences before Magistrate Judge Falk of the United States District Court for the District of New Jersey in connection with Lincoln's action filed against Aon and Rattner in that jurisdiction.  The last two such conferences have included also the parties to the lawsuit filed in that jurisdiction by Phoenix and Cologne against Aon, Rattner, and others.  During the course of those conferences, all parties have agreed that those two actions should be consolidated, and Magistrate Judge Falk indicated his agreement.  Magistrate Judge Falk set a date certain by which any party objecting to such consolidation was required to express such objection.  That date has passed, and no objection was expressed by any party.

I declare under penalty of perjury under the laws of the United States and the State of California and the State of Connecticut that the foregoing is true and correct and this declaration was executed on October 23, 2003 in San Francisco, California.

_____
Richard J. Mooney

**EXHIBIT A INTENTIONALLY LEFT BLANK.**

# TO BE PROVIDED PROMPTLY UPON SHORTLY-ANTICIPATED RESOLUTION OF PROTECTIVE ORDER ISSUE

# TO BE PROVIDED PROMPTLY UPON SHORTLY-ANTICIPATED RESOLUTION OF PROTECTIVE ORDER ISSUE

# TO BE PROVIDED PROMPTLY UPON SHORTLY-ANTICIPATED RESOLUTION OF PROTECTIVE ORDER ISSUE



In the Matter of the Arbitration

Between:

SUN LIFE ASSURANCE COMPANY OF CANADA,
PHOENIX HOME LIFE MUTUAL INSURANCE
COMPANY, AMERICAN PHOENIX LIFE AND
REASSURANCE COMPANY and GENERAL &
COLOGNE LIFE RE OF AMERICA,
                        Petitioner

        -and-

                                           **FINAL AWARD**

CONNECTICUT GENERAL LIFE INSURANCE
COMPANY, LIFE REASSURANCE CORPORATION
OF AMERICA, LINCOLN NATIONAL LIFE
INSURANCE COMPANY, and CRAGWOOD
MANAGERS, LLC,
                        Respondent

The panel, having conducted a final hearing in this arbitration from July 8 through
August 7, 2002; having considered the testimony, documentary evidence and submissions
of the parties, and; having deliberated on these matters, the panel unanimously makes the
following final award:

1.     The Petitioners' requests that the Whole Account Treaties be rescinded are
denied;

2.     The request of Petitioner Sun Life Assurance Company of Canada ("Sun
Life") that additional damages be awarded to reimburse Petitioners for
settlement payments made to resolve liabilities under contracts written by
Unicover for Reliance and Lincoln Facilities is denied;

3.     The request of Petitioner General & Cologne Life Re of America ("Cologne")
that Petitioners be relieved of their liabilities under the December 1, 1997
Whole Account for the EBI, Zurich (Amerisafe) and Clarendon Whole
Account contracts is denied;

4.     The request by petitioner Cologne that Connecticut General Life Insurance
Company, Lincoln National Life Insurance Company and Reliastar Life
Insurance Company pay Cologne, in its capacity as a whole account
retrocessionaire money damages, is denied;

5.     The request by Petitioner Cologne that Cragwood pay damages relating to the
settlements of the Reliance and Lincoln Facilities is denied;

6.  Respondents' request that the panel declare that the Three-year Whole Account Treaty valid is granted to the extent of business bound or renewed to such treaty on or before August 31, 1998. The Petitioners will not be liable for any losses arising from business bound or renewed to such treaty thereafter, and will repay to the Respondents all premium amounts paid, which relate to such business.

7.  All requests for punitive damages, fees or costs are denied, and;

8.  All other requests for relief are denied.

This award is not intended and shall not be interpreted to reverse or modify in any manner the settlements entered into by the parties with each other or third parties relating to business ceded to the Whole Account treaty.

The panel will retain jurisdiction until December 31, 2002 in order to resolve any issues or disputes regarding this award.

