UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| PHOENIX LIFE INSURANCE COMPANY <br> and GENERAL & COLOGNE LIFE RE <br> OF AMERICA, <br><br> Plaintiffs, <br><br> v. <br><br> AON RE, INC., <br><br> Defendant. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) C.A. No. 303-CV-907 (WWE) <br> ) <br> ) <br> ) <br> ) <br> ) AUGUST 4, 2003 |

## MEMORANDUM OF LAW IN SUPPORT OF
## PLAINTIFFS' MOTION TO TRANSFER

Plaintiffs Phoenix Life Insurance Company ("Phoenix") and General and Cologne Life Re of America ("Cologne") (collectively, "Plaintiffs") submit this memorandum of law in support of their motion to transfer the above-entitled action to the United States District Court for the District of New Jersey pursuant to 28 U.S.C. § 1404(a). Plaintiffs seek to transfer in order to consolidate this action with an action pending in the District of New Jersey entitled Phoenix Life Insurance Company, et al. v. Unicover Managers, Inc. et al., Civil Action No. 03-2400 (JCL) (MF) (the "New Jersey Action").

This action and the New Jersey Action are based upon identical issues of fact and share the same witnesses. Accordingly, these two cases should be consolidated in the interest of efficiency and conservation of judicial resources. The New Jersey forum is the only forum in which to consolidate the cases since it is the only forum that can exercise personal jurisdiction over all of the interested parties. The majority of events pertaining to both lawsuits occurred in New Jersey; not Connecticut. Finally, the majority of witnesses vital to the Plaintiffs' case are

defendants in the New Jersey Action but outside of this Court's subpoena power and, therefore, unavailable.

In fact, defendant Aon Re, Inc. ("Aon") has effectively admitted that these two cases should be consolidated and that Connecticut is not the appropriate forum for the consolidated action. Aon's only disagreement appears to be that it also considers New Jersey as an inappropriate venue.[1] To the extent this is true and Aon moves to dismiss both actions on venue grounds, there is no reason why this Court *and* the New Jersey court should consider two separate motions concerning the exact same issues. In the interest of judicial efficiency, this Court should transfer this action to New Jersey and allow that court to determine the appropriate venue for the consolidated actions.

## I. FACTUAL BACKGROUND

### A. UNICOVER'S AND AON'S FRAUDULENT SCHEME

The following summary is based on the claims asserted in both this action and the New Jersey Action. See Complaint of Phoenix and Cologne filed with the United States District Court, District of New Jersey on May 22, 2003 ("New Jersey Complaint"), attached as Exhibit A. In December 1994, John Pallat, Tom Dunn, Robert Wojtowicz and Joseph Wojtowicz (collectively with Kenneth Griebell, the "Shareholder Defendants") created Cragwood Managers, L.L.C., formerly known as Unicover Managers, Inc. ("Unicover"). New Jersey Complaint, ¶ 24. Unicover is a New Jersey company with its principal place of business in South Plainfield, New Jersey. Id. at ¶ 16. Messrs. Pallat, Robert Wojtowicz, Joseph Wojtowicz and subsequent business partner Kenneth Griebell are all New Jersey residents. Id. at ¶¶ 12-21. Mr. Dunn resides in Illinois. Id. at ¶ 18.

---

[1] For the purposes of this Motion, Plaintiffs argue that New Jersey, as opposed to Connecticut, is the appropriate forum for this action and the New Jersey Action. Plaintiffs do not consider any other forum which Aon might assert to be the proper venue for this action.

The Shareholder Defendants created Unicover for the purpose of serving as a managing general underwriter ("MGU")[2] specializing in the reinsurance of the accident and health portions of workers' compensation insurance policies, otherwise known as workers' compensation carve-out. Id. at ¶ 24. In 1995, Unicover, along with Chris Mays of Nicholson Leslie Group, Aon's London Market reinsurance brokerage unit ("Nicholson Leslie"), recruited life insurers to participate in the Unicover Managers Occupational Accident Reinsurance Pool (the "Pool"). New Jersey Complaint, ¶ 30. The Pool was formed to provide workers' compensation carve-out reinsurance. Id.

