UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

---

| | | |
|---|---|---|
| THE LINCOLN NATIONAL LIFE INSURANCE COMPANY, | : | CIVIL ACTION NO. 3:03CV0905 (RNC) |
| Plaintiff, | : | |
| v. | : | |
| AON RE, INC. | : | November 17, 2003 |
| Defendant. | : | |

---

**DEFENDANT AON RE, INC.'S REPLY MEMORANDUM
IN SUPPORT OF ITS MOTIONS TO STAY PROCEEDINGS OR DISMISS**

# TABLE OF CONTENTS

INTRODUCTION ..................................................................................................................1

ARGUMENT.........................................................................................................................2

    I.    AON RE'S MOTIONS TO STAY AND DISMISS SHOULD BE DECIDED FIRST. ...................................................................................................2

    II.    LINCOLN'S REASONS AS TO WHY THIS CASE SHOULD NOT BE STAYED ARE FACTUALLY AND LEGALLY INCORRECT. .........................3

        A.    There Is No Distinction Between The *Issues* Asserted Against Aon Re In Its Alleged Roles As Intermediary Or Pool Manager. ......................3

        B.    The *Issues* In Dispute Here Are Precisely The Same *Issues* In Dispute In The Unicover Arbitration. ........................................................5

        C.    Resolution Of Lincoln's *Claims* In Favor Of Unicover In The Arbitration Will Fully And Finally Resolve All *Claims* Against Aon Re Here. ..........................................................................................7

        D.    The Remaining Elements Necessary For Imposing A Stay Are Also Satisfied. ........................................................................................8

        E.    Section 3 Of The Federal Arbitration Act Also Provides Authority To Stay The Action Against Aon Re. ..................................................12

    III.    THE UNITED STATES SUPREME COURT HAS NOT SANCTIONED CLAIM SPLITTING OR FORUM SHOPPING. ................................................13

    IV.    THE THREE–YEAR STATUTE OF LIMITATIONS IN CONN. GEN. STAT. § 52–581 BARS LINCOLN'S BREACH OF CONTRACT CLAIMS. ................................................................................................................15

    V.    LINCOLN'S BREACH OF CONTRACT CLAIMS SHOULD BE DISMISSED BECAUSE THEY DO NOT COMPLY WITH THE STATUTE OF FRAUDS. ...............................................................................18

CONCLUSION....................................................................................................................21

# **TABLE OF AUTHORITIES**

## **CASES**

*Abou–Saif v. Cedarcrest Condominium Association*, 2000 WL 1763704
(Conn. Super. Ct. Nov. 1, 2000) .................................................................................. 17

*AgGrow Oils, L.L.C. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*,
242 F.3d 777 (8th Cir. 2001) ........................................................................................ 5

*Allianz Life Ins. Co. of N. Am. v. Am. Phoenix Life & Reassurance Co.*,
2000 U.S. Dist. LEXIS 7216 (D. Minn. Mar. 28, 2000) ............................................. 18

*Am. Shipping Line, Inc. v. Massan Shipping Indus., Inc.*, 885 F. Supp. 499
(S.D.N.Y. 1995) ............................................................................................................ 9

*Bischoff v. DirecTV, Inc.*, 180 F. Supp. 2d 1097 (C.D. Cal. 2002) ............................ 12, 13

*Burkle v. Superflow Mfg. Co.*, 137 Conn. 488, 78 A.2d 698 (1951) ............................... 19

*C.R. Klewin, Inc. v. Flagship Props., Inc.*, 220 Conn. 569,
600 A.2d 772 (1991) ................................................................................................... 18

*Chattin v. Cape May Greene, Inc.*, 216 N.J. Super. 618 (App. Div. 1987) ...................... 5

*Collins Development Corporation v. Marsh & McLennan, Inc.*,
1991 WL 35856 (S.D.N.Y. Mar. 12, 1991) ................................................................ 16

*Comsat Corp. v. Nat'l Sci. Found.*, 190 F.3d 269 (4th Cir. 1999) ............................. 9, 10

*Cosmotek Mumessillik Ve Ticaret Ltd. Sirkketi v. Cosmotek USA, Inc.*,
942 F. Supp. 757 (D. Conn. 1996) .................................................................... 3, 7, 8, 9

