UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

---

| | |
|---|---|
| THE LINCOLN NATIONAL LIFE INSURANCE COMPANY, | CIVIL ACTION NO. 303 CV 905 (RNC) |
| Plaintiff, | |
| v. | |
| AON RE, INC. | |
| Defendant. | |

---

**DEFENDANT AON RE, INC.'S SUR–REPLY MEMORANDUM IN SUPPORT OF ITS MOTIONS TO STAY PROCEEDINGS, DISMISS, OR TRANSFER**

Aon Re does not oppose Lincoln's filing of a supplemental memorandum. If the Court considers Lincoln's supplemental memorandum, Aon Re moves the Court *instanter* for permission to file and consider this sur–reply.

**ARGUMENT**

I. **THE *RELIASTAR* DECISION PROVIDES PERSUASIVE AUTHORITY THAT THIS CASE SHOULD BE STAYED BECAUSE ISSUES IN THE ARBITRATION ARE INTERTWINED WITH THE ISSUES TO BE DECIDED HERE.**

Lincoln goes to extraordinary lengths to avoid arbitrating its dispute with Unicover before proceeding with its claims against Aon Re here. It attempts to do this by continuing to focus on the *claims* rather than the factual *issues* to be decided. Not once does Lincoln address the factual contention that underpins its whole case against Aon Re here, or for that matter, Unicover in the arbitration: That, allegedly unbeknownst to Lincoln, too much risk was placed for too little premium, thereby jeopardizing the Pool's retrocessional coverage.

Lincoln's complaint alleges that because of Aon Re's breaches, "the majority of the Pool members' retrocessional protection was rescinded, leaving the Pool members exposed to substantial unreinsured risks"[1] amounting "to at least tens of millions of dollars."[2] It is the lack of retrocessional coverage, therefore, that is the basis for Lincoln's claims of liability against Aon Re here. It is also the basis of any claims against Unicover in the arbitration, as Lincoln candidly admitted to the court in the Southern District of New York:

> The current [] [Unicover] Arbitration arises in large part from the Pool members' loss of retrocessional coverage as a result of the decision of the panel . . . in the [] [Sun Life] Arbitration. In the [] [Sun Life] Arbitration, Phoenix and Cologne, as retrocessionaires, blamed their losses primarily on the conduct of Unicover. In the [] [Unicover] Arbitration, the Pool members . . . [including Lincoln], will argue for relief against Unicover based on that same conduct.[3]

Therefore, the underlying *factual issues* to be decided in the Unicover arbitration are no different than the *factual issues* to be resolved against Aon Re in this case. Lincoln attempts to get around this by essentially contending that because it has complied with the requirement to arbitrate its disputes with Unicover and has not sought to sue it in court, Lincoln should still be allowed to go forward with this case, even though it is virtually identical to the one being arbitrated. But a party should not be allowed to circumvent an arbitration provision by such artful pleading.[4]

---

[1] Lincoln Compl. ¶¶ 32, 38, 43.

[2] *Id.* ¶¶ 33, 39, 44.

[3] Ex. 1 at 8 attached hereto.

[4] *See, e.g., WorldCrisa Corp. v. Armstrong,* 129 F.3d 71, 76 (2d Cir. 1997) ("where a party to an arbitration agreement attempts to avoid that agreement by suing a related party with which it has no arbitration agreement in the hope that the claim will be adjudicated first and have preclusive effect in the arbitration, '[s]uch a maneuver should not be allowed to succeed, [and] . . . is blocked . . . by the principles of parallel–proceeding abstention, which . . . require the court to stay the proceedings before it and let the arbitration go forward unimpeded.'" (citation omitted)); *McCowan v. Sears, Roebuck & Co.,* 908 F.2d 1099, 1106–07 (2d Cir. 1990) (holding that a plaintiff does not have to seek a judgment against an arbitrating party for a stay to be issued, especially when "there is in reality a single controversy at issue").