Panel: Umpire:        Thomas M. Tobin
       Arbitrator:    Daniel E. Schmidt IV
       Arbitrator:    Paul E. Dassenko

Dated: October 8, 2002

_____    _____    _____
Daniel E. Schmidt, IV          Paul E. Dassenko              Thomas M. Tobin

In the Matter of the Arbitration

Between:

SUN LIFE ASSURANCE COMPANY OF CANADA,
PHOENIX HOME LIFE MUTUAL INSURANCE
COMPANY, AMERICAN PHOENIX LIFE AND
REASSURANCE COMPANY and GENERAL &
COLOGNE LIFE RE OF AMERICA,

                       Petitioners

                                                      **CLARIFICATION**

      -and-

CONNECTICUT GENERAL LIFE INSURANCE
COMPANY, LIFE REASSURANCE CORPORATION
OF AMERICA, LINCOLN NATIONAL LIFE
INSURANCE COMPANY, and CRAGWOOD
MANAGERS, LLC,
                      Respondents

The panel met on Saturday, January 4, 2003 to consider and discuss the Respondents' Motion for Clarification (the "Motion") of the panel's Final Award, dated October 8, 2002, and delivered by e-mail on October 9, 2002(the "Final Award") and submissions by the parties related thereto, and responds to the Motion as follows:

1.    Final Award, par.6-as to the specific accounts referred to in the Motion, the panel confirms that the panel relied on the Revised Tables to the Witness Statement of David Ellis for purposes of establishing the bound dates for such accounts. Based on those tables, all of the accounts referred to were bound or renewed after August 31, 1998, except for LWCC, which was bound on August 6, 1998. One member of the panel dissents from this part of the decision on the Motion.

2.    Final Award, pars. 3 and 6- the panel confirms its Final Award relating to paragraphs 3 and 6, including the application of paragraph 3 only to the specific request of Cologne Life Re of America and the application of paragraph 6 to all business bound or renewed to the Whole Account

contract without any additional limitation implicitly derived from
paragraph 3.

3.    Final Award, par. 8- the panel confirms that paragraph 8 included a denial
       of an award of interest to all parties.

4.    All other requests and motions are denied.

For the panel:

/s/ T.M.Tobin


Panel:  Umpire:        Thomas M. Tobin
        Arbitrator:    Daniel E. Schmidt IV
        Arbitrator:    Paul E. Dassenko

Dated: January 4, 2003

# TO BE PROVIDED PROMPTLY UPON SHORTLY-ANTICIPATED RESOLUTION OF PROTECTIVE ORDER ISSUE

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, CHANCERY DIVISION

SUN LIFE ASSURANCE COMPANY )
OF CANADA, a Canadian Corporation, )
PHOENIX HOME LIFE MUTUAL )
INSURANCE COMPANY, a New )
York Corporation, and AMERICAN )
PHOENIX LIFE AND REASSURANCE )
COMPANY, a Connecticut Corporation, )
)
        Plaintiffs, )
)
        vs. )
)
AON RE, INC., an Illinois corporation, )
)
        Defendant. )

Case No.   **99CH14112**

## COMPLAINT

Plaintiffs Sun Life Assurance Company of Canada ("Sun Life"), Phoenix Home Life Mutual Insurance Company ("Phoenix Home") and American Phoenix Life and Reassurance Company ("American Phoenix") hereby allege for their complaint against defendant Aon Re, Inc. ("Aon") as follows:

## INTRODUCTION

1.    Defendant Aon served as agent and intermediary broker for plaintiffs Sun Life, Phoenix Home and American Phoenix in connection with a major reinsurance program. In the course of performing its work for plaintiffs, Aon created and/or maintained various documents relating to the reinsurance contracts entered into on plaintiffs' behalf. Sun Life, Phoenix Home and American Phoenix have repeatedly asked Aon for access to these documents, which legally belong to Sun Life, Phoenix Home and American Phoenix. Aon has ignored these requests. In so doing, Aon has disregarded its contractual, fiduciary and statutory obligations.

AUG-1C 28033THB 05-5109P5-RNC   Document 38   Filed 10/28/2003   Page 17 of 26   05
08/07/2003 12:49 FAX  860 527  98          EDWARDS & ANGELL         VIDERCEI

OCT-01-1999  17:19      BFKPN

Therefore, Sun Life, Phoenix Home and American Phoenix seek relief in this complaint allowing them to obtain copies of the documents.