From March 1, 1995 to March 1, 1998 (Pool Year 1 through Pool Year 3), the members of the Pool were Connecticut General Life Insurance Company ("CIGNA"), Lincoln National Life Insurance Company ("Lincoln") Life Reassurance Corporation of America ("Life Re"), and Phoenix. Id. at ¶ 31. Life Re withdrew from the Pool as of March 1, 1998. Id. Cologne and ReliaStar Life Insurance Company ("ReliaStar") joined the Pool beginning March 1, 1998 (Pool Year 4). Id. The other members of the original Pool continued to participate (collectively, with Life Re, ReliaStar and Cologne, the "Pool members"). Id.

As MGU of the Pool, Unicover had exclusive authority to accept reinsurance business on behalf of the Pool members and was responsible for the administration of the Pool. Complaint, ¶ 20. In exchange, Unicover received a management fee of 7.5% of the gross premium ceded by an insurer to the Pool members for each piece of business accepted on their behalf, regardless of the profitability of that business. Id. at 21.

The Shareholder Defendants, through Unicover, entered into a joint venture with Mr. Mays and Roger Smith of Aon to assist in developing and managing Pool business. Id. at ¶¶ 23-28. In exchange, Unicover agreed to give Aon a one-third share of the management fee. Id.

---

[2] An explanation of reinsurance terms used herein, including MGU, is included in the Plaintiffs' complaint, ¶¶ 1-11.

Later, when Mr. Mays left Nicholson Leslie for defendant Rattner Mackenzie Limited ("Rattner"), Aon and Rattner divided equally the one-third share. Id.

In addition to their roles as joint venture partners, Aon and Rattner served as retrocessional brokers for the Pool. Complaint, ¶ 29. As a result, Aon and Rattner were responsible for securing retrocessional protection - - reinsurance for the business accepted on behalf of the Pool. Id. at 30. In exchange, Aon and Rattner received a brokerage commission that was in addition to their joint venture share of Unicover's management fee. Id. at 30. All of the gross premium upon which Aon's brokerage commission was based flowed through Unicover's New Jersey headquarters and New Jersey bank accounts. Affidavit of David R. Pellerin ("Pellerin Aff."), ¶ 9, attached as Exhibit B.

Following the Pool's first two years, the Shareholder Defendants and Aon saw an opportunity to greatly expand the Pool's growth (and, consequently, their own financial gain) by offering cheap reinsurance and then leveraging the Pool's retrocessional protection to generate a net profit. Complaint, ¶ 42. A key element of their plan was securing whole account retrocessional protection.[3] Id. at ¶¶ 35, 36. In the spring of 1997, the Shareholder Defendants, through Unicover, and Aon secured whole account protection from Centaur Underwriting Management, Inc. ("Centaur"). Id. Centaur was the managing general agent for Sun Life Assurance Company of Canada ("Sun Life") and Phoenix. Id. at ¶¶ 33, 38. John Cackett was a principal of Centaur and managed the company, and the whole account treaties entered into with the Pool, from the company's Bermuda office. Id. Cologne eventually participated as a retrocessionaire to the Pool through CRF Underwriting Agency, Ltd., which was based in London, England. Id. at ¶¶ 52, 53.

---

[3] A whole account retrocessional treaty obligates a reinsured/retrocedent to cede, and a reinsurer/retrocessionaire to accept, all risks that fall within the scope of the treaty. A reinsurer/retrocessionaire does not consider each risk on its own.

With whole account protection in place, the Shareholder Defendants, through Unicover, deliberately engaged in an underwriting practice of providing reinsurance at rates that were certain to generate gross losses for the Pool members. Complaint, ¶ 43. Unicover based this practice on their ability to dump the losses on unsuspecting retrocessionaires. Id. Unicover's predatory pricing strategy, in and of itself, would have caused Centaur concern had it been disclosed. Id. Unicover, however, further jeopardized the Pool's retrocessional protection by underwriting an extraordinary volume of such business. Id. at 45, 47, 49.

Aon and Rattner assisted Unicover, among other ways, by assisting in the management of the Pool and intentionally misrepresenting material information to the Pool members and the Pool's retrocessionaires. Complaint, ¶¶ 51-54. Specifically, when Sun Life learned of the scale of the volume of premium being retroceded from the Pool (which was still significantly understated), it threatened to Aon that it would terminate its participation as retrocessionaire and rescind the retrocessional agreements unless Unicover stopped underwriting and found alternative retrocessional protection. Id. Aon withheld this information from the Pool members and encouraged Unicover to write more business than ever before. Id. As such, the Pool members were unaware that increasing premium volume was increasing the threat of rescission by the retrocessionaires, and simultaneously increasing the amount of exposure to the Pool members should rescission be successful. Id.