*Cupina v. Bernklau*, 17 Conn. App. 159, 551 A.2d 37 (1988) ........................................ 15

*Curtis v. Citibank, N.A.*, 226 F.3d 133 (2d Cir. 2000) .................................................... 15

*Cybertek, Inc. v. Bentley Sys., Inc.*, 182 F. Supp. 2d 864 (D. Neb. 2002) ....................... 12

*Dickens v. Quincy Coll. Corp.*, 615 N.E.2d 381 (Ill. App. Ct. 1993) ............................. 20

*Engelman v. Conn. Gen. Life Ins. Co.*, 240 Conn. 287, 690 A.2d 882 (1997) ................ 18

*Ferber v. Travelers Corp.*, 802 F. Supp. 698 (D. Conn. 1992) ....................................... 18

*Ferens v. John Deere Company*, 494 U.S. 516 (1990) .............................................. 13, 14

*Ferrera v. Carpionato Corp.*, 895 F.2d 818 (1st Cir. 1990) ........................................... 19

*Ferreri v. First Options of Chicago, Inc.*, 623 F. Supp. 427 (E.D. Pa. 1985) ...... 5

*First Nat'l Ins. Agency, Inc. v. Leesburg Transfer & Storage, Inc.*,
  139 So. 2d 476 (1962) ...... 16

*Frazier v. Commercial Credit Equip. Corp.*, 755 F. Supp. 163 (S.D. Miss. 1991) ...... 14

*French v. Sabey Corp.*, 951 P.2d 260 (Wash. 1998) ...... 19

*Gordon v. Diagnostek, Inc.*, 812 F. Supp. 57 (E.D. Pa. 1993) ...... 2

*Gorlin v. Bond Richman & Co.*, 706 F. Supp. 236 (S.D.N.Y. 1989) ...... 16

*Greater Yellowstone Coalition v. Bosworth*, 180 F. Supp. 2d 124 (D.D.C. 2001) ...... 14

*Hill v. G.E. Power Systems, Inc.*, 282 F.3d 343 (5th Cir. 2002) ...... 12

*Hitchcock v. Union & New Haven Trust Co.*, 134 Conn. 246,
  56 A.2d 655 (1947) ...... 15

*In re Colonial Ltd. P'ship Litig.*, 854 F. Supp. 64 (D. Conn. 1994) ...... 2, 17, 18

*In re Commercial Solvents Corp.*, 20 F.R.D. 359 (S.D.N.Y. 1957) ...... 9

*John H. Kolb & Sons, Inc. v. G & L Excavating, Inc.*, 76 Conn. App. 599,
  821 A.2d 774 (2003) ...... 16

*Johnson v. Illini Mut. Ins. Co.*, 151 N.E.2d 634 (Ill. App. Ct. 1958) ...... 18

*Kennedy v. Johns–Manville Sales Corporation*, 135 Conn. 176,
  62 A.2d 771 (1948) ...... 17

*Kirby v. P.R. Mallory & Co.*, 489 F.2d 904 (7th Cir. 1973) ...... 2

*Lee v. Jenkins Bros.*, 156 F. Supp. 858 (D. Conn. 1957) ...... 20

*Luce v. Edelstein*, 802 F.2d 49 (2d Cir. 1986) ...... 2

*McGoffin v. Sun Oil Co.*, 539 F.2d 1245 (10th Cir. 1976) ...... 2

*McNeil v. Riccio*, 45 Conn. App. 466, 696 A.2d 1050 (1997) ...... 20

*Miller v. Liberty Ins. Co.*, 161 Me. 438, 213 A.2d 831 (1965) ...... 16

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*,
  473 U.S. 614 (1985) ...... 5

*Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1
  (1983) ...... 5

*O'Ryan v. Dehler Mfg. Co.*, 99 F. Supp. 2d 714 (E.D. Va. 2000) ................................... 20

*Reisner v. Gen. Motors Corp.*, 511 F. Supp. 1167 (S.D.N.Y. 1981) ................................. 2

*Republic of the Phil. v. Westinghouse Elec. Corp.*, 714 F. Supp. 1362
 (D.N.J. 1989) ........................................................................................................... 5