Nor has Lincoln provided *any reason* why Lincoln's allegations against Aon Re are independent of any wrongdoing by Unicover. Rather, Lincoln just states that it is so.[5] But that statement is contradicted by Lincoln's own claims against Aon Re, in which Lincoln alleges Aon Re "undertook the duties set forth in the Pool Management Agreement" and was Unicover's partner in managing the Pool.[6] If, as Unicover contends in its supplemental counterclaim, it "successfully performed all of the services required of it as manager of the Pool,"[7] Lincoln and the other Pool members could have no claim against Aon Re for failing to fulfill those same duties. That is because res judicata and collateral estoppel will preclude Lincoln and any other Pool member from relitigating claims or issues previously adjudicated against them in the arbitration even if they are based upon different legal theories or seek different remedies.[8] Courts have even extended this principal to *nonparties* who attempt to assert claims in a subsequent action based upon the same operative facts.[9]

Moreover Lincoln's contention that "Aon [Re] argues that this action should be stayed because the *ReliaStar* action was stayed"[10] is incorrect. Aon Re analyzed each of the factors

---

[5] Lincoln Suppl. Mem. in Opp'n at 4.

[6] Lincoln Compl. ¶ 35.

[7] Ex. 2 ¶ 110 attached hereto. *See also id.* ¶¶ 32–47.

[8] *See Printing Mart–Morristown, Inc. v. Rosenthal,* 650 F. Supp. 1444, 1447–48 (D.N.J. 1987) (applying res judicata to plaintiff's subsequent action for RICO violations, which arose from the same "series of transactions" that had already been decided in state court); *Norris v. Grosvenor Mktg. Ltd.,* 632 F. Supp. 1193, 1196 (S.D.N.Y. 1986) (dismissing tort action because the issues were previously decided against the plaintiff in arbitration under a breach of contract theory).

[9] *See, e.g., U.S. v. ITT Rayonier, Inc.,* 627 F.2d 996, 1003 (9th Cir. 1980) (barring the EPA from relitigating an enforcement action because the Washington Department of Ecology had previously filed a similar action and lost); *Expert Elec., Inc. v. Levine,* 554 F.2d 1227, 1233 (2d Cir. 1977) (barring contractors' claims because their trade association adequately represented their interests in prior litigation based upon the same factual predicate).

[10] Lincoln Suppl. Mem. in Opp'n at 3.

required for a discretionary stay. The New Jersey decision was cited because it confirms what Aon Re has previously stated: It makes no sense to simultaneously address issues here that will be addressed in the arbitration. Even if all the issues are not addressed in the arbitration, some certainly will be, thereby simplifying the task here. That another court came to the same conclusion on essentially the same facts provides *persuasive* authority that a stay should be issued. Nor, as Lincoln suggests, is there anything tentative about the *ReliaStar* court's order, which was again decided in favor of a stay on December 23, 2003, after ReliaStar moved the court to reconsider its decision to stay the entire action.[11]

Like the *ReliaStar* action, the operative facts here are no different here than those to be decided in the Unicover arbitration, so this Court should grant Aon Re's request and stay this action pending the outcome of the arbitration.

II.   IN AN EFFORT TO AVOID A STAY, LINCOLN MISCHARACTERIZES UNICOVER'S SUPPLEMENTAL ARBITRATION COUNTERCLAIMS AS "NEW" AND ONLY RELATING TO EVENTS "*AFTER* JANUARY 1999."

Lincoln asserts that Unicover's service of its supplemental counterclaim in the arbitration is a "new demand" that somehow transforms the Unicover arbitration into an action unrelated to this case.[12] This, Lincoln contends, is something that the *ReliaStar* court did not consider and which provides support that a stay should not be issued. Even if the scope of Unicover's supplemental counterclaims is somehow relevant to the issuance of a stay, it is evident that Unicover did not conceal its counterclaims from the Pool members or the *ReliaStar* court. In addition, the counterclaims are not wholly unrelated to Unicover's performance under the Pool Management Agreement, nor are they based upon events that entirely postdate the events at issue

---

[11] *See* Exs. 3–4 attached hereto.

[12] Lincoln Suppl. Mem. in Opp'n at 5.

4

in Lincoln's complaint, as Lincoln suggests.[13] In fact, Unicover's counterclaim did nothing more than provide supporting detail for the arbitration demands Unicover made upon the Pool members on June 20 and July 18, 2003.[14] Each of the causes of action set forth in Unicover's counterdemand for arbitration are set forth in its supplemental counterclaim, with the counterclaims simply providing more detail.[15] The only "new" count for indemnification simply seeks confirmation of the Pool members' obligation to indemnify Unicover for losses, such as attorneys' fees, in defending against the Pool members' arbitrations and lawsuits.