## PARTIES

2.   Plaintiff Sun Life is an insurance company organized and existing under the laws of the country of Canada with its principal place of business at Sun Life Tower, 150 King Street West, Toronto, Ontario, CANADA.

3.   Plaintiff Phoenix Home is an insurance company organized and existing pursuant to the laws of the State of New York with its principal place of business at 1 American Row, Hartford, Connecticut.

4.   Plaintiff American Phoenix is an insurance company organized and existing pursuant to the laws of the State of Connecticut with its principal place of business at 100 Bright Meadow Boulevard, Enfield, Connecticut.  American Phoenix is a wholly-owned subsidiary of Phoenix Home. American Phoenix and Phoenix Home will be referred to collectively hereinafter as "Phoenix."

5.   Defendant Aon is a corporation organized and existing under the laws of the State of Illinois with its principal place of business at 123 North Wacker Drive, Chicago, Illinois. Aon is engaged in the business, *inter alia*, of acting as an insurance and reinsurance intermediary broker in Illinois and elsewhere.

## FACTS

A.   Aon's Role In The Placement Of
     Reinsurance For Sun Life And Phoenix.

6.   This action involves the reinsurance business.  Reinsurance is a transaction whereby an insurance or reinsurance company (known as the "reinsurer"), in exchange for

2

EXH_2.DOC

AUG-14-2003 THU 05:51 PM                    FAX NO.                    P. 06
08/07/2003 12:49 FAX  860 527 7770   EDWARDS & ANGELL   INSURANCE   Case 3:03-cv-00906-RNC   Document 38   Filed 10/28/2003   Page 18 of 26

OCT-01-1999  17:19          BFKPN

premium, agrees to indemnify or reimburse another insurance or reinsurance company (known as the "ceding company," "cedent" or "reinsured") against all or part of a loss that the ceding company may sustain under insurance policies the ceding company has issued. A reinsurer may further reinsure its risk with another reinsurer. The ceding company in such situations is called the "retrocedent" and the reinsurer who receives the premium and assumes risk from the retrocedent is called the "retrocessionaire."

7.    Reinsurance arrangements are common among insurers.   By purchasing reinsurance -- by "ceding" part of the risk -- insurers may write risks beyond their capital capacity and can spread the concentration of risk.

8.    Reinsurance is commonly marketed through an intermediary which locates reinsurance for all or part of the cedent's book of business.  The intermediary typically handles all dealings between a ceding company and a reinsurer, or between a retrocedent and a retrocessionaire.  Although the intermediary is not a party to the reinsurance contract, its proper handling of funds and transmittal of information is crucial to the transaction of business between the seller and the buyer of insurance.

9.    In October 1996, Phoenix and Sun Life authorized Centaur Underwriting Management Limited ("Centaur") to act as Phoenix's and Sun Life's underwriting agent for the purpose of entering into reinsurance agreements on their behalf.  Sun Life and Phoenix, acting through Centaur, entered into various agreements pursuant to which Sun Life and Phoenix acted as reinsurers for other insurance companies ("inward contracts") and other agreements pursuant to which Phoenix and Sun Life were in turn, reinsured by other companies ("outward contacts") (collectively, these inward and outward contracts are referred to herein as the "Agreements.")

3

4467_3.DOC

OCT-01-1999  17:19    BFKPN

10.    Aon acted as a broker and/or intermediary in the placement of certain of the Agreements and received commissions for its role in placing those Agreements.

11.    In assisting with the placement of outward contracts for Sun Life and Phoenix, Aon undertook all the obligations of an agent for Sun Life and Phoenix, as that term is used in the custom and trade of the industry.  In the case of both the inward and outward contracts, Aon was obligated as well to meet the requirements of Illinois' Reinsurance Intermediary Act as it relates to intermediary brokers, and a common law duty of care.  These requirements and duties included the obligation to maintain and make available documents relating to its activities.  In return, Aon received commissions for its services.