Ultimately, the fraudulent scheme produced gross premium to the Pool that greatly exceeded original estimates provided to the Pool members. Id. at ¶¶ 44, 45, 49. The retrocessionaires eventually learned of the true nature and volume of business being ceded and sought to terminate their participation as retrocessionaires. Id. at ¶ 55. After a long arbitration proceeding, the Pool's retrocessionaires were successful, and the majority of the Pool's

retrocessional protection was rescinded, leaving the Pool members exposed to substantial amounts of unreinsured losses. Complaint, ¶ 57.

B.  UNICOVER'S NEW JERSEY HEADQUARTERS SERVED AS THE PRIMARY LOCATION FOR THE POOL AND THE FRAUDULENT SCHEME

Initially, the Shareholder Defendants controlled Unicover's operations from its South Plainfield, New Jersey headquarters. Pellerin Aff., ¶ 4. Thomas Dunn later moved to Illinois for personal reasons and, as he was the chief underwriting officer, the underwriting operations were effectively moved to Illinois. Id. Despite Mr. Dunn's new location, Unicover's and the Pool's principal business operations were still based in New Jersey. Id. at ¶¶ 4, 8-10.

The epicenter of Unicover's operations and the Pool's management was John Pallat, Unicover's chairman. Id. at ¶ 8. Mr. Pallat was intimately involved in all aspects of Pool business and directly responsible for the business practices that are at the center of this action and the New Jersey Action. Id. Unicover did not have an office in Connecticut. Pellerin Aff., ¶5.

As a result, all significant Pool decisions were channeled through New Jersey and Messrs. Smith, Dunn and Mays were in constant contact with Mr. Pallat at Unicover's New Jersey headquarters. Id. at ¶ 8. For example, Messrs. Mays and Smith assisted Mr. Pallat in drafting a May 6, 1998 letter to Mr. Cackett, in which Mr. Pallat materially misrepresented the Pool's existing business as well as Unicover's business goals going forward. See John Pallat letter of May 6, 1998 to John Cackett, attached as Exhibit C.

While Unicover's underwriting function was based in Illinois, the bulk of Unicover's and the Pool's business operations remained in New Jersey, including (i) the primary point of contact for Pool members; (ii) all of the accounting, administrative and banking functions; and (iii) the business development function. Pellerin Aff., ¶¶ 8-10. Throughout the duration of the Pool, Mr.

Pallat held meetings in New Jersey with Aon and Rattner concerning Pool business as well as held Pool meetings in which Unicover personnel and Aon personnel met with Pool members to confer on Pool business. Id. at ¶ 10. The minutes from each Pool meeting were prepared and distributed from Unicover's New Jersey headquarters. Id.

All of the Pool's administrative functions were handled in New Jersey. Pellerin Aff., ¶ 18. For example, all the premiums that were generated on behalf of the Pool - - and which are directly in dispute in this and the New Jersey Action - - were held in the Pool Trust Account in a New Jersey bank. Id. Financial administration for the Pool involved creating and distributing claims bordereaux out of Unicover's New Jersey headquarters. Id. Further, the majority of all of the Pool's administrative documentation was kept in New Jersey. Id.

On May 22, 2003, Plaintiffs filed an action in New Jersey federal district court against Aon, Rattner, Unicover and the Shareholders Defendants. The Plaintiffs assert only tort-based claims against Aon in the New Jersey Action. New Jersey Complaint, pp. 33-38, 40-42. Plaintiffs filed this action in Connecticut against Aon, asserting contract-based claims only. Complaint, pp. 15-18. In both cases, Plaintiffs seek damages resulting from their participation as Pool members. Complaint, pages 15-18; New Jersey Complaint, pp. 23-48. Plaintiffs allege that the Shareholder Defendants, through Unicover, and Aon and Rattner violated certain duties arising from their roles as agents to the Pool and caused the Pool members to be exposed to millions of dollars in unreinsured workers' compensation carve-out business as a result of their deleterious reinsurance practices. Id.