*Sea Spray Holdings, Ltd. v. Pali Fin. Group, Inc.*, 269 F. Supp. 2d 356
 (S.D.N.Y. 2003) ..................................................................................................... 12

*Shaver v. F.W. Woolworth Co.*, 840 F.2d 1361 (7th Cir. 1988) ...................................... 13

*Spar, Inc. v. Information Resources, Inc.*, 956 F.2d 392 (2d Cir. 1992) .................... 14, 15

*Sutera v. Estate of A.A. Washton*, 2003 WL 1478788 ..................................................... 15

*Unistress Corporation v. Danbury Hospital*, 1991 WL 218545
 (D. Conn. July 11, 1991) ....................................................................................... 16

*Walsh v. Pullman Co.*, 10 F.R.D. 77 (S.D.N.Y. 1948) ....................................................... 2

*Warner-Lambert Co. v. Apotex Corp.*, 2001 WL 854854
 (N.D. Ill. July 27, 2001) ........................................................................................ 14

*Wash. Nat'l Life Ins. Co. of N.Y. v. Morgan Stanley & Co.*, 974 F. Supp. 214
 (S.D.N.Y. 1997) ..................................................................................................... 14

*Wash. Pub. Util. Group v. U.S. Dist. Court*, 843 F.2d 319 (9th Cir. 1987) ..................... 14

*Wolfe v. Wallingford Bank & Trust Co.*, 122 Conn. 507, 191 A. 88 (1937) ................... 20

**STATUTES**

28 U.S.C. § 1404(a) .......................................................................................................... 14

28 U.S.C. § 1406 ............................................................................................................... 14

CONN. GEN. STAT. § 52–576 ............................................................................................. 15

CONN. GEN. STAT. § 52–581 ............................................................................................. 15

**MISCELLANEOUS**

AM. JUR.2D, *Statute of Frauds* § 40 (1974) ..................................................................... 19

BLACK'S LAW DICTIONARY (abridged 6th ed. 1991) ....................................................... 17

Restatement of Judgments 2d, § 24 (1982) ....................................................................... 5

## **INTRODUCTION**

Lincoln offers no valid reason why this Court should not issue a stay pending the outcome of the Unicover arbitration. Lincoln cannot escape the fact that *no* claims asserted against Aon Re can be pursued without resolution of the factual issues that will be addressed in the arbitration. For this reason, on November 7, 2003, the New Jersey superior court granted a stay in one piece of the puzzle of litigations brought by another Unicover Pool member:[1]

> The operative facts out of which such claims arise involve and are tied to the wrongdoing alleged against Unicover. . . . If in the arbitration Unicover is exonerated there probably would be no viable claims against the defendants named herein. . . . So the underlying factual basis of those claims will be dealt with in the arbitration.[2]

Like the litigation in New Jersey, this case shares the same set of core factual issues that are the subject of the arbitration between Unicover and the Pool members. It too should be stayed.

Alternatively, Aon Re moves to dismiss this case because Lincoln improperly split its causes of action between two forums, violating the fundamental principle that all claims arising from the same transaction must be brought in one suit. Aon Re also moves to dismiss under Connecticut's three-year statute of limitations for executory contracts, as well as under Connecticut's statute of frauds. In admitting that the alleged agreements were not written and only partially performed, Lincoln confirms that the contracts are executory and thus time-barred. In addition, Lincoln acknowledges that the alleged agreements were for a term of three years, thereby requiring such agreements to be in writing. Because no documents memorializing the terms of these alleged agreements have been provided to the Court, Lincoln has failed to comply with the statute of frauds, and therefore, its contract claims should be dismissed.

---

[1] Ex. 1 attached hereto.

[2] Ex. 2 at 29 attached hereto.

## ARGUMENT

### I.  AON RE'S MOTIONS TO STAY AND DISMISS SHOULD BE DECIDED FIRST.

Lincoln contends that this Court must decide the transfer motions before Aon Re's substantive motions, which is correct if the issues are lack of jurisdiction or improper venue.[3] But here, when there is no issue of the Court's jurisdictional authority, it is in the interests of fairness and justice to first decide Aon Re's motions.[4] Lincoln improperly split its action between two jurisdictions, and it should not be rewarded and escape the consequences that the claim–splitting doctrine imposes. And regardless of where this case may be transferred, the transferee court will still be required to apply Connecticut law to the motions.