Lincoln also mischaracterizes Unicover's counterclaims in yet another effort to separate the issues in the arbitration from those here. It contends that Unicover's claims in the arbitration are based upon the Pool members' actions *after* January 1999, when Sun Life terminated the Three–Year Whole Account.[16] But a review of Unicover's counterclaims establishes otherwise. For example, Counts I through III relate to Unicover's performance of its duties to the Pool members and seeks compensation for satisfying its obligations under the Pool Management Agreement during the period that it was in effect.[17] Unicover's performance of its duties during the contractual period is also relevant to Counts V through VIII.[18] For example, whether the Pool members are liable for business or commercial disparagement (Count V) will relate to, among other things, whether Unicover properly performed its duties during the contractual period. If the arbitration panel determines that Unicover acted appropriately, then and only then,

---

[13] *Id.*

[14] *See* Exs. 5–7 attached hereto.

[15] Ex. 2 ¶¶ 122–24 attached hereto.

[16] Lincoln Suppl. Mem. in Opp'n at 5.

[17] *See, e.g.,* Ex. 2 ¶¶ 110, 112, 119, 122.

[18] *See, e.g., id.* ¶¶ 137, 141–47, 149–52, 156–59.

5

will Unicover be able to recover on its counterclaims. Recognizing the interrelatedness of the Pool's claims against Unicover and Unicover's counterclaims against the Pool, Lincoln told the New York federal district court:

> There can be no good faith argument that the Pool members do not have the same dispute with Unicover. The Pool members claim that Unicover's misconduct caused them many millions of dollars of damages due to the partial loss of their retrocessional protection. Unicover denies this and seeks damages from all of the Pool members for allegedly unpaid management fees and other harm to its business. *It is exactly the same dispute between the Pool members, on the one hand, and Unicover, on the other.*[19]

In addition, Lincoln cannot seriously contend that the Pool members' own claims against Unicover include facts that occurred *after* January 1999. As Lincoln's co-Pool members have indicated, they commenced the arbitration against Unicover seeking, in part, damages from Unicover for "continuing to act on behalf of the Unicover Pool members *after* its authority was terminated."[20] Moreover, the whole purpose of the Pool members' unsuccessful action before the New Jersey federal court was to freeze Unicover's assets pending the resolution of the Pool members' claims regarding Unicover's transfer of funds in *July 2003*.[21] At the time that the *ReliaStar* court ruled on the motion to stay and Lincoln briefed the stay issue in this action, Lincoln was well aware that the Unicover arbitration would include certain claims (by both sides) relating to post–January 1999 events and that the resolution of those claims may require some new discovery. If, as Lincoln contends, "the situation now is not what was before the New Jersey court when it" issued the stay,[22] one would have expected the New Jersey Superior Court

---

[19] Ex. 1 at 16 attached hereto (emphasis added).

[20] Ex. 8 at 8 attached hereto (emphasis added).

[21] *Id.* at 1.

[22] Lincoln Suppl. Mem. in Opp'n at 6.

to reverse its prior ruling. But that is not what the court did. Instead, the New Jersey court found that while Unicover's initial arbitration demand of June 20, 2003, set forth the causes of action that were going to be asserted,[23]

> the letter did not include the factual allegations upon which these claims were based. *It was obvious, however, that these causes of action were directed to events that transpired both during and after the events upon which the complaint here was based.*
>
> [Unicover's] amended and supplemental arbitration demand sets forth in detail the factual basis of the claims. The only new cause of action is one for indemnification. *The filing of the amended and supplemental arbitration demand thus raises no new legal or factual issues not already considered by this Court in its decision.*[24]

Therefore, Lincoln's contention that the *ReliaStar* court's decision to stay the action pending arbitration was somehow tentative and would be reversed because the New Jersey court did not have access to all of the evidence when it made its decision is simply not true.

### III.   LINCOLN ALSO MISCHARACTERIZES AON RE'S MOTION TO DISMISS IN THE NEW JERSEY STATE COURT ACTION AS ONE FOR A TRANSFER.