12.    The accounts and records generated or maintained by Aon in the course of its activities for or with respect to Sun Life and Phoenix relate to tens of millions of dollars of reinsurance contracts involving Sun Life and Phoenix.  These accounts and records are the property of Sun Life and Phoenix to which Aon owes a contractual and fiduciary duty as their agent, and a common law duty of care.  By statute, Aon is obligated to preserve, and give Sun Life and Phoenix access to, these accounts and records.  Those accounts and records are vital to Sun Life's and Phoenix's evaluation of their business position and their rights and risks in connection with the reinsurance contracts.

B.    Aon's Refusal To Permit Sun Life Access To The Accounts And Records.

13.    Sun Life has on several occasions made both oral and written requests of Aon to be allowed access to and review of the accounts and records relating to Aon's activities in connection with the Agreements.  Although obligated by contract, fiduciary duty, common law duty and/or statute to provide access, Aon has either refused or ignored each of these requests.

4

GM1_1.DOC

14.    On May 25, 1999, Robin Fitzgerald, Vice-President and General Manager of Sun Life, sent a letter to Roger Smith, Managing Director of Accident and Health at Aon, requesting permission to review the Aon/Sun Life accounts and records.  (A copy of Ms. Fitzgerald's letter dated May 25, 1999 is attached hereto as Exhibit 1).  On May 28, 1999, Mr. Smith forwarded Sun Life's request to Aon's Senior Counsel, Jerome S. Hanner.  (A copy of Mr. Smith's letter dated May 28, 1999 is attached hereto as Exhibit 2).  Neither Mr. Smith nor Mr. Hanner thereafter responded to Sun Life.

15.    On June 7, 1999, Ms. Fitzgerald followed up with a letter to Mr. Smith asking for a progress report on Sun Life's request to access the Aon/Sun Life accounts and records. (A copy of Ms. Fitzgerald's letter dated June 7, 1999 is attached hereto as Exhibit 3).  Ms. Fitzgerald again received no response.

16.    On June 22, 1999, Ms. Fitzgerald sent a letter to Mr. Smith, following up on a voice mail message she had left him the day before and requesting that the accounts and records be made available on a day the following week.  Again, Ms. Fitzgerald received no response. (A copy of Ms. Fitzgerald's letter dated June 22, 1999 is attached hereto as Exhibit 4.)

17.    Thereafter, Brian E. Williams, Assistant Vice President and Associate General Counsel for Sun Life, sent a letter dated June 29, 1999 to Mr. Hanner, outlining Sun Life's request to review Aon's Sun Life accounts and records and demanding access to those accounts and records.  (A copy of Mr. William's letter dated June 29, 1999 is attached hereto as Exhibit 5).  Again, no response was received.

18.    On July 6, 1999, Ms. Fitzgerald sent a letter to Michael Bungert, CEO and President of Aon, in which she described Sun Life's numerous requests for access to the

5

CRT_1.DOC

Aon/Sun Life accounts and records, as well as Aon's failure to grant such access, and once again requested that Aon allow access to and review of the accounts and records. Mr. Bungert did not reply. (A copy of Ms. Fitzgerald's letter dated July 6, 1999 is attached hereto as Exhibit 6.)

19.     On August 31, 1999, Ms. Fitzgerald wrote again to Mr. Smith setting a deadline for compliance of September 10, 1999, after which the matter would be referred for legal action. (A copy of Ms. Fitzgerald's letter dated August 31, 1999 is attached hereto as Exhibit 7.) On September 23, 1999, counsel for Sun Life notified Aon that a further refusal would be deemed a breach of Aon's contractual, fiduciary and statutory obligations. (A copy of counsel's letter dated September 23, 1999 is attached hereto as Exhibit 8.) Aon responded with a letter dated September 23, 1999 in which it continues to refuse to allow Sun Life access to and review of the Aon/Sun Life accounts and records. (A copy of Aon's letter dated September 23, 1999 is attached hereto as Exhibit 9.)