## II. ARGUMENT

A.   PLAINTIFFS' MOTION TO TRANSFER IS PROPERLY BEFORE THE COURT

Plaintiffs move the Court to transfer this cause of action under 28 U.S.C. § 1404(a), prior to Aon's initial response to the complaint. See WRIGHT & MILLER, FEDERAL PRACTICE & PROCEDURE, § 3844 (2003) (recognizing that plaintiffs can move under 28 U.S.C. § 1404(a) prior to response date). The Court has personal jurisdiction over Aon because it is a state-licensed insurance and reinsurance intermediary doing business within Connecticut, and service of process was properly effectuated on Aon's agent for service pursuant to Fed. R. Civ. P. 4(h)(1). Pellerin Aff., ¶ 2. Plaintiffs move under 28 U.S.C. § 1404(a), as opposed to § 1406, because venue is proper in this action as Aon is a corporation that "resides" in Connecticut as defined under 28 U.S.C. § 1391(a)(1),(c). See Choquette v. Sanfilippo, 2001 WL 1266305 (D. Conn.)[4] (discussing the distinctions between 28 U.S.C § 1404(a); 1406(a); and 1631).

In the analogous case of Ferens v. John Deere Company, 494 U.S. 516 (1990), the United States Supreme Court affirmed the plaintiffs' tactical maneuvering intended to achieve the benefit of a jurisdiction's advantageous statute of limitations. 494 U.S. at 517. The plaintiffs in Ferens initiated litigation in Pennsylvania federal court alleging contract and warranty claims arising from an accident involving a combine harvester manufactured by the defendant. Id. at 519. The plaintiffs delayed filing a tort claim and the Pennsylvania 2-year tort statute of limitations expired. Id. Thereafter, the plaintiffs filed a tort action in Mississippi, alleging negligence and product liability claims. Id. Diversity jurisdiction and venue were proper in both actions. Id.

Shortly thereafter, the plaintiffs moved to transfer the Mississippi action to Pennsylvania for the convenience of the parties, pursuant to 28 U.S.C. § 1404(a). Id. at 520. The plaintiffs

---

[4] A copy of this decision is attached as Exhibit D.

acted on the assumption that by filing a separate tort action in Mississippi and then transferring that action to Pennsylvania, the Pennsylvania court would be required to adhere to the Mississippi choice-of-law rules, including the rule requiring application of the Mississippi statute of limitations for tort. Id. The Mississippi district court accepted the plaintiffs arguments that the case should be transferred for the convenience of the parties because the plaintiffs were from Pennsylvania; the accident occurred there; the claim had no connection to Mississippi; a substantial number of witnesses resided in New Jersey; most of the documentary evidence was located in Pennsylvania; and that the contract action pending in Pennsylvania presented common questions of law and fact. Id.

After the case was transferred, however, the Pennsylvania federal district court ruled that Pennsylvania's shorter statute of limitations applied and the tort claims were time-barred. Id. at 521. On two occasions, the Third Circuit Court of Appeals affirmed the district court's ruling, and both times the United States Supreme Court reversed. Id. The Court affirmed the plaintiffs' tactical move and ruled that Mississippi's tort statute of limitations applied. Id.

The Court reasoned that the plaintiffs' tactics were not prejudicial to the defendant. Id. at 525. Rather, the Court ruled that precluding that type of legal maneuvering would only lead to plaintiffs litigating claims in inconvenient forums. Id. Indeed, the Court reasoned, "[a] plaintiff always can sue in the favorable state court or sue in diversity and not seek a transfer...the [plaintiffs] are seeking to deprive [the defendant] only of the advantage of using against them the inconvenience of litigating in Mississippi." Id. at 526. "Some plaintiffs would prefer to litigate in an inconvenient forum with favorable law than to litigate in a convenient forum with unfavorable law." Id. Ultimately, the Court acknowledged that "[o]ur rule may seem too generous because it allows the [plaintiffs] to have both their choice of law and their choice of

forum, or even to reward [them] for conduct that seems manipulative," Id. at 531, but concluded that, "the transferor law should apply regardless of who makes the § 1404(a) motion." Id.

Similar to Ferens, the Plaintiffs filed this action after initiating litigation against Aon and six other defendants in New Jersey arising out of the identical circumstances and harmful conduct. The Plaintiffs filed this action for tactical reasons and now seek to transfer this action to New Jersey for the convenience of all parties.