There is also no reason to permit Lincoln to amend its complaint, especially when it knew the facts when it first filed its complaint.[5] More importantly, the defect is not that Lincoln failed to plead with particularity,[6] but rather, that the claims themselves are defective.[7]

Finally, Aon Re requests that the Court disregard the factual assertions that Lincoln makes, as well as those documents it attaches,[8] which are not referenced in Lincoln's complaint and are used to oppose Aon Re's motion to dismiss.[9]

---

[3] Lincoln Mem. in Opp'n at 5.

[4] *Gordon v. Diagnostek, Inc.*, 812 F. Supp. 57, 59 (E.D. Pa. 1993) (resolving dismissal motion before transfer motion); *Walsh v. Pullman Co.*, 10 F.R.D. 77, 78 (S.D.N.Y. 1948).

[5] *Kirby v. P.R. Mallory & Co.*, 489 F.2d 904, 912 (7th Cir. 1973).

[6] *Luce v. Edelstein*, 802 F.2d 49, 56 (2d Cir. 1986).

[7] *See Reisner v. Gen. Motors Corp.*, 511 F. Supp. 1167, 1172 (S.D.N.Y. 1981) (denying motion to amend when claims would be inconsistent), *aff'd*, 671 F.2d 91 (2d Cir. 1982); *McGoffin v. Sun Oil Co.*, 539 F.2d 1245, 1248 (10th Cir. 1976).

[8] The factual assertions and documents that should be excluded are found in Lincoln Mem. in Opp'n at 10 n.8, 11 n.9, 15 n.11, 13 n.19, 14; Mooney Decl. ¶¶ 5–6, Ex. C.

[9] *See In re Colonial Ltd. P'ship Litig.*, 854 F. Supp. 64, 79 (D. Conn. 1994) ("Allegations made outside of the complaint are not properly before the court on a motion to dismiss.").

## II. LINCOLN'S REASONS AS TO WHY THIS CASE SHOULD NOT BE STAYED ARE FACTUALLY AND LEGALLY INCORRECT.

When considering a discretionary stay in favor of arbitration, the court must determine "'(1) whether there are common *issues* in the arbitration and the court proceeding, and (2) if so, whether those *issues* will be finally determined by the arbitration.'"[10] Lincoln asserts that these conditions cannot be met here for three reasons. First, the *claims* asserted against Aon Re are in its capacity as reinsurance intermediary, not Pool manager.[11] Second, the *claims* Lincoln is asserting in the arbitration against Unicover may be different than the *claims* Lincoln is asserting against the defendants here.[12] Third, the *claims* asserted in the arbitration will not dispose of the *claims* asserted here.[13] Lincoln's contentions, however, are both factually and legally incorrect.

### A. There Is No Distinction Between The Issues Asserted Against Aon Re In Its Alleged Roles As Intermediary Or Pool Manager.

In a conclusory fashion, Lincoln contends that the *claims* against Aon Re as reinsurance intermediary are separate and distinct from Aon Re's alleged role as Pool manager.[14] While the *claims* may be different, the factual allegations here and those in the New Jersey federal district court action belie this point. In this action, Aon Re allegedly "undertook the duties set forth in the Pool Management Agreement"[15] — which includes, in part, securing retrocessional protection — and "agreed to keep the Pool members fully informed of all material facts that

---

[10] *Cosmotek Mumessillik Ve Ticaret Ltd. Sirkketi v. Cosmotek USA, Inc.*, 942 F. Supp. 757, 760 (D. Conn. 1996) (emphasis added; citation omitted).

[11] Lincoln Mem. in Opp'n at 7.

[12] *Id.*

[13] *Id.* at 9.

[14] *Id.* at 7.

[15] Lincoln Compl. ¶ 35. *See also id.* ¶ 12 (alleging that a Pool manager typically obtains reinsurance or retrocessional coverage for a pool).