In addition, Lincoln contends that the New Jersey Superior Court denied Aon Re's "motion to transfer" because "New Jersey does indeed have a substantial interest in resolving the dispute . . . ."[25] It goes on to claim that "Aon conveniently ignores the state court's denial of its *motion to transfer,* notwithstanding that the decision is fatal to its motion to transfer this case to Illinois."[26] But contrary to Lincoln's assertions, Aon Re did not move to *transfer* the ReliaStar action to Illinois, but rather, to *dismiss* under the doctrine of *forum non conveniens*.[27] Moreover,

---

[23]  Ex. 4 at 4 attached hereto.

[24]  *Id.* at 5 (emphasis added).

[25]  Lincoln Suppl. Mem. in Opp'n at 2.

[26]  *Id.* at 1–2 (emphasis added).

[27]  *See* Ex. 9 at 16 attached hereto.

and perhaps more importantly, dismissals on the ground of *forum non conveniens* are different than § 1404(a) transfers in that a courts are given much broader discretion to transfer an action to another forum based upon a lesser showing of inconvenience.[28]

In addition, Aon Re's *forum non conveniens* motion dovetailed with its motion to stay the action. Because ReliaStar agreed to arbitrate its disputes with Unicover, Aon Re argued that the *ReliaStar* court should dismiss the action while the parties did just that.[29] Rather than dismissing the case on that basis, the *ReliaStar* court chose to stay the action instead.

The *ReliaStar* decision is also distinguishable because of the factors that the *ReliaStar* court did not address. First, and foremost, the *ReliaStar* court was not faced with the admitted forum shopping of a party like Lincoln, who improperly split its causes of action between two federal courts in an attempt to take advantage of Connecticut's statutes of limitations. Nor was it faced with the situation, like here, in which an Indiana insurance company alleged only breach of contract claims that could only have arisen from the broker's principal place of business, which for Aon Re is Illinois.[30]

Therefore, Lincoln's contention that New Jersey is interested in resolving a breach of contract action between an Illinois insurance broker and an Indiana insurance company is misplaced.

---

[28] *Norwood v. Kirkpatrick*, 349 U.S. 29, 31 (1955). *See also TUC Elecs., Inc. v. Eagle Telephonics, Inc.*, 698 F. Supp. 35, 38 (D. Conn. 1988) (noting that § 1404(a) "permits transfer on a *lesser showing* than would warrant dismissal for *forum non conveniens*" (emphasis added)).

[29] Ex. 10 at 31–33.

[30] *See, e.g.*, Lincoln Compl. ¶¶ 31, 37, 42 (alleging that Aon Re failed to disclose information or made misrepresentations that could have only occurred in Illinois where Aon Re allegedly failed to perform).

## CONCLUSION

Defendant Aon Re, Inc. therefore respectfully requests that the Court grant its motion to stay the proceedings or dismiss this action in its entirety. Alternatively, Aon Re moves to transfer this action to the Northern District of Illinois.

Dated: January 9, 2004.    By: _____
Timothy A. Diemand (CT 18075)
WIGGIN & DANA LLP
One City Place
185 Asylum Street
Hartford, Connecticut 06103
Telephone: (860) 297–3738
Facsimile: (860) 525–9380

Shand S. Stephens (CT 14705)
AON LAW DIVISION
199 Fremont Street
San Francisco, California 94105
Telephone: (415) 486–6980
Facsimile: (415) 486–7018

Dan K. Webb (CT 25036)
WINSTON & STRAWN LLP
35 West Wacker Drive
Chicago, Illinois 60601
Telephone: (312) 558–5600
Facsimile: (312) 558–5700

Alan L. Kildow (CT 24177)
Sonya R. Braunschweig (CT 25037)
OPPENHEIMER WOLFF & DONNELLY LLP
3300 Plaza VII Building
45 South Seventh Street
Minneapolis, Minnesota 55402
Telephone: (612) 607–7000
Facsimile: (612) 607–7100

*Attorneys for Defendant Aon Re, Inc.*

## CERTIFICATION

This is to certify that a copy of the foregoing was sent by overnight courier this 9th day of January 2004 to:

Richard J. Mooney, Esq.
Latham & Watkins LLP
505 Montgomery Street
Suite 1900
San Francisco, CA 94111

_____
Timothy A. Diemand

# EXHIBIT 1

| | |
|---|---|
| THE LINCOLN NATIONAL LIFE INSURANCE COMPANY,<br><br>                    Petitioner,<br><br>    -against-<br><br>CRAGWOOD MANAGERS, L.L.C.; GENERAL & COLOGNE LIFE RE OF AMERICA; PHOENIX LIFE INSURANCE COMPANY; RELIASTAR LIFE INSURANCE COMPANY,<br><br>                    Respondents. | 03 CIV.        (    ) |