C.     Aon's Refusal To Permit Phoenix Access To The Accounts And Records.

20.     Phoenix has on several occasions made both oral and written requests of Aon to be allowed access to and review of the accounts and records relating to Aon's activities in connection with the Agreements. Although obligated by contract, fiduciary duty and/or statute to provide access, Aon has only produced a meager portion of the accounts and records and refused to produce the bulk of the accounts and records requested by Phoenix.

21.     In response to Phoenix's request for access to review all the applicable accounts and records, Roger Smith of Aon sent a letter dated March 11, 1999 to John Caekert at Centaur. (A copy of Mr. Smith's letter dated March 11, 1999 is attached hereto as Exhibit 10.) In this letter, Aon took the position that it had no direct relationship with Phoenix and

6

4597_1.DOC

that all of its files belonged to Aon. Aon stated that it would only produce, with Centaur's consent, copies of retrocessional placement slips and contract wordings where Centaur was the retrocedent.

22.    On March 18, 1999, representatives of Phoenix traveled to Aon's offices to review the accounts and records. At that time, Aon produced to Phoenix only a small fraction of the documents that Phoenix requested.

23.    On March 29, 1999, Frederick Sawyer, Senior Vice President of Phoenix, sent a letter to Roger Smith of Aon demanding that Aon produce all requested records to Phoenix. (A copy of Mr. Sawyer's letter dated March 29, 1999 is attached hereto as Exhibit 11.) In this letter, Mr. Sawyer stated that Phoenix had a right to review all accounts and records relating to Centaur, not just the ones mentioned by Aon in its March 11, 1999 letter. In the letter, Phoenix reiterated its demand to review all the accounts and records in Aon's possession relating to the Agreements.

24.    Since March 29, 1999, Aon has steadfastly refused to produce any more of the accounts and records requested by Phoenix.

25.    On September 29, 1999, counsel for both Sun Life and Phoenix notified Aon that he represented both Sun Life and Phoenix and demanded, once again, access to the accounts and records. (A copy of that letter dated September 29, 1999, is attached hereto as Exhibit 12.) Aon ignored that letter.

## COUNT I

### (Declaratory Judgment)

26.    Sun Life realleges and incorporates herein by reference paragraphs 1 through 25 above.

1291_1.DOC

7

AUG-1C-2093THB-05-S2995-RNC    Document 38    Filed 10/28/2003    Page 23 of 26    P. 11
08/07/2003 12:30 FAX  860 527    8    EDWARDS & ANGELL    VIDENCE

OCT-01-1999  17:20    BFKPN

27.   Aon owes Sun Life duties — statutory, contractual, fiduciary and common law --
in connection with Aon's brokering the Agreements for Sun Life.  These duties include the
duty to provide a right of access to and copying of accounts and records generated and/or
maintained by Aon when serving as intermediary broker on Sun Life's behalf.  Apparently,
Aon believes it has no such duties or obligations, as it has shown by its repeated refusals to
allow Sun Life access to the accounts and records.  Accordingly, an actual controversy exists,
and the Court should declare and issue an order stating the parties' rights and obligations in
this regard.

WHEREFORE, plaintiff Sun Life respectfully requests that the Court:

A.   Enter a declaratory judgment order obligating Aon to give Sun Life access to
the accounts and records relating to the Agreements that are within Aon's
possession or control for the purpose of reviewing, auditing and/or copying the
same.

B.   Award Sun Life such other relief as this Court may deem just and necessary.

### COUNT II

### (Declaratory Judgment)

28.   Phoenix realleges and incorporates herein by reference paragraphs 1 through 27
above.

29.   Aon owes Phoenix duties -- statutory, contractual, fiduciary and common law --
in connection with Aon's brokering the Agreements for Phoenix.  These duties include the
duty to provide a right of access to and copying of accounts and records generated and/or
maintained by Aon when serving as intermediary broker on Phoenix's behalf.  Apparently,
Aon believes it has no such duties or obligations, as it has shown by its repeated refusals to

OCT-01-1909  17:20      BFKPN

allow Phoenix access to the accounts and records. Accordingly, an actual controversy exists, and the Court should declare and issue an order stating the parties' rights and obligations in this regard.