B.   THIS ACTION AND THE NEW JERSEY ACTION SHOULD BE CONSOLIDATED

Consolidation of cases is appropriate, if they are related, "to avoid duplicitous litigation, unnecessary expenses, judicial waste, and inconsistent results." Princess House, Inc. v. Lindsey, 136 F.R.D. 16, 22 (D. Mass. 1991) quoting, Cambridge Filter Corp. v. International Filter Corp., 548 F. Supp. 1308, 1310 (D. Nev. 1982). Plaintiffs will request that the New Jersey court consolidate the two actions if the instant motion to transfer is granted. These two cases, pending in two different courts, are ripe for consolidation because they are largely identical. The legal claims and proofs in both actions revolve around Unicover and the Pool. The documents to be exchanged are the same as are the witnesses. The only differences between the two actions are (i) the nature of the claims asserted and (ii) there are six additional defendants in the New Jersey Action.

Moreover, the Plaintiffs' two suits are similar to separate causes of action brought against Aon, Unicover and the Shareholder Defendants by Lincoln National Life Insurance Company ("Lincoln") and ReliaStar Life Insurance Company ("ReliaStar"). Similar to the Plaintiffs, Lincoln commenced an action in both the District of New Jersey and the District of Connecticut.[5] Magistrate Judge Mark Falk of the District of New Jersey has established a briefing schedule in

---

[5] See Lincoln National Life Ins. Co. v. Aon Re, Inc. et. Al., Dist. N.J. C.A. No. 2394 (DMC); Lincoln National Life Ins. v. Aon Re, Inc., U.S.D. Conn., C.A. No. 303 CV905 (RNC).

both the Plaintiffs' New Jersey Action and Lincoln's action and has expressed an interest in consolidating the two cases. See Letter from Thomas F. Quinn, Esq., counsel to Rattner, dated, July 31, 2003, attached as Exhibit E. ReliaStar brought its action in New Jersey state court.

Consolidation will not cause any delay or otherwise prejudice Aon. See In re Consolidated Parlodel Litigation, 182 F.R.D. 441, 444 (D. N.J. 1998) (ruling the court must balance the interests of judicial economy against the potential for any new delays, confusion or prejudice"). Indeed, in a letter dated July 25, 2003, Aon effectively admitted that the cases should be consolidated and that Connecticut is not the appropriate venue by suggesting that the Plaintiffs dismiss the Connecticut action and bring their claims in the New Jersey Action or, alternatively, that Plaintiffs consent to transfer this action to the Northern District of Illinois. Letter from Timothy A. Diemand, Esq., dated, June 25, 2003, attached as Exhibit F. Neither option is acceptable to the Plaintiffs. Letter from Robert D. Laurie, dated, July 30, 2003, attached as Exhibit G. Nevertheless, Aon cannot argue that it considers Connecticut the appropriate forum for this action. Moreover, if Aon ultimately moves to dismiss Plaintiffs' Connecticut and New Jersey actions, it would be illogical for this Court and the New Jersey court to decide identical motions.[6] See Alexander & Alexander, Inc. v. Donald F. Muldoon & Co., 685 F. Supp. 346, 348 (S.D. N.Y. 1998) (ruling motion to transfer should be considered before motion to dismiss).

The case of Henderson v. FloorGraphics, Inc., 153 F. Supp.2d 133, (D. Conn. 2001), is similar to the instant action in that the plaintiffs brought an action in the District of Connecticut as well as a separate action in New Jersey state court. 152 F. Supp.2d at 134. The defendant moved to dismiss the Connecticut action under the doctrine of forum non conveniens. Id. The

---

[6] While in its letter Aon indicates that it may seek to dismiss based on venue, Plaintiffs will await such a motion before addressing the appropriateness of any other venue.

court denied the defendants' motion, ruling that, "to the extent that defendant finds Connecticut an inconvenient forum for adjudication of this dispute, its remedy is a transfer pursuant to § 1404(a)." Id. at 138.

These two cases should be consolidated in New Jersey. Transferring this case to New Jersey is an essential first step in consolidating. New Jersey is the only forum where the two cases can be consolidated, since it is the only forum where both cases could have been brought. For example, as discussed in greater detail below, this Court could not exercise jurisdiction over certain defendants named in the New Jersey Action. Thus, it is in the interest of judicial efficiency for the two cases to be consolidated in the New Jersey District Court and, to the extent it is still disputed, let the New Jersey court decide the issue of venue.