3

might jeopardize the continued stability and secure operation of the Pool."[16] This is no different than the *issues* underlying Lincoln's claims against Aon Re as intermediary, when Aon Re allegedly undertook "to secure and maintain retrocessional protection for the Pool, and to disclose to the Pool members and the Retrocessionaires all information that it had which might be material to the Retrocessionaires' willingness to perform under the Three–Year Whole Account."[17] In other words, the *issues* come down to these:

- Did Aon Re cause Unicover to improperly write and cede large volumes of business?[18]

- Did Aon Re fail to secure and maintain Lincoln's retrocessional protection?[19]

- Did Aon Re fail to inform Lincoln about the true volume of the risk?[20]

- Did Aon Re fail to inform Lincoln about the retrocessionaires' threatened rescission of the Three–Year Whole Account?[21]

These factual issues are the same regardless of how Aon Re's role is characterized.[22] Lincoln's attempt to separate Aon Re's alleged roles from the *claims* asserted is a distinction without a difference. Upon boiling down the claims to their essential *issues*, it becomes apparent that these *issues* are the same as those to be decided in the Unicover arbitration.

---

[16] *Id.* ¶ 35.

[17] *Id.* ¶ 29.

[18] *See id.* ¶ 12 (alleging that a Pool manager has the authority "to manage business of the reinsurance pool," which includes underwriting insurance or reinsurance risks).

[19] *See id.* (alleging that a Pool manager typically obtains reinsurance or retrocessional coverage).

[20] *See* Ex. 3 at § 9.

[21] *See id.* at § 8.

[22] *See, e.g.,* Ex. 4 ¶ 59 (stating that Aon Re had the same duties as broker and manager: "to procure and maintain retrocessional protection for the Pool members, and to disclose to the Pool members and the Retrocessionaires all information that might be material to the Retrocessionaires' willingness to perform").

B.  **The Issues In Dispute Here Are Precisely The Same Issues In Dispute In The Unicover Arbitration.**

One factor for the issuance of a discretionary stay is dependent upon whether the court action and the arbitration have "common *questions of fact*"[23] — not whether the *claims* asserted in the arbitration are different from the *claims* asserted in the court action:

> The present trend is to see [a] claim in factual terms and to make it coterminous with the transaction regardless of the number of substantive theories, or variant forms of relief flowing from those theories, that may be available to the plaintiff; regardless of the number of primary rights that may have been invaded; and regardless of the variations in the evidence needed to support the theories or rights. The transaction is the basis of the litigative unit or entity which may not be split.[24]

To understand what factual issues will be decided in the Unicover arbitration, the scope of the Management Agreement's arbitration provision must be analyzed. The provision mandates arbitration of "*any* dispute between the parties with respect to the interpretation of [the Management] Agreement or *any right, obligation or liability* of either party, whether such dispute arises before or after termination of this agreement . . . ."[25] Courts construing similar provisions have found them to be very broad.[26] To get around this broad, mandatory requirement to arbitrate *any* right or obligation, Lincoln contends that it is unknown even to the

---

[23] *AgGrow Oils, L.L.C. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 242 F.3d 777, 782 (8th Cir. 2001) (citation omitted)).

[24] *Chattin v. Cape May Greene, Inc.*, 216 N.J. Super. 618, 636 (App. Div. 1987) (quoting RESTATEMENT OF JUDGMENTS 2d, § 24 at 197 (1982)). *See also Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.*, 473 U.S. 614, 622 n.9, 625 n.13 (1985).

[25] Ex. 3 at § 21(a) (emphasis added) attached hereto.

[26] *Republic of the Phil. v. Westinghouse Elec. Corp.*, 714 F. Supp. 1362, 1372 (D.N.J. 1989); *Ferreri v. First Options of Chicago, Inc.*, 623 F. Supp. 427, 437 (E.D. Pa. 1985). *See also Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983) ("any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration").

parties what issues will be resolved.[27] That statement is remarkable in light of the four–year Sun Life Arbitration and recent representations made in New Jersey.