## MEMORANDUM OF LAW IN SUPPORT OF PETITION TO COMPEL ARBITRATION IN THE MANNER PROVIDED IN THE ARBITRATION AGREEMENT AND FOR TEMPORARY RESTRAINING ORDER

### 1. Mr. Schmidt Has Previously Acted, and is Currently Acting, for Lincoln's Adversaries in Related Arbitrations.

Lincoln is opposed to the appointment of Mr. Schmidt as the Pool members' party arbitrator because he has served in the past and currently serves as an arbitrator for Lincoln's adversaries in two arbitrations involving many of the same facts and issues that will be raised in the current Pool Management Agreement Arbitration.

As noted above, Mr. Schmidt was the party arbitrator for Lincoln's adversaries, including Phoenix and Cologne, in the Three-Year Whole Account Arbitration. The current Pool Management Agreement Arbitration arises in large part from the Pool members' loss of retrocessional coverage as a result of the decision of the panel (including Mr. Schmidt) in the Three-Year Whole Account Arbitration. In the Three-Year Whole Account Arbitration, Phoenix and Cologne, as retrocessionaires, blamed their losses primarily on the conduct of Unicover. (Byers Decl. ¶ 27.) In the Pool Management Agreement Arbitration, the Pool members, including Phoenix and Cologne, will argue for relief against Unicover based on that same conduct. Phoenix and Cologne are, thus, asking Lincoln to agree to appoint an arbitrator in the current Pool Management Agreement Arbitration who previously served for Phoenix and Cologne and against Lincoln in an arbitration concerning substantially similar parties, facts and issues. (Byers Decl. ¶ 33.)

By seeking to appoint Mr. Schmidt, Phoenix is also asking Lincoln to agree to appoint an arbitrator in the Pool Management Agreement Arbitration who is <u>currently</u> serving as an arbitrator for Phoenix and against Lincoln in another arbitration involving substantially similar parties, facts and issues. (Byers Decl. ¶ 33.) On February 13, 2003, the Pool members demanded arbitration against Sun and Phoenix seeking to recover amounts due under the One-Year Whole Account (the "One-Year Whole Account Arbitration"). (Byers Decl. ¶ 32.) Sun

8

Agreement, "[a]ll reinsurers who are involved in the same dispute with Unicover shall constitute and act as one party." (Byers Decl. Ex. A.) There can be no good faith argument that the Pool members do not have the same dispute with Unicover. The Pool members claim that Unicover's misconduct caused them many millions of dollars of damages due to the partial loss of their retrocessional protection. Unicover denies this and seeks damages from all of the Pool members for allegedly unpaid management fees and other harm to its business. It is exactly the same dispute between the Pool members, on the one hand, and Unicover, on the other.

Any assertion by Phoenix, Cologne, and ReliaStar that Lincoln is not entitled to participate in the selection of an arbitrator on behalf of the Pool because Unicover had not yet formally demanded arbitration against Lincoln on the same date it demanded arbitration against Phoenix, Cologne, and ReliaStar is baseless. The only reason Unicover did not formally demand arbitration against Lincoln on June 20, 2003, was because of a tolling agreement. Once Lincoln and Unicover agreed to terminate the tolling agreement, Unicover formally demanded arbitration against Lincoln on July 18, 2003. Lincoln is now formally a party to the Pool Management Agreement Arbitration along with its fellow Pool members, Phoenix, Cologne, and ReliaStar. Thus, Lincoln is entitled to participate fully in the joint selection of the Pool members' arbitrator.

In any event, Unicover's delay in formally demanding arbitration against Lincoln is legally irrelevant to Lincoln's right to participate fully in the joint selection of the Pool members' arbitrator. The Pool Management Agreement provides that all Pool members involved in the "same dispute" with Unicover must act as one party. This provision refers to the substance of the dispute, not the timing of when arbitration demands are issued. If Phoenix, Cologne, and ReliaStar had received arbitration demands from Unicover one day apart, they could not reasonably assert that they have three separate disputes requiring three separate arbitrations.

# EXHIBIT 2