WHEREFORE, plaintiff Phoenix respectfully requests that the Court:

A.    Enter a declaratory judgment order obligating Aon to give Phoenix access to the accounts and records relating to the Agreements that are within Aon's possession or control for the purpose of reviewing, auditing and/or copying the same.

B.    Award Phoenix such other relief as this Court may deem just and necessary.

## COUNT III

### (Violation of Illinois Statute)

30.    Sun Life realleges and incorporates herein by reference paragraphs 1 through 29 above.

31.    Aon acted as a reinsurance intermediary broker for Sun Life, as that term is defined within the Illinois Reinsurance Intermediary Act, 215 ILCS 100/5. As such, Aon is required to keep complete accounts and records for each transaction on behalf of Sun Life and, further, to allow Sun Life access to those accounts and records to review, audit and/or copy. 215 ILCS 100/20.

32.    Aon's refusal to allow Sun Life access to accounts and records in Aon's possession or control, which were generated or maintained while Aon acted as Sun Life's agent and reinsurance intermediary broker in negotiating and procuring reinsurance contracts on Sun Life's behalf, is a violation of the Illinois Reinsurance Intermediary Act, 215 ILCS 100/20.

9

4001_1.DOC

AUG-14-2003 3:05 C3:05-CV-005-RNC    Document 38    Filed 10/28/2003    Page 25 of 26  P. 13
08/07/2003 12:51 FAX  860 527   8             EDWARDS & ANGELL

OCT-01-1999  17:21      BFKPN

WHEREFORE, plaintiff Sun Life respectfully requests that this Court:

A.    Enter an injunction order directing Aon Re, Inc. to comply with the Illinois Reinsurance Intermediary Act by granting Sun Life access to any and all accounts and records in its possession or control relating to the Agreements.

B.    Awarding such other relief as the Court may deem just and proper.

## COUNT IV

### (Violation of Illinois Statute)

33.    Phoenix realleges and incorporates herein by reference paragraphs 1 through 32 above.

34.    Aon acted as a reinsurance intermediary broker for Phoenix, as that term is defined within the Illinois Reinsurance Intermediary Act, 215 ILCS 100/5.  As such, Aon is required to keep complete accounts and records for each transaction on behalf of Phoenix and, further, to allow Phoenix access to those accounts and records to review, audit and/or copy, 215 ILCS 100/20.

35.    Aon's refusal to allow Phoenix access to accounts and records in Aon's possession or control, which were generated or maintained while Aon acted as Phoenix's agent and reinsurance intermediary broker in negotiating and procuring reinsurance contracts on Phoenix's behalf, is a violation of the Illinois Reinsurance Intermediary Act, 215 ILCS 100/20.

WHEREFORE, plaintiff Phoenix respectfully requests that this Court:

A.    Enter an injunction order directing Aon Re, Inc. to comply with the Illinois Reinsurance Intermediary Act by granting Phoenix access to any and all accounts and records in its possession or control relating to the Agreements.

10

ANY1.DOC

AUG-14-2003 THU 05:50 PM Case 3:03-cv-30205-RNC    Document 38    Filed 10/28/2003    Page 26 of 26    P. 14
03/07/2003 12:51 FAX  800 527    8    EDWARDS & ANGELL

OCT-01-1999  17:21    BFKPN

B.    Awarding such other relief as the Court may deem just and proper.

Dated:  October 1, 1999    Respectfully submitted,

SUN LIFE ASSURANCE COMPANY OF
CANADA, PHOENIX HOME LIFE MUTUAL
INSURANCE COMPANY and AMERICAN
PHOENIX LIFE AND REASSURANCE
COMPANY

By: *W. Scott Porterfield*
W. Scott Porterfield
One of their attorneys

Robert E. Shapiro
W. Scott Porterfield
BARACK FERRAZZANO KIRSCHBAUM PERLMAN & NAGELBERG
333 West Wacker Drive, Suite 2700
Chicago, Illinois 60606
(312) 984-3100
Atty. No. 34610

11

4397_3.DOC