C. THIS CASE SHOULD BE TRANSFERRED TO THE UNITED STATES DISTRICT COURT FOR NEW JERSEY

    1. Standards Governing a Motion for Transfer of Venue

Title 28 of the United States Code, section 1404(a) provides, "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). The purpose of § 1404(a) is to "prevent waste of time, energy and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense." Wilshire Credit Corp. v. Barrett Capital Mgmt. Corp., 976 F. Supp. 174, 180 (W.D. N.Y. 1997).

The threshold question in any effort to transfer a cause of action pursuant to § 1404(a) is whether the action in the first instance could have been brought in the transferee forum. Joslyn v. Armstrong, 2001 WL 1464780 *2-3 (D. Conn.).[7] Once a defendant seeking transfer of venue

---

[7] A copy of this decision is attached as Exhibit H.

HFD_HFD_122257_3.DOC/

has made this initial showing, the district court has broad discretion to order a transfer of venue in appropriate circumstances. See Piper Aircraft Co. v. Reyno, 454 U.S. 235, 253 (1981).

In determining whether transfer is appropriate for the convenience of the parties and witnesses, courts consider several factors, including: (i) the convenience of the parties; (ii) the convenience of witnesses; (iii) the relative means of the parties; (iv) the locus of operative facts and relative ease of access to sources of proof; (v) the availability of process to compel presence of unwilling witnesses; (vi) cost of obtaining witnesses; (vii) the weight accorded plaintiff's choice of forum; (viii) the desirability of having case tried by forum familiar with substantive law to be applied; and (ix) calendar congestion, practical difficulties, and how best to serve the interests of justice, based on an assessment of the totality of circumstances. Joslyn v. Armstrong, 2001 WL 1464780 *3, quoting, Wilshire Credit Corp., 976 F. Supp. at 181.

2.  Plaintiffs Could Have Initiated This Action In New Jersey

Plaintiffs could have initiated this litigation in New Jersey as part of the New Jersey Action. See Sutton v. Rehtmeyer Design Co., 114 F. Supp.2d 46, 50 (D. Conn. 2000) ("[v]enue must be proper and the defendants must be amenable to process in the transferee forum"), quoting, Alexander & Alexander, Inc., 685 F. Supp. at 348. The New Jersey court can exercise personal jurisdiction over Aon as it is a licensed insurance and reinsurance intermediary with an agent for service located within the State. Pellerin Aff., ¶ 2; New Jersey Complaint, ¶ 14. Further, venue is proper in New Jersey as a "substantial part of the events or omissions giving rise to the claim[s] occurred" within the state. 28 U.S.C. § 1391(a)(2).

The claims asserted against Aon arise out of its dual role as joint venture-partner with Unicover and retrocessional broker for the Pool. Aon enjoyed a profit sharing joint venture relationship with Unicover in which it reaped tremendous financial rewards as a result of its

efforts in concealing Unicover's deleterious reinsurance practices - - practices that were conceived in and directed out of the State of New Jersey. Aon served a vital role in the management of the Pool, the operations of which were based in New Jersey. Thus, venue could lie in New Jersey and transfer to that district would be permissible pursuant to 28 U.S.C. § 1404(a).

The New Jersey Action, however, could not be transferred to Connecticut since it could not have been brought in Connecticut originally. This Court would not have jurisdiction over the majority of defendants included in the New Jersey Action. Indeed, certain of the Shareholder Defendants had no contacts whatsoever with the Plaintiffs or other Pool members domiciled in Connecticut. For example, Plaintiffs assert claims against Joseph Wojtowicz for his misappropriation of Unicover's assets and assets from the Pool Trust Account - - which is located in New Jersey. This Court would not be able to exercise personal jurisdiction over Joseph Wojtowicz.

    3.    Transfer Is Appropriate For The Convenience Of Both Parties And Witnesses

Consideration of the factors implicated under 28 U.S.C. § 1404(a) supports transferring this case to New Jersey. First, it is clearly in the interest of justice and for the convenience of the parties for this case to be transferred to New Jersey and consolidated with the New Jersey Action. Trying four separate actions is burdensome on all parties and a waste of judicial resources. See Ferens, 494 U.S. at 517 (ruling that "[t]he desire to punish the plaintiff who has chosen an inconvenient forum overlooks the fact that § 1404(a) exists for the benefit of witnesses and courts as well as the moving party, and that litigation in an inconvenient forum harms the entire judicial system"); Roberts Brothers, Inc. v. Kurtz Bros., 236 F. Supp. 471, 473 (D. N.J. 1964) ("'[t]o permit a situation in which two cases involving precisely the same issues are

simultaneously pending in different District Courts leads to wastefulness of time, energy and money that 1404(a) was designed to prevent").