There, the Pool members (including Lincoln) informed a New Jersey federal district court that the arbitration would address whether Unicover made misrepresentations and breached the Management Agreement, resulting in the loss of the Pool's reinsurance.[28] The arbitration, therefore, will determine the corporation's liability for the acts of its employees and agents, while the court actions will determine the personal liability of Unicover's agents for acts undertaken on behalf of the corporation. By their very nature, this action and the arbitration not only overlap, they involve the same factual issues:

- Did Unicover improperly write and cede large volumes of business?[29]
- Did Unicover fail to secure and maintain retrocessional protection?[30]
- Did Unicover fail to inform Lincoln about the volume of risk?[31]
- Did Unicover fail to inform Lincoln about the retrocessionaires' threatened rescission of the Three–Year Whole Account?[32]

Underlying these issues are corresponding contractual rights and obligations covered by the Management Agreement between Unicover and Lincoln.[33]

---

[27] Lincoln Mem. in Opp'n at 7.

[28] Ex. 5 at 10–11, 30–31. *See also id.* at 20–21 (not disputing Unicover's characterizations).

[29] *See* Lincoln Compl. ¶ 12.

[30] *See id.*

[31] *See* Ex. 3 at § 9.

[32] *See id.* at § 8.

[33] *See id.* at § 3 (outlining the amount of reinsurance coverage); *id.* at § 8–9 (outlining Unicover's obligation to secure retrocessional coverage and provide information).

6

In fact, when the Pool members attempted to freeze Unicover's assets in the suit filed in New Jersey federal district court, the exchange between counsel and the court confirms that the action against Aon Re is derivative of the Unicover arbitration:

> The Court: You're suing those principles in a couple of other courts.
>
> Mr. Nonna: Yes, your Honor, but the issue —
>
> The Court: Why didn't you try to freeze that money in that case? Doesn't that make logical sense?
>
> Mr. Nonna: Your Honor, the *first step here it so prove in the arbitration* that [Unicover], in our view, that [*Unicover*] *has breached its duties*. Then there's the ability to go after the other parties.[34]

As Phoenix, Cologne, and ReliaStar acknowledged in New Jersey, and which Lincoln did not dispute,[35] they can only proceed against the Unicover shareholders and agents *after* the pending arbitration is concluded and only if it is resolved in the Pool members' favor.

### C. Resolution Of Lincoln's Claims In Favor Of Unicover In The Arbitration Will Fully And Finally Resolve All Claims Against Aon Re Here.

A second factor for the issuance of a discretionary stay is "whether those [common] issues will be finally determined by the arbitration."[36] Citing no authority, Lincoln asserts that Aon Re will still be liable for Lincoln's alleged losses even if Unicover is fully exonerated at the arbitration.[37] Another Pool member made that same argument in New Jersey, which the superior court summarily dismissed:

---

[34] Ex. 5 at 43.

[35] *See id.* at 44–48 (making no mention that Lincoln disputes the other Pool members' characterizations of the derivative nature of the claims against Unicovers' agents and employees).

[36] *Cosmotek*, 942 F. Supp. at 760.

[37] Lincoln Mem. in Opp'n at 8.

> This Court does not read the complaint as asserting any claims against Aon [Re] . . . that are separate from and independent of the wrongs to have been committed by Unicover. The operative facts out of which such claims arise involve and are tied to the wrongdoing alleged against Unicover. . . . If in the arbitration Unicover is exonerated there probably would be no viable claims against the defendants named herein [including Aon Re].[38]

Because "[t]he factual and legal issues in the pending arbitration and in this case are inextricably intertwined,"[39] this Court should grant Aon Re's request to stay pending the outcome of the Unicover arbitration. "If this litigation were to proceed Unicover's culpability would have to be determined, yet that is the precise issue that will be decided in the pending arbitration proceeding. To duplicate these factual and legal determinations would be a waste of judicial resources and lend to the possibility of inconsistent results."[40] This is especially the case here because "if Unicover is found not to have breached any of its obligations there would be no claim against principals or the brokers," such as Aon Re.[41]

D.   **The Remaining Elements Necessary For Imposing A Stay Are Also Satisfied.**

The three remaining factors also point in the direction of a stay. First, imposing a stay in this action will actually assist in facilitating the arbitration rather than hinder it.[42] The parties will not be compelled to engage in discovery in three different forums, and the arbitration panel will not be inhibited by inconsistent rulings from this Court. Second, the arbitration will be resolved within a reasonable period of time.[43] Lincoln represented to the New Jersey federal

---

[38]   Ex. 2 at 29.

[39]   *Id.* at 32.

[40]   *Id.*

[41]   *Id.* at 28.

[42]   *Cosmotek,* 942 F. Supp. at 760 (citation omitted).

[43]   *Id.*

8

district court that most of the necessary discovery has already occurred[44] and that there is a fully developed record from the Sun Life Arbitration.[45] Therefore, there should be little or no delay in obtaining a decision in the Unicover arbitration.[46] Third, Lincoln cannot contend it will suffer undue hardship because it has no way to make itself whole if a stay is issued.[47] Lincoln waited over four years to assert any claims against Aon Re.

Nor is Lincoln's argument about Unicover's insolvency relevant to any issue raised here or in the Unicover arbitration.[48] Lincoln does not deny that it agreed to arbitrate all disputes it may have with Unicover. It may not like that decision now, but it "bargained for the arbitration clause in [its] contract, and [] must now abide by the consequences of that bargain."[49] Nor does Unicover's alleged insolvency obviate the need to establish its liability, especially when any alleged liability Aon Re may have to the Pool is derivative of or related to Unicover's obligations under the Management Agreement. If the arbitrators exonerate Unicover and conclude that it properly accepted carve-out risk, secured retrocessional protection, and kept the Pool and the retrocessionaires informed as to the material facts, there can be no finding that Aon Re, as Unicover's agent and joint venturer, breached its obligations to the Pool. Therefore, Unicover's solvency or lack thereof is not relevant to the determination of whether a stay should be issued.

---

[44] Ex. 6 at 2.

[45] *Id.*

[46] *See* Ex. 2 at 31 (stating that the Unicover arbitration "should take place much more quickly than it did the first time around" because "most of the discovery has been completed").

[47] *Cosmotek,* 942 F. Supp. at 760.

[48] *See* Ex. 5 at 41 attached hereto (making similar arguments, with the New Jersey federal district court noting that the company is on the brink of bankruptcy, in part, because of legal fees incurred by defending a multiple number of suits brought by Lincoln as well as others).

[49] *Am. Shipping Line, Inc. v. Massan Shipping Indus., Inc.,* 885 F. Supp. 499, 503 (S.D.N.Y. 1995).

Lincoln also attempts to defeat the stay by arguing that Aon Re refused to participate in the Sun Life Arbitration. By voluntarily agreeing to arbitration, however, Lincoln "chose to avail itself of procedures peculiar to the arbitral process rather than those used in judicial determinations."[50] "A hallmark of arbitration — and a necessary precursor to its efficient operation — is a limited discovery process."[51] Consequently, Lincoln could not "reasonably expect full–blown discovery from the other or third parties."[52] In fact, Lincoln recognized there were discovery limitations when it came to deposing Roger Smith of Aon Re:[53]

> They [the retrocessionaires] blame us for two things. One is they didn't get to take a prehearing deposition [of Roger Smith]. We didn't write the law. Mr. Chaffetz compares it to a trial or a court proceeding. If this was a court proceeding you'd compel their depositions by out–of–state commissions. We can't do that here. It's different than a court proceeding. It's not our fault the law doesn't allow us to compel a prehearing deposition.[54]

When the Pool members requested a hearing subpoena for Mr. Smith, the retrocessionaires opposed temporarily moving the hearing to Chicago to obtain his testimony.[55] Notably, the panel and the parties had reservations about the ability to enforce his subpoena under such an "unorthodox procedure."[56] And although the Pool and Unicover believed

---

[50] *In re Commercial Solvents Corp.,* 20 F.R.D. 359, 361 (S.D.N.Y. 1957).

[51] *Comsat Corp. v. Nat'l Sci. Found.,* 190 F.3d 269, 276 (4th Cir. 1999).

[52] *Id.*

[53] *See* Ex. 7 attached hereto ; Ex. 8 at 112–14, 121, 126–28, 133–35 (recognizing that Aon Re had the legal right to oppose Smith's deposition). *See also id.* at 165 (indicating that Aon Re's policy is that it does not gratuitously make its employees available for depositions).

[54] Ex. 8 at 125–26.

[55] *Id.* at 172, 185–87, 236–37, 242–49.

[56] *See id.* at 172, 175–77, 185–87, 244.