Second, the primary loci of operative facts occurred in a number of jurisdictions including New Jersey, Bermuda, and to an extent Illinois; but not Connecticut. The focus of the two cases is the fraudulent scheme in which Unicover, Aon and Rattner used the Pool and the whole account treaties as vehicles to achieve personal wealth at the expense of the Pool members and the Pool's retrocessionaires. The Pool was located and administered in New Jersey. All of the banking, administrative, accounting and business development functions were located in New Jersey. Moreover, the driving force of this fraudulent scheme was John Pallat. Mr. Pallat formulated this plan and put it into effect from Unicover's New Jersey headquarters. All relevant events revolved around John Pallat and Unicover's New Jersey headquarters. As such, Plaintiffs initiated litigation against all pertinent companies and individuals associated with the fraudulent scheme in New Jersey; the only jurisdiction that could exercise jurisdiction over all of the relevant defendants.

Further, Aon played a critical role in developing Mr. Pallat's fraudulent scheme and Unicover's business practices. As such, Mr. Smith and other Aon personnel were in constant contact with Mr. Pallat in New Jersey. For example, Mr. Smith assisted Mr. Pallat in drafting a memorandum outlining Unicover's critical strategic initiatives, which was clearly an attempt at responding to the consequences of their fraudulent scheme. Facsimile dated December 12, 1998 to Roger Smith from John Pallat, attached as Exhibit I.

Third, most of the potential witnesses that are vital to the claims against Aon are nonparty witnesses beyond the subpoena power of this Court. Indeed, to prove its claims against Aon, Plaintiffs must call to testify, among others, Messrs. Pallat, Dunn, Griebell and Mays. Based on

their testimony in the previous arbitration concerning the Pool these witness will testify as to (i) the existence of the joint venture; and (ii) Aon's role in the management of the Pool and in furtherance of the joint venture.[8]

Finally, if the two cases are consolidated in Connecticut the majority of the claims in such an action would be governed by New Jersey law. Ferens, 494 U.S. at 517. Indeed, of the twenty total claims asserted in both actions, only three would be governed by Connecticut substantive law.

### III.  CONCLUSION

The Plaintiffs respectfully request that this Court, pursuant to 28 U.S.C. § 1404(a), transfer this action to the United States District Court for the District of New Jersey. Undoubtedly, it is in the interest of efficiency and the conservation of judicial resources for this action to be consolidated with the New Jersey Action. Aon admits that the cases should be consolidated and that Connecticut is not the proper forum for the consolidated action. Moreover, even if Aon argued that Connecticut was the appropriate forum, the actions could not be consolidated in Connecticut, as this Court could not extend jurisdiction over all of the defendants. Finally, the majority of relevant factors in considering a transfer under § 1404(a) weigh in favor of transferring this action to New Jersey.

---

[8] Plaintiffs are unable to submit deposition and hearing testimony from the Pool arbitration as such materials are subject to a confidentiality agreement concerning materials arising out of the Pool arbitration. We are currently working to extend the confidentiality agreement to include Aon, but await the consent of all other signatories to the agreement.

PHOENIX LIFE INSURANCE COMPANY
and GENERAL & COLOGNE LIFE RE
OF AMERICA

By their attorneys

---

Janet M. Helmke (Fed. Bar No. ct-09851)
Robert D. Laurie (Fed. Bar No. ct-24978)
Edwards & Angell, LLP
90 State House Square
Hartford, CT 06103-3702
Telephone: (860) 525-5065
Facsimile: (860) 527-4198

## **CERTIFICATION**

This is to certify that on the 4th day of August, 2003, a copy of the foregoing Motion to Transfer and accompanying documents has been mailed, first class, postage prepaid, to:

Timothy A. Diemand, Esq.
Wiggin & Dana LLP
One Century Tower
P.O. Box 1832
New Haven, CT 06508-1832

                                                Robert D. Laurie (Fed. Bar No. ct-24978)
                                                Edwards & Angell, LLP
                                                90 State House Square
                                                Hartford, CT 06103-3702
                                                Telephone: (860) 525-5065
                                                Facsimile:  (860) 527